## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

COMMODITY FUTURES TRADING
COMMISSION,

                                                                Case No. 8:19-CV-886-T-33SPF

      Plaintiff,

v.

OASIS INTERNATIONAL GROUP,
LIMITED; OASIS MANAGEMENT, LLC;
SATELLITE HOLDINGS COMPANY;
MICHAEL J DACORTA; JOSEPH S.
ANILE, II.; RAYMOND P MONTIE III;
FRANCISCO "FRANK" L. DURAN; and
JOHN J. HAAS,

      Defendants;

and

MAINSTREAM FUND SERVICES, INC.;
BOWLING GREEN CAPITAL
MANAGEMENT LLC; LAGOON
INVESTMENTS, INC.; ROAR OF THE
LION FITNESS, LLC; 444 GULF OF
MEXICO DRIVE, LLC; 4064 FOUNDERS
CLUB DRIVE, LLC; 6922 LACANTERA
CIRCLE, LLC; 13318 LOST KEY PLACE,
LLC; and 4 OAKS LLC,

Relief Defendants.

_____/

## RECEIVER'S FIRST INTERIM MOTION FOR
## ORDER AWARDING FEES, COSTS, AND REIMBURSEMENT OF
## COSTS TO RECEIVER AND HIS PROFESSIONALS

Burton W. Wiand, the Court-appointed receiver over the assets of the above-captioned defendants and relief defendants (the "**Receiver**" and the "**Receivership**" or "**Receivership Estate**") pursuant to the Court's orders dated April 15, 2019 (Doc. 7) (the "**TRO**") and April 30, 2019 (Doc. 44) (the "**Order Appointing Receiver**") (collectively, the "**Receivership Orders**"), respectfully moves the Court for the entry of an order awarding fees and the reimbursement of costs to the Receiver and his professionals.  *See* Doc. 98 (approving retention of professionals).  This motion covers all fees and costs incurred through May 15, 2019 – *i.e.*, the first thirty days of this Receivership.  A Standardized Accounting Report (the "**Accounting Report**") from the inception of the Receivership through June 14, 2019 is attached as **Exhibit 1**.[1]

**Case Background and Status**

As of the date of filing this motion, the Court has appointed Burton W. Wiand as Receiver over the assets of the following entities and individuals:

a)   Defendants Oasis International Group, Limited; Oasis Management, LLC; Satellite Holdings Company; Michael J. DaCorta; Joseph S. Anile, II; Francisco "Frank" L. Duran; John J. Haas; and Raymond P. Montie, III; and

b)   Relief defendants Mainstream Fund Services, Inc.; Bowling Green Capital Management, LLC; Lagoon Investments, Inc.; Roar of the Lion Fitness, LLC; 444 Gulf of Mexico Drive, LLC; 4064 Founders Club Drive, LLC; 6922 Lacantera Circle, LLC; 13318 Lost Key Place, LLC; and 4Oaks LLC.

*See* Docs. 7 and 44.  The foregoing defendants and relief defendants are collectively referred to as the "**Receivership Entities**."

---

[1]   The Commodity Futures Trading Commission ("**CFTC**" or the "**Commission**") provided the Receiver with detailed Billing Instructions for Receivers in Civil Actions Commenced by the Commission (the "**Billing Instructions**"), which are attached as **Exhibit 11**.  The Accounting Report is one of the requirements contained in the Billing Instructions.

On June 14, 2019, the Receiver filed his First Interim Report (Doc. 113) (the "**Interim Report**"), which contains comprehensive and detailed information regarding the case background and status; the recovery of assets; financial information about Receivership Entities; the Receiver's proposed course of action regarding assets in the Receivership Estate; the potential establishment of a claims process; and related (and/or contemplated) litigation involving Receivership Entities.  The Receiver incorporates the Interim Report into this motion and has attached a true and correct copy of the Interim Report as <u>**Exhibit 2**</u> for the Court's convenience.  The Interim Report addresses all activity that resulted in the fees and costs sought in this motion.

