**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

COMMODITY FUTURES TRADING
COMMISSION,

        Plaintiff,

v.

OASIS INTERNATIONAL GROUP,
LIMITED; OASIS MANAGEMENT, LLC;
SATELLITE HOLDINGS COMPANY;
MICHAEL J DACORTA; JOSEPH S.
ANILE, II.; RAYMOND P MONTIE III;
FRANCISCO "FRANK" L. DURAN; and
JOHN J. HAAS,

        Defendants;

and

MAINSTREAM FUND SERVICES, INC.;
BOWLING GREEN CAPITAL
MANAGEMENT LLC; LAGOON
INVESTMENTS, INC.; ROAR OF THE
LION FITNESS, LLC; 444 GULF OF
MEXICO DRIVE, LLC; 4064 FOUNDERS
CLUB DRIVE, LLC; 6922 LACANTERA
CIRCLE, LLC; 13318 LOST KEY PLACE,
LLC; and 4 OAKS LLC,

        Relief Defendants.

Case No. 8:19-CV-886-T-33SPF

_____/

**RECEIVER'S THIRD INTERIM MOTION FOR
ORDER AWARDING FEES, COSTS, AND REIMBURSEMENT OF
<u>COSTS TO RECEIVER AND HIS PROFESSIONALS</u>**

Burton W. Wiand, the Court-appointed receiver over the assets of the above-captioned defendants and relief defendants (the "**Receiver**" and the "**Receivership**" or "**Receivership Estate**") pursuant to the Court's order dated July 11, 2019 (the "**Consolidated Order**"),[1] respectfully moves the Court for the entry of an order awarding fees and the reimbursement of costs to the Receiver and his professionals.  *See* Doc. 98 (approving retention of professionals).  This motion covers all fees and costs incurred from October 1, 2019 through December 31, 2019.  The Standardized Accounting Report (the "**Accounting Report**") for the time covered by this motion is attached as **Exhibit 1**.[2]

## Case Background and Status

As of the date of filing this motion, the Court has appointed Burton W. Wiand as Receiver over the assets of the following entities and individuals:

a)  Defendants Oasis International Group, Limited; Oasis Management, LLC; Satellite Holdings Company; Michael J. DaCorta; Joseph S. Anile, II; Francisco "Frank" L. Duran; John J. Haas; and Raymond P. Montie, III; and

b)  Relief defendants Mainstream Fund Services, Inc.;[3] Bowling Green Capital Management, LLC; Lagoon Investments, Inc.; Roar of the Lion Fitness, LLC;

---

[1] On July 11, 2019, the Court entered the Consolidated Order (Doc. 177), which combined and superseded two prior orders (Docs. 7 and 44) and is now the operative document governing the Receiver's activities.

[2] The Commodity Futures Trading Commission ("**CFTC**" or the "**Commission**") provided the Receiver with detailed Billing Instructions for Receivers in Civil Actions Commenced by the Commission (the "**Billing Instructions**").  The Accounting Report is one of the requirements contained in the Billing Instructions.

[3] While Mainstream Fund Services, Inc. ("**Mainstream**") is a relief defendant, the Receiver is not acting as Receiver over all of Mainstream's assets.  Mainstream maintained three accounts at Citibank, N.A.  One of these accounts contained funds in the amount of approximately $6,012,397.78 belonging to Oasis International Group, Limited.  Mainstream transferred those funds to the Receiver.  The other accounts held by Mainstream are not included in this Receivership at this time.  *See* Docs. 13 and 14.

>444 Gulf of Mexico Drive, LLC; 4064 Founders Club Drive, LLC; 6922 Lacantera Circle, LLC; 13318 Lost Key Place, LLC; and 4Oaks LLC.

*See* Doc. 177. The foregoing defendants and relief defendants are collectively referred to as the "**Receivership Entities**."