### Professional Services Rendered and Costs Incurred

The Order Appointing Receiver authorizes the Receiver to "solicit persons and entities ('Retained Personnel') to assist him in carrying out the duties and responsibilities described in this Order" and states that the "Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates," subject to approval by the Court.  *See* Doc. 44 ¶¶ 57, 58; *see also* Doc. 7 ¶ 40.  The Order Appointing Receiver also requires that the Receiver obtain the Court's authorization of the retention of any Retained Personnel.  *See* Doc. 44 ¶ 57.  On May 30, 2019, the Receiver filed a motion approve the retention of professionals (Doc. 87), which the Court granted on June 6, 2019 (Doc. 98).

Pursuant to the Receivership Orders, the Receiver retained (1) Wiand Guerra King P.A. ("**WGK**") to provide legal services; (2) KapilaMukamal, LLP ("**KM**") to provide forensic accounting services; (3) PDR Certified Public Accountants ("**PDR**") to provide

general accounting and tax services; (4) RWJ Group, LLC ("**RWJ**") to provide asset management and investigative services; and (5) E-Hounds, Inc. ("**E-Hounds**") to provide computer forensic services (collectively, the "**Professionals**").[2]  The Receiver has not previously sought the reimbursement of any fees or costs in this matter.

As shown in the Interim Report, the Professionals have provided services and incurred expenses to investigate the affairs of the Receivership Entities, preserve Receivership assets, attempt to locate and recover additional assets, and analyze investor information for an eventual claims process and possible litigation.  These services are for the benefit of aggrieved investors, creditors, and other interested parties.

## I.    <u>The Receiver</u>

The Receiver requests the Court award him fees for the professional services rendered through May 15, 2019, in the amount of $38,502.00.  The standard hourly rate the Receiver charges clients in private litigation is $500.  However, the Receiver agreed, for purposes of his appointment as the Receiver, that his hourly rate would be reduced to $360, representing a twenty-eight percent (28%) discount off the standard hourly rate which he charges clients in comparable matters.  This rate was set forth in the Receiver's submission to the CFTC. *See* Doc. 87, Ex. A.

The Receiver commenced services immediately upon his appointment.  The Receiver has billed his time for these activities in accordance with the Billing Instructions, which request that this motion contain a narrative of each "business enterprise or litigation matter"

---

[2]  PDR did not incur any fees or costs for services rendered during the time covered by this motion.

for which outside professionals have been employed.  The Billing Instructions identify each such business enterprise or litigation matter as a separate "project."  Further, the Billing Instructions request that time billed for each project be allocated to one of several Activity Categories.[3]  At this early stage of the Receivership, no separate matters have been commenced to warrant billing as a separate project.  The Receiver, however, anticipates that separate projects will be created as the Receivership progresses.

For the time covered by this motion, the work of the Receiver and WGK focused on investigating the fraud and related activities, locating and taking control of Receivership assets, investigating and pursuing additional assets for the Receivership, and analyzing investor information for an eventual claims process and possible litigation.  These activities of the Receiver are set forth in detail in the Interim Report.  Ex. 2.  A copy of the statement summarizing the Receiver's services rendered for the Receivership is attached as **Exhibit 3**. The Receiver's time and fees for services rendered for each Activity Category through May 15, 2019, are as follows:

---

[3] The Activity Categories set forth by the Commission in the Billing Instructions are as follows: (1) Asset Analysis and Recovery, which is defined as identification and review of potential assets including causes of action and non-litigation recoveries; (2) Asset Disposition, which is defined as sales, leases, abandonment and related transaction work (where extended series of sales or other disposition of assets is contemplated, the Billing Instructions provide that a separate category should be established for each major transaction); (3) Business Operations, which is defined as issues related to operation of an ongoing business; (4) Case Administration, which is defined as coordination and compliance activities, including preparation of reports to the court, investor inquiries, etc.; and (5) Claims Administration and Objections, which is defined as expenses in formulating, gaining approval of and administering any claims procedure.  The Billing Instructions provide that time spent preparing motions for fees may not be charged to the Receivership Estate.  In accordance with these instructions, the Receiver created an additional Activity Category for work on fees motions and has accounted for time spent on such work but has not charged any amount for that work.

### Receivership
### Receiver's Time and Fees for Services Rendered

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Analysis and Recovery | 108.20 | $38,502.00 |
| **TOTAL** | **108.20** | **$38,502.00** |

## II.    Wiand Guerra King P.A.

The Receiver requests the Court award WGK fees for professional services rendered and costs incurred through May 15, 2019, in the amounts of $68,975.75 and $1,634.40, respectively.    A categorization and summary of all costs for which WGK seeks reimbursement is attached as **Exhibit 4**.