On January 30, 2020, the Receiver filed his Third Interim Report (Doc. 229) (the "**Interim Report**"). The Interim Report contains comprehensive and detailed information regarding the case background and status; the recovery of assets; financial information about Receivership Entities; the Receiver's proposed course of action regarding assets in the Receivership Estate; the potential establishment of a claims process; and related (and/or contemplated) litigation involving Receivership Entities. The Receiver incorporates the Interim Report into this motion and has attached a true and correct copy of the Interim Report as **Exhibit 2** for the Court's convenience. The Interim Report addresses all activity that resulted in the fees and costs sought in this motion.

### Professional Services Rendered and Costs Incurred

The Consolidated Order authorizes the Receiver to "solicit persons and entities ('Retained Personnel') to assist him in carrying out the duties and responsibilities described in this Order" and states that the "Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates," subject to approval by the Court. *See* Doc. 177 ¶¶ 59, 60. The Consolidated Order also requires that the Receiver obtain the Court's authorization of the retention of any Retained Personnel. *See* Doc. 177 ¶ 59. On May 30, 2019, the Receiver filed a motion approve the retention of professionals (Doc. 87), which the Court granted on June 6, 2019 (Doc. 98). The Receiver also filed motions to approve the retention of special foreign counsel in Belize and the

Cayman Islands (Docs. 133 and 184), which the Court granted on June 21, 2019 and August 27, 2019, respectively (Docs. 138 and 187).

Pursuant to the Consolidated Order and the aforementioned orders, the Receiver retained (1) Wiand Guerra King P.A. ("**WGK**") to provide legal services; (2) KapilaMukamal, LLP ("**KM**") to provide forensic accounting services; (3) PDR CPAs ("**PDR**") to provide general accounting and tax services; (4) RWJ Group, LLC ("**RWJ**") to provide asset management and investigative services; (5) E-Hounds, Inc. ("**E-Hounds**") to provide computer forensic services; (6) Glenn D. Godfrey & Company LLP (the "**Godfrey Firm**") to provide legal services in Belize; and (7) Maples Group to provide legal services in the Cayman Islands (collectively, the "**Professionals**").

As shown in the Interim Report, the Professionals have provided services and incurred expenses to investigate the affairs of the Receivership Entities, preserve Receivership assets, attempt to locate and recover additional assets, and analyze investor information for an eventual claims process and possible litigation. These services are for the benefit of aggrieved investors, creditors, and other interested parties.

I.   **The Receiver.**

The Receiver requests the Court award him fees for the professional services rendered from October 1, 2019 through December 31, 2019, in the amount of $23,400.00. The standard hourly rate the Receiver charges clients in private litigation is $500. However, the Receiver agreed, for purposes of his appointment as the Receiver, that his hourly rate would be reduced to $360, representing a twenty-eight percent discount off the standard hourly rate

that he charges clients in comparable matters. This rate was set forth in the Receiver's submission to the CFTC. *See* Doc. 87, Ex. A.

The Receiver commenced services immediately upon his appointment. The Receiver has billed his time for these activities in accordance with the Billing Instructions, which request that this motion contain a narrative of each "business enterprise or litigation matter" for which outside professionals have been employed. The Billing Instructions identify each such business enterprise or litigation matter as a separate "project." Further, the Billing Instructions request that time billed for each project be allocated to one of several Activity Categories.[4] No separate matters have been commenced to warrant billing as a separate project. The Receiver, however, anticipates that separate projects will be created as the Receivership progresses.