As an accommodation to the Receiver and to conserve the resources of the Receivership Estate, WGK's attorneys and paralegals have agreed to reduce their standard rates by as much as 30 percent[4] as provided in the fee schedule attached as **Exhibit 5**.   WGK began providing services immediately upon the appointment of the Receiver.   The activities

---

[4]  With respect to the most relevant timekeepers identified in Exhibit 6, Jared Perez (52.4 hours) is a WGK shareholder who typically charges private clients $395 per hour, but his rate here is $320 per hour, representing a discount of $75 per hour or approximately 19%.  Eric Feld (103.1 hours) is a WGK senior associate who typically charges private clients $290 per hour, but his rate here is $240 per hour, representing a discount of $50 per hour or approximately 17%.  Michael Mariani (19.8 hours) is a WGK junior associate who typically charges private clients $235 per hour, but his rate here is $210 per hour, representing a discount of $25 per hour or approximately 10%.   Jeffrey Rizzo (65.4 hours) is a WGK paralegal who typically charges private clients $175 per hour, but his rate here is $135 per hour, representing a discount of $40 per hour or approximately 23%.   Amanda Stephens (107.6 hours) is a WGK paralegal who typically charges private clients $165 per hour, but her rate here is $135 per hour, representing a discount of $30 per hour or approximately 18%. While the largest discounts (up to 30%) apply to the rates charged by WGK's most senior lawyers (if needed) because of their higher standard rates, the Receiver believes using the undersigned, associates, and paralegals where possible is nevertheless more economical for the Receivership Estate.

of WGK for the time covered by this motion are set forth in the Interim Report.  *See* Ex. 2.

WGK has billed time for these activities in accordance with the Billing Instructions.   As

discussed above, at this early stage of the Receivership, the work of the Receiver and WGK

focused on investigating the fraud and related activities, locating and taking control of

Receivership assets, investigating and pursuing additional assets for the Receivership, and

analyzing investor information for the eventual claims process and possible litigation.  Ex. 2.

A copy of the statement summarizing the services rendered and costs incurred by WGK

through May 15, 2019, is attached as **Exhibit 6**.[5]  WGK's time and fees for services rendered

on this matter for each Activity Category are as follows:

**Receivership**
**WGK's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Disposition | 8.40 | $2,656.00 |
| Asset Analysis and Recovery | 280.70 | $57,066.25 |
| Case Administration | 65.90 | $9,253.50 |
| **TOTAL** | **355.00** | **$68,975.75** |

## III.   **Kapila Mukamal, LLP.**

The Receiver requests the Court award KM fees for professional services rendered

and costs incurred through May 15, 2019, in the amount of $10,118.63.  KM is a forensic

---

[5]   Exhibits 3 and 6 contain a limited number of entries that predate the Receiver's
appointment on April 15, 2019.  These matters generally include communications and
meetings with the CFTC regarding the Receivership Orders, the logistics for obtaining access
to Receivership properties and coordinating with law enforcement, the identification of
Receivership bank accounts, and the preparation of letters to financial institutions to
implement the asset freeze.  These pre-appointment activities were necessary to prevent the
disposition of assets and benefitted the Receivership Estate.

accounting firm that specializes in insolvency and restructuring, Ponzi schemes, fraud investigations, insolvency taxation, business valuation, and litigation support.   KM is assisting the Receiver with the cash-in/cash-out analysis the Receiver needs to perform to establish a claims process and for other purposes.   As an accommodation to the Receiver and to conserve the resources of the Receivership Estate, Soneet Kapila, a principal of KM, has agreed to reduce his hourly billing rate and to discount all other forensic accounting work by 15 percent.   KM started providing services for the Receivership on April 30, 2019.   A copy of the statement summarizing the services rendered and costs incurred for the pertinent period is attached as **Exhibit 7**.

**IV.**   **E-Hounds, Inc.**

The Receiver requests the Court award E-Hounds fees for professional services rendered and costs incurred through May 15, 2019, in the amount of $8,883.95.   E-Hounds is a computer forensics firm that assists the Receiver in securing and analyzing electronic data. E-Hounds started providing services for the Receivership on April 22, 2019.   Copies of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite **Exhibit 8**.