For the time covered by this motion, the work of the Receiver and WGK focused on investigating the fraud and related activities, locating and taking control of Receivership assets, investigating and pursuing additional assets for the Receivership, and analyzing

---

[4] The Activity Categories set forth by the Commission in the Billing Instructions are as follows: (1) Asset Analysis and Recovery, which is defined as identification and review of potential assets including causes of action and non-litigation recoveries; (2) Asset Disposition, which is defined as sales, leases, abandonment and related transaction work (where extended series of sales or other disposition of assets is contemplated, the Billing Instructions provide that a separate category should be established for each major transaction); (3) Business Operations, which is defined as issues related to operation of an ongoing business; (4) Case Administration, which is defined as coordination and compliance activities, including preparation of reports to the court, investor inquiries, etc.; and (5) Claims Administration and Objections, which is defined as expenses in formulating, gaining approval of and administering any claims procedure. The Billing Instructions provide that time spent preparing motions for fees may not be charged to the Receivership Estate. In accordance with these instructions, the Receiver created an additional Activity Category for work on fees motions and has accounted for time spent on such work but has not charged any amount for that work.

investor information for an eventual claims process and possible litigation. These activities of the Receiver are set forth in detail in the Interim Report. Ex. 2. A copy of the statement summarizing the Receiver's services rendered for the Receivership is attached as **Exhibit 3**. The Receiver's time and fees for services rendered for each Activity Category from October 1, 2019 through December 31, 2019, are as follows:

**Receivership**
**Receiver's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Disposition | 27.70 | $9,972.00 |
| Asset Analysis and Recovery | 30.90 | $11,124.00 |
| Business Operations | 2.10 | $756.00 |
| Case Administration | 1.60 | $576.00 |
| Claims Administration | 2.70 | $972.00 |
| **TOTAL** | **65.00** | **$23,400.00** |

II.   **Wiand Guerra King P.A.**

The Receiver requests the Court award WGK fees for professional services rendered and costs incurred from October 1, 2019 through December 31, 2019, in the amounts of $79,629.50 and $7,284.67, respectively.[5]  A categorization and summary of all costs for which WGK seeks reimbursement is attached as **Exhibit 4**.

---

[5] The costs sought above include business expenses incurred in the amount of $2,094.71 for various web services for Receivership Entities from May 28, 2019 through September 17, 2019. The Receiver believes he has remedied the issue with the late reporting of these business costs and does not anticipate that there will be any additional late-reported business costs in the next motion for fees. There are also $1,326.90 in costs for services provided by Bolter & Carr in September 2019 and $65.00 in April 2019 for the service of subpoenas. The Receiver has communicated with Bolter & Carr regarding expedient and complete billing at quarter-end and does not anticipate any further issues for future motions for fees relating to Bolter & Carr. Additionally, there is a $60.50 cost for court reporter services on September 24, 2019, which was inadvertently omitted from the last motion for fees.

As an accommodation to the Receiver and to conserve the resources of the Receivership Estate, WGK's attorneys and paralegals have agreed to reduce their standard rates by as much as 30 percent as provided in the fee schedule attached as **Exhibit 5**. WGK began providing services immediately upon the appointment of the Receiver. The activities of WGK for the time covered by this motion are set forth in the Interim Report. *See* Ex. 2. WGK has billed time for these activities in accordance with the Billing Instructions. As discussed above, the work of the Receiver and WGK focused on investigating the fraud and related activities, locating and taking control of Receivership assets, investigating and pursuing additional assets for the Receivership, and analyzing investor information for the eventual claims process and possible litigation. Ex. 2. A copy of the statement summarizing the services rendered and costs incurred by WGK from October 1, 2019 through December 31, 2019, is attached as **Exhibit 6**. WGK's time and fees for services rendered on this matter for each Activity Category are as follows:

**Receivership**
**WGK's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Disposition | 68.80 | $15,398.00 |
| Asset Analysis and Recovery | 197.40 | $40,713.00 |
| Business Operations | 19.40 | $2,814.00 |
| Case Administration | 51.80 | $13,995.00 |
| Claims Administration | 23.50 | $6,709.50 |
| **TOTAL** | **360.90** | **$79,629.50** |