**V.**   **The RWJ Group, LLC.**

The Receiver requests the Court award RWJ fees for professional services rendered and costs incurred through May 15, 2019, in the amounts of $2,025.00 and $247.08, respectively.   RWJ, which is owned and operated by Roger Jernigan, is an asset management and investigation firm.   Mr. Jernigan assists the Receiver with overseeing ongoing business operations and property recovered by the Receiver, including aiding with efforts to sell such

businesses and property. His efforts are designed to ensure that Receivership assets are maintained and/or enhanced to allow for maximum recovery for the Receivership Estate. RWJ started providing services for the Receivership on April 18, 2019.   A copy of the statement summarizing the services rendered and costs incurred for the pertinent period is attached as **Exhibit 9**.

## MEMORANDUM OF LAW

It is well settled that this Court has the power to appoint a receiver and to award the receiver and those appointed by him fees and costs for their services.   *See, e.g., S.E.C. v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) (receiver is entitled to compensation for faithful performance of his duties); *Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984) ("[T]he receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to reasonable compensation for his efforts."); *S.E.C. v. Custable*, 1995 WL 117935 (N.D. Ill. Mar. 15, 1995) (receiver is entitled to fees where work was of high quality and fees were reasonable); *S.E.C. v. Mobley*, 1317RCC, 2000 WL 1702024 (S.D.N.Y. Nov. 13, 2000) (court awarded reasonable fees for the receiver and his professionals); *see also* Doc. 7 ¶ 40 & Doc. 44 ¶ 58.   The determination of fees to be awarded is largely within the discretion of the trial court.   *See Monaghan v. Hill*, 140 F.2d 31, 34 (9th Cir. 1944).   In determining reasonable compensation for the services rendered by the Receiver and his Professionals, the Court should consider the circumstances surrounding the Receivership.   *See Elliot*, 953 F.2d at 1577.

Here, because of the nature of this case, it is necessary for the Receiver to employ attorneys and accountants experienced and familiar with financial frauds, federal

receiverships, banking, and finance.  Further, to perform the services required and achieve the results obtained to date, the skills and experience of the Receiver and the Professionals in the areas of fraud, commodities, computer and accounting forensics, and financial transactions are indispensable.

As discussed above, the Receiver and WGK have discounted their normal and customary rates as an accommodation to the Receivership and to conserve Receivership assets.  The rates charged by the attorneys and paralegals are at or below those charged by attorneys and paralegals of comparable skill from other law firms in the Middle District of Florida.

This case has been time-intensive for the Receiver and his Professionals because of the need to resolve many issues rapidly and efficiently.  The attached Exhibits detail the time, nature, and extent of the professional services rendered by the Receiver and his Professionals for the benefit of investors, creditors, and other interested parties.  The Receiver anticipates that additional funds will be obtained through the Receiver's negotiations or litigation with third parties.

Although the CFTC investigated and filed the initial pleadings in this case, as directed by the Receivership Orders (*see, e.g.,* Doc. 44 ¶ 42), the Receiver is now involved with the investigation and forensic analysis of the events leading to the commencement of the pending action, the efforts to locate and gather investors' money, the determination of investor and creditor claims and any ultimate payment of these claims.  While the Receiver is sensitive to the need to conserve the Receivership Entities' assets, he believes the fees and costs expended to date were reasonable, necessary, and benefited the Receivership.  Notably, the

Commission has no objection to the relief sought in this motion.  *Cf. Custable*, 1995 WL 117935 at *7 ("In securities law receiverships, the position of the SEC in regard to the awarding of fees will be given great weight.").

## CONCLUSION

Under the Receivership Orders, the Receiver, among other things, is authorized and empowered to engage professionals to assist him in carrying out his duties and obligations. The Receivership Orders further provide that he apply to the Court for authority to pay himself and his Professionals for services rendered and costs incurred.  In exercising his duties, the Receiver has determined that the services rendered and their attendant fees and costs were reasonable, necessary, advisable, and in the best interests of the Receivership.