### III. KapilaMukamal, LLP.

The Receiver requests the Court award KM fees for professional services rendered and costs incurred from October 1, 2019 through December 31, 2019, in the amount of $25,158.26. KM is a forensic accounting firm that specializes in insolvency and restructuring, Ponzi schemes, fraud investigations, insolvency taxation, business valuation, and litigation support. At the Receiver's request, KM performed forensic reconstructions of numerous bank accounts, which required the analysis of thousands of transactions involving hundreds of investors. Through this analysis, KM has identified the individualized amounts most investors lost in connection with the scheme as well the amounts certain other investors gained as a result of the scheme. KM's analysis will allow the Receiver, at minimum, to (1) institute a claims process to return money to defrauded investors (with approved claims); (2) begin litigation against those that profited from the scheme; and (3) calculate a total loss amount for additional litigation against third-parties and related purposes. As an accommodation to the Receiver and to conserve the resources of the Receivership Estate, Soneet Kapila, a principal of KM, has agreed to reduce his hourly billing rate and to discount all other forensic accounting work by 15 percent. KM started providing services for the Receivership on April 30, 2019. Copies of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite **Exhibit 7**.

### IV. PDR CPAs.

The Receiver requests the Court award PDR fees for professional services rendered and costs incurred from October 1, 2019 through December 31, 2019, in the amount of $5,818.75. PDR is an accounting firm that specializes in tax matters and has extensive

experience with the tax treatment of settlement funds. PDR is assisting the Receiver with internal Receivership accounting, financial reporting, and tax preparation and filing. PDR started providing services for the Receivership on May 17, 2019. Copies of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite **Exhibit 8**.

## V.     E-Hounds, Inc.

The Receiver requests the Court award E-Hounds fees for professional services rendered and costs incurred from October 1, 2019 through December 31, 2019, in the amount of $12,867.40. E-Hounds is a computer forensics firm that assists the Receiver in securing and analyzing electronic data. E-Hounds started providing services for the Receivership on April 22, 2019. Copies of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite **Exhibit 9**.

## VI.    The RWJ Group, LLC.

The Receiver requests the Court award RWJ fees for professional services rendered and costs incurred from October 1, 2019 through December 31, 2019, in the amounts of $16,357.50 and $1,469.14, respectively. RWJ, which is owned and operated by Roger Jernigan, is an asset management and investigation firm. Mr. Jernigan assists the Receiver with overseeing ongoing business operations and property recovered by the Receiver, including aiding with efforts to sell such businesses and property. His efforts are designed to ensure that Receivership assets are maintained and/or enhanced to allow for maximum recovery for the Receivership Estate. RWJ started providing services for the Receivership on

April 18, 2019. Copies of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite **Exhibit 10**.

### VII. Glenn D. Godfrey & Co. LLP.

The Godfrey Firm did not incur expenses or provide services for the time covered by this motion. The Godfrey Firm is a law firm located in Belize and is experienced in providing legal services to the financial services industry, as well as providing these services to international clients wishing to establish businesses in Belize. The Godfrey Firm assisted the Receiver with transferring control of Oasis Global FX, S.A. to him, which will ultimately allow the Receiver to repatriate funds held in Belize to the United States. The Godfrey Firm started providing services for the Receivership on July 12, 2019.

### VIII. Maples Group.

The Receiver requests the Court award the Maples Group fees for professional services rendered and costs incurred through December 31, 2019, in the amount of $13,121.80.[6] The Maples Group, located in the Cayman Islands, is providing local counsel services to effectuate the transfer of control of the Receivership defendant, Oasis International Group, Ltd. (organized in the Cayman Islands) to the Receiver, allowing the

---

[6] This amount includes fees and costs of $1,441.25 incurred in September 2019, $2,451.45 incurred in June 2019, and $403.66 incurred in April 2019. The fees and costs in April were incurred to maintain the good standing of Oasis International Group in the Cayman Islands. The fees and costs in June were generally incurred responding to the Receiver's inquiries or otherwise in cooperation with the Receiver. In August 2019, the Receiver moved the Court to formally engage the Maples Group to transfer ownership of OIG to the Receiver, which motion the Court granted. *See* Docs. 184, 187. The fees and costs in September are related to that engagement. Due to inadvertent error, the Maples Group failed to submit the invoices for these fees and costs to the Receiver before the last motion for fees was filed with the Court. Because the services provided ultimately benefitted the Receivership Estate, however, the Receiver requests that the Court authorize the payment of the earlier invoices.

Receiver to direct the operations of OIG and carry-out his directives under the Consolidated Order. A copy of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite **Exhibit 11**. The Court previously approved the payment of a $10,000 retainer to the Maples Group. *See* Doc. 187. The Court also previously approved the payment of $7,083.40 to the Maples Group in its order on the Receiver's second motion for fees. *See* Doc. 207. As such, the remaining retainer amount which may be applied to the fees and costs sought herein is $2,916.60.

## MEMORANDUM OF LAW

It is well settled that this Court has the power to appoint a receiver and to award the receiver and those appointed by him fees and costs for their services. *See, e.g., S.E.C. v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) (receiver is entitled to compensation for faithful performance of his duties); *Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984) ("[T]he receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to reasonable compensation for his efforts."); *S.E.C. v. Custable*, 1995 WL 117935 (N.D. Ill. Mar. 15, 1995) (receiver is entitled to fees where work was of high quality and fees were reasonable); *S.E.C. v. Mobley*, 2000 WL 1702024 (S.D.N.Y. Nov. 13, 2000) (court awarded reasonable fees for the receiver and his professionals); *see also* Doc. 7 ¶ 40 & Doc. 44 ¶ 58. The determination of fees to be awarded is largely within the discretion of the trial court. *See Monaghan v. Hill*, 140 F.2d 31, 34 (9th Cir. 1944). In determining reasonable compensation for the services rendered by the Receiver and his Professionals, the Court should consider the circumstances surrounding the Receivership. *See Elliot*, 953 F.2d at 1577.

Here, because of the nature of this case, it is necessary for the Receiver to employ attorneys and accountants experienced and familiar with financial frauds, federal receiverships, banking, and finance. Further, to perform the services required and achieve the results obtained to date, the skills and experience of the Receiver and the Professionals in the areas of fraud, commodities, computer and accounting forensics, and financial transactions are indispensable.

As discussed above, the Receiver and WGK have discounted their normal and customary rates as an accommodation to the Receivership and to conserve Receivership assets. The rates charged by the attorneys and paralegals are at or below those charged by attorneys and paralegals of comparable skill from other law firms in the Middle District of Florida.

This case has been time-intensive for the Receiver and his Professionals because of the need to resolve many issues rapidly and efficiently. The attached Exhibits detail the time, nature, and extent of the professional services rendered by the Receiver and his Professionals for the benefit of investors, creditors, and other interested parties. The Receiver anticipates that additional funds will be obtained through the Receiver's negotiations or litigation with third parties.

Although the CFTC investigated and filed the initial pleadings in this case, as directed by the Consolidated Order (*see, e.g.,* Doc. 177 ¶ 44), the Receiver is now involved with the investigation and forensic analysis of the events leading to the commencement of the pending action, the efforts to locate and gather investors' money, the determination of investor and creditor claims and any ultimate payment of these claims. While the Receiver is sensitive to

the need to conserve the Receivership Entities' assets, he believes the fees and costs expended to date were reasonable, necessary, and benefited the Receivership. The Commission has no objection to the relief sought in this motion. *Cf. Custable*, 1995 WL 117935 at *7 ("In securities law receiverships, the position of the SEC in regard to the awarding of fees will be given great weight.").

## CONCLUSION

Under the Consolidated Order, the Receiver, among other things, is authorized and empowered to engage professionals to assist him in carrying out his duties and obligations. The Consolidated Order further provides that he apply to the Court for authority to pay himself and his Professionals for services rendered and costs incurred. In exercising his duties, the Receiver has determined that the services rendered and their attendant fees and costs were reasonable, necessary, advisable, and in the best interests of the Receivership.

WHEREFORE, Burton W. Wiand, the Court-appointed Receiver, respectfully requests that this Court award the following sums and direct that payment be made from the Receivership assets:[7]

| | |
|---|---|
| Burton W. Wiand, Receiver | $23,400.00 |
| Wiand Guerra King P.A. | $86,914.17 |
| KapilaMukamal, LLP | $25,158.26 |
| PDR CPAs | $5,818.75 |
| E-Hounds, Inc. | $12,867.40 |
| RWJ Group, LLC | $17,826.64 |
| Maples Group[8] | $13,121.80 |

---

[7] A proposed order is attached as **Exhibit 12**.

[8] With the Court's prior approval, the Receiver has already provided a $10,000 retainer to the Maples Group. Doc. 187. Further, as noted above, $7,083.40 has already been applied from this retainer. Therefore, only an additional $10,205.20 will be paid from the Receivership assets.

## **LOCAL RULE 3.01(g) CERTIFICATION OF COUNSEL**

Prior to filing the Receiver's Third Interim Motion for Order Awarding Fees, Costs, and Reimbursement of Costs to Receiver and His Professionals, the Receiver submitted it to the CFTC, which informed the Receiver it has no objection to the payment of fees and the reimbursement of costs. Defendant DaCorta, defendant Montie, defendant Haas, defendant Anile, defendant Duran, and relief defendant Mainstream have no objection to the relief requested in the motion. The other entities (except Satellite Holdings, which is associated with defendant Haas) have defaulted. The United States (as an intervening party) takes no position on the Receiver's motion, which is consistent with its stance on prior fee applications. As such, the Receiver believes no party intends to oppose this motion.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 14, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I have also provided the following non-CM/ECF participants with a true and correct copy of the foregoing by electronic mail and US mail to:

Gerard Marrone
Law Office of Gerard Marrone, P.C.
66-85 73rd Place
Second Floor
Middle Village, NY  11379
gmarronelaw@gmail.com
*Counsel for Defendant Joseph S. Anile, II*

Michael DaCorta
13313 Halkyn Point
Orlando, FL 32832
cdacorta@yahoo.com

Francisco "Frank" Duran
535 Fallbrook Drive
Venice, FL  34292
flduran7@gmail.com

                                                  **s/ Jared J. Perez**
Jared J. Perez, FBN 0085192
Email:  jperez@wiandlaw.com
Eric R. Feld, FBN 92741
Email: efeld@wiandlaw.com
WIAND GUERRA KING P.A.
5505 West Gray Street
Tampa, FL  33609
Tel.:     (813) 347-5100
Fax:     (813) 347-5198

*Attorneys for the Receiver, Burton W. Wiand*

## RECEIVER'S CERTIFICATION

The Receiver has reviewed this Third Interim Motion for Order Awarding Fees, Costs, and Reimbursement of Costs to Receiver and His Professionals (the "**Motion**").

To the best of the Receiver's knowledge, information, and belief formed after reasonable inquiry, the Motion and all fees and expenses herein are true and accurate and comply with the Billing Instructions provided to the Receiver by the Commodity Futures Trading Commission.

All fees contained in the Motion are based on the rates listed in the fee schedule, attached as Exhibit 5.  Such fees are reasonable, necessary, and commensurate with (if not below the hourly rate that is commensurate with) the skill and experience required for the activity performed.

The Receiver has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth in the Billing Instructions for photocopies and facsimile transmission).

To the extent the Receiver seeks reimbursement for any service which the Receiver justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), the Receiver has requested reimbursement only for the amount billed to the Receiver by the third-party vendor and/or paid by the Receiver to such vendor.  The Receiver is not making a profit on such reimbursable services.

The Receiver believes that the fees and expenses included in this Motion were incurred in the best interests of the Receivership Estate. With the exception of the Billing Instructions and the Court-approved engagements described above, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

**s/ Burton W. Wiand**
Burton W. Wiand, as Receiver