WHEREFORE, Burton W. Wiand, the Court-appointed Receiver, respectfully requests that this Court award the following sums and direct that payment be made from the Receivership assets:[6]

| | |
|---|---|
| Burton W. Wiand, Receiver | $38,502.00 |
| Wiand Guerra King P.A. | $70,610.15 |
| KapilaMukamal, LLP | $10,118.63 |
| E-Hounds, Inc. | $8,883.95 |
| RWJ Group, LLC | $2,272.08 |

## LOCAL RULE 3.01(g) CERTIFICATION OF COUNSEL

Prior to filing The Receiver's First Interim Motion For Order Awarding Fees, Costs, And Reimbursement Of Costs To Receiver And His Professionals, the Receiver submitted it to the CFTC, which informed the Receiver it has no objection to the payment of fees and the reimbursement of costs.

---

[6] A proposed order is attached as **Exhibit 10**.

Undersigned counsel has also conferred with counsel for (1) defendants and relief defendants Joseph S. Anile, II, Bowling Green Capital Management LLC (Doc. 71), 4064 Founders Club Drive, LLC (Doc. 75), Lagoon Investments, Inc. (Doc. 72), and 4 Oaks LLC (Doc. 78); and (2) relief defendant Mainstream Fund Services, Inc. and is authorized to represent to the Court that those defendants do not oppose the relief requested in this motion.

Counsel for (1) defendant Raymond P. Montie, III and (2) defendants John Haas and Satellite Holdings Company have informed counsel for the Receiver that those defendants object to the payment of fees incurred prior to the Receiver's appointment on April 15, 2019. *See supra* fn. 5 & Exhibits 3 and 6.

Counsel for defendant Michael DaCorta has advised the undersigned that he intends to move the Court to withdraw from the representation. Presumably as a result, counsel has not taken a position on this motion.

Defendants Francisco "Frank" Duran (Doc. 70); Oasis Management Group, LLC (Doc. 69); and Oasis International Group Limited (Doc. 94) have defaulted, and the two entities are under the Receiver's control pursuant to this Court's orders. Relief defendants Roar of the Loan Fitness, LLC (Doc. 73); 444 Gulf of Mexico Drive, LLC (Doc. 74); 6922 Lacantera Circle, LLC (Doc. 76); and 13318 Lost Key Place, LLC (Doc. 77) have also defaulted and are under the Receiver's control pursuant to the Court's orders.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on June 14, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I have also provided the following non-CM/ECF participants with a true and correct copy of the foregoing by electronic mail and US mail to:

Gerard Marrone
Law Office of Gerard Marrone, P.C.
66-85 73rd Place
Second Floor
Middle Village, NY  11379
gmarronelaw@gmail.com
*Counsel for Defendant Joseph S. Anile, II*

Francisco "Frank" L. Duran
7312 Desert Ridge Glen
Lakewood Ranch, FL  34202
fduran@oasisig.com

**s/Jared J. Perez**
Jared J. Perez, FBN 0085192
Email:  jperez@wiandlaw.com
WIAND GUERRA KING P.A.
5505 West Gray Street
Tampa, FL  33609
Tel.:   (813) 347-5100
Fax:    (813) 347-5198

*Attorney for the Receiver Burton W. Wiand*

13

## <u>RECEIVER'S CERTIFICATION</u>

The Receiver has reviewed this First Interim Motion for Order Awarding Fees, Costs, and Reimbursement of Costs to Receiver and His Professionals (the "**Motion**").

To the best of the Receiver's knowledge, information, and belief formed after reasonable inquiry, the Motion and all fees and expenses herein are true and accurate and comply with the Billing Instructions provided to the Receiver by the Commodity Futures Trading Commission.

All fees contained in the Motion are based on the rates listed in the fee schedule, attached as Exhibit 5. Such fees are reasonable, necessary, and commensurate with (if not below the hourly rate that is commensurate with) the skill and experience required for the activity performed.

The Receiver has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth in the Billing Instructions for photocopies and facsimile transmission).

To the extent the Receiver seeks reimbursement for any service which the Receiver justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), the Receiver has requested reimbursement only for the amount billed to the Receiver by the third-party vendor and/or paid by the Receiver to such vendor. The Receiver is not making a profit on such reimbursable services.

The Receiver believes that the fees and expenses included in this Motion were incurred in the best interests of the Receivership Estate.  With the exception of the Billing Instructions and the Court-approved engagements described above, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

**s/Burton W. Wiand**
Burton W. Wiand, as Receiver