# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

COMMODITY FUTURES TRADING
COMMISSION,

Case No. 8:19-CV-886-T-33SPF

       Plaintiff,

v.

OASIS INTERNATIONAL GROUP,
LIMITED; OASIS MANAGEMENT, LLC;
SATELLITE HOLDINGS COMPANY;
MICHAEL J DACORTA; JOSEPH S.
ANILE, II.; RAYMOND P MONTIE III;
FRANCISCO "FRANK" L. DURAN; and
JOHN J. HAAS,

       Defendants;

and

MAINSTREAM FUND SERVICES, INC.;
BOWLING GREEN CAPITAL
MANAGEMENT LLC; LAGOON
INVESTMENTS, INC.; ROAR OF THE
LION FITNESS, LLC; 444 GULF OF
MEXICO DRIVE, LLC; 4064 FOUNDERS
CLUB DRIVE, LLC; 6922 LACANTERA
CIRCLE, LLC; 13318 LOST KEY PLACE,
LLC; and 4 OAKS LLC,

Relief Defendants.

_____/

## RECEIVER'S FOURTH INTERIM MOTION FOR ORDER AWARDING FEES, COSTS, AND REIMBURSEMENT OF COSTS TO RECEIVER AND HIS PROFESSIONALS

Burton W. Wiand, the Court-appointed receiver over the assets of the above-captioned defendants and relief defendants (the "**Receiver**" and the "**Receivership**" or "**Receivership Estate**") pursuant to the Court's order dated July 11, 2019 (the "**Consolidated Order**"),[1] respectfully moves the Court for the entry of an order awarding fees and the reimbursement of costs to the Receiver and his professionals. *See* Doc. 98 (approving retention of professionals). This motion covers all fees and costs incurred from January 1, 2020 through March 31, 2020. The Standardized Accounting Report (the "**Accounting Report**") for the time covered by this motion is attached as **<u>Exhibit 1</u>**.[2]

### Case Background and Status

As of the date of filing this motion, the Court has appointed Burton W. Wiand as Receiver over the assets of the following entities and individuals:

a)    Defendants Oasis International Group, Limited; Oasis Management, LLC; Satellite Holdings Company; Michael J. DaCorta; Joseph S. Anile, II; Francisco "Frank" L. Duran; John J. Haas; and Raymond P. Montie, III; and

b)    Relief defendants Mainstream Fund Services, Inc.;[3] Bowling Green Capital Management, LLC; Lagoon Investments, Inc.; Roar of the Lion Fitness, LLC;

---

[1] On July 11, 2019, the Court entered the Consolidated Order (Doc. 177), which combined and superseded two prior orders (Docs. 7 and 44) and is now the operative document governing the Receiver's activities.

[2] The Commodity Futures Trading Commission ("**CFTC**" or the "**Commission**") provided the Receiver with detailed Billing Instructions for Receivers in Civil Actions Commenced by the Commission (the "**Billing Instructions**"). The Accounting Report is one of the requirements contained in the Billing Instructions.

[3] While Mainstream Fund Services, Inc. ("**Mainstream**") is a relief defendant, the Receiver is not acting as Receiver over all of Mainstream's assets. Mainstream maintained three accounts at Citibank, N.A. One of these accounts contained funds in the amount of approximately $6,012,397.78 belonging to Oasis International Group, Limited. Mainstream transferred those funds to the Receiver. The other accounts held by Mainstream are not included in this Receivership at this time. *See* Docs. 13 and 14.

444 Gulf of Mexico Drive, LLC; 4064 Founders Club Drive, LLC; 6922 Lacantera Circle, LLC; 13318 Lost Key Place, LLC; and 4Oaks LLC.

*See* Doc. 177.  The foregoing defendants and relief defendants are collectively referred to as the "**Receivership Entities**."

On April 30, 2020, the Receiver filed his Fourth Interim Report (Doc. 266) (the "**Interim Report**").  The Interim Report contains comprehensive and detailed information regarding the case background and status; the recovery of assets; financial information about Receivership Entities; the Receiver's proposed course of action regarding assets in the Receivership Estate; the establishment of a claims process; and related (and/or contemplated) litigation involving Receivership Entities.  The Receiver incorporates the Interim Report into this motion and has attached a true and correct copy of the Interim Report as **<u>Exhibit 2</u>** for the Court's convenience.  The Interim Report addresses all activity that resulted in the fees and costs sought in this motion.

**Professional Services Rendered and Costs Incurred**

The Consolidated Order authorizes the Receiver to "solicit persons and entities ('Retained Personnel') to assist him in carrying out the duties and responsibilities described in this Order" and states that the "Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates," subject to approval by the Court.  *See* Doc. 177 ¶¶ 59, 60.  The Consolidated Order also requires that the Receiver obtain the Court's authorization of the retention of any Retained Personnel.  *See* Doc. 177 ¶ 59.  On May 30, 2019, the Receiver filed a motion approve the retention of professionals (Doc. 87), which the Court granted on June 6, 2019 (Doc. 98).  The Receiver also filed motions to approve the retention of special foreign counsel in Belize and the

Cayman Islands (Docs. 133 and 184), which the Court granted on June 21, 2019 and August 27, 2019, respectively (Docs. 138 and 187).  The Receiver filed motions to approve the retention of Sallah Astarita & Cox, LLC (the "**Sallah Firm**") as counsel and Sergio C. Godinho as litigation consultant in connection with the investigation and prosecution of claims against Mainstream (Docs. 238 and 253), which the Court granted on April 7, 2020 (Doc. 261).[4]  On March 24, 2020, the Receiver filed a motion to retain John Waechter and Englander Fischer ("**Englander Fischer**") (Doc. 258), which the Court granted on April 13, 2020.

Pursuant to the Consolidated Order and the aforementioned orders, the Receiver retained (1) Wiand Guerra King P.A. ("**WGK**") to provide legal services; (2) KapilaMukamal, LLP ("**KM**") to provide forensic accounting services; (3) PDR CPAs ("**PDR**") to provide general accounting and tax services; (4) RWJ Group, LLC ("**RWJ**") to provide asset management and investigative services; (5) E-Hounds, Inc. ("**E-Hounds**") to provide computer forensic services; (6) Glenn D. Godfrey & Company LLP (the "**Godfrey Firm**") to provide legal services in Belize; (7) Maples Group to provide legal services in the Cayman Islands; (8) Sergio Godinho to provide litigation consulting in connection with litigation against Mainstream; and (9) Englander Fischer to assist the Receiver and his counsel with clawback litigation  (collectively, the "**Professionals**").[5]

---

[4] The Sallah Firm has been engaged on a contingency fee basis and thus will not be included in interim fee motions.

[5] Mr. Godinho and Englander Fischer did not incur expenses or provide services for the time covered by this motion.

As shown in the Interim Report, the Professionals have provided services and incurred expenses to investigate the affairs of the Receivership Entities, preserve Receivership assets, attempt to locate and recover additional assets, analyze investor information for the claims process and litigation, and institute and administer the claims process. These services are for the benefit of aggrieved investors, creditors, and other interested parties.

I.   **The Receiver.**

The Receiver requests the Court award him fees for the professional services rendered from January 1, 2020 through March 31, 2020, in the amount of $23,436.00. The standard hourly rate the Receiver charges clients in private litigation is $500. However, the Receiver agreed, for purposes of his appointment as the Receiver, that his hourly rate would be reduced to $360, representing a twenty-eight percent discount off the standard hourly rate that he charges clients in comparable matters. This rate was set forth in the Receiver's submission to the CFTC. *See* Doc. 87, Ex. A.

The Receiver commenced services immediately upon his appointment. The Receiver has billed his time for these activities in accordance with the Billing Instructions, which request that this motion contain a narrative of each "business enterprise or litigation matter" for which outside professionals have been employed. The Billing Instructions identify each such business enterprise or litigation matter as a separate "project." Further, the Billing Instructions request that time billed for each project be allocated to one of several Activity

Categories.[6]  No separate matters warranted billing as a separate project during the time covered by this motion.  The Receiver, however, created two separate projects for litigation commenced on April 14, 2020, which will be reflected in the Receiver's next motion for fees. The Receiver anticipates that additional projects will be created as the Receivership progresses.

For the time covered by this motion, the work of the Receiver and WGK focused on investigating the fraud and related activities, locating and taking control of Receivership assets, investigating and pursuing additional assets for the Receivership, analyzing investor information for the claims process and litigation, and instituting and administering the claims process.  These activities of the Receiver are set forth in detail in the Interim Report.  Ex. 2. A copy of the statement summarizing the Receiver's services rendered for the Receivership is attached as **Exhibit 3**.  The Receiver's time and fees for services rendered for each Activity Category from January 1, 2020 through March 31, 2020, are as follows:

---

[6] The Activity Categories set forth by the Commission in the Billing Instructions are as follows: (1) Asset Analysis and Recovery, which is defined as identification and review of potential assets including causes of action and non-litigation recoveries; (2) Asset Disposition, which is defined as sales, leases, abandonment and related transaction work (where extended series of sales or other disposition of assets is contemplated, the Billing Instructions provide that a separate category should be established for each major transaction); (3) Business Operations, which is defined as issues related to operation of an ongoing business; (4) Case Administration, which is defined as coordination and compliance activities, including preparation of reports to the court, investor inquiries, etc.; and (5) Claims Administration and Objections, which is defined as expenses in formulating, gaining approval of and administering any claims procedure.  The Billing Instructions provide that time spent preparing motions for fees may not be charged to the Receivership Estate.  In accordance with these instructions, the Receiver created an additional Activity Category for work on fees motions and has accounted for time spent on such work but has not charged any amount for that work.

**Receivership**
**Receiver's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Disposition | 7.60 | $2,736.00 |
| Asset Analysis and Recovery | 46.10 | $16,596.00 |
| Business Operations | 1.20 | $432.00 |
| Case Administration | 7.70 | $2,772.00 |
| Claims Administration | 2.50 | $900.00 |
| **TOTAL** | **65.10** | **$23,436.00** |

## II.   **Wiand Guerra King P.A.**

The Receiver requests the Court award WGK fees for professional services rendered and costs incurred from January 1, 2020 through March 31, 2020, in the amounts of $168,274.50 and $10,030.14, respectively.   A categorization and summary of all costs for which WGK seeks reimbursement is attached as **Exhibit 4**.

As an accommodation to the Receiver and to conserve the resources of the Receivership Estate, WGK's attorneys and paralegals have agreed to reduce their standard rates by as much as 30 percent as provided in the fee schedule attached as **Exhibit 5**.   WGK began providing services immediately upon the appointment of the Receiver.   The activities of WGK for the time covered by this motion are set forth in the Interim Report.   *See* Ex. 2. WGK has billed time for these activities in accordance with the Billing Instructions.   As discussed above, the work of the Receiver and WGK focused on investigating the fraud and related activities, locating and taking control of Receivership assets, investigating and pursuing additional assets for the Receivership, analyzing investor information for the claims process and litigation, and instituting and administering the claims process. Ex. 2. A copy of the statement summarizing the services rendered and costs incurred by WGK from January 1,

2020 through March 31, 2020, is attached as **Exhibit 6**.  WGK's time and fees for services rendered on this matter for each Activity Category are as follows:

**Receivership**
**WGK's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Disposition | 41.40 | $9,074.50 |
| Asset Analysis and Recovery | 357.90 | $91,258.50 |
| Business Operations | 11.40 | $1,570.50 |
| Case Administration | 66.80 | $15,955.50 |
| Claims Administration | 293.20 | $50,415.50 |
| **TOTAL** | **770.70** | **$168,274.50** |

### III.   **KapilaMukamal, LLP.**

The Receiver requests the Court award KM fees for professional services rendered and costs incurred from January 1, 2020 through March 31, 2020, in the amount of $27,748.01.   KM is a forensic accounting firm that specializes in insolvency and restructuring, Ponzi schemes, fraud investigations, insolvency taxation, business valuation, and litigation support.  At the Receiver's request, KM performed forensic reconstructions of numerous bank accounts, which required the analysis of thousands of transactions involving hundreds of investors.  Through this analysis, KM has identified the individualized amounts most investors lost in connection with the scheme as well the amounts certain other investors gained as a result of the scheme.  KM's analysis allowed the Receiver to (1) institute a claims process to return money to defrauded investors (with approved claims); and (2) begin litigation against those that profited from the scheme.  KM's analysis also will allow the Receiver, among other things, to calculate a total loss amount for additional litigation against third-parties and related purposes.  As an accommodation to the Receiver and to conserve the

resources of the Receivership Estate, Soneet Kapila, a principal of KM, has agreed to reduce his hourly billing rate and to discount all other forensic accounting work by 15 percent.  KM started providing services for the Receivership on April 30, 2019.  Copies of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite **Exhibit 7**.

IV.     **PDR CPAs.**

The Receiver requests the Court award PDR fees for professional services rendered and costs incurred from January 1, 2020 through March 31, 2020, in the amount of $5,554.50.   PDR is an accounting firm that specializes in tax matters and has extensive experience with the tax treatment of settlement funds.  PDR is assisting the Receiver with internal Receivership accounting, financial reporting, and tax preparation and filing.  PDR started providing services for the Receivership on May 17, 2019.  Copies of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite **Exhibit 8**.

V.      **E-Hounds, Inc.**

The Receiver requests the Court award E-Hounds fees for professional services rendered and costs incurred from January 1, 2020 through March 31, 2020, in the amount of $5,902.50.  E-Hounds is a computer forensics firm that assists the Receiver in securing and analyzing electronic data.  E-Hounds started providing services for the Receivership on April 22, 2019.  Copies of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite **Exhibit 9**.

## VI.    The RWJ Group, LLC.

The Receiver requests the Court award RWJ fees for professional services rendered and costs incurred from January 1, 2020 through March 31, 2020, in the amounts of $7,323.75 and $847.58, respectively.  RWJ, which is owned and operated by Roger Jernigan, is an asset management and investigation firm.  Mr. Jernigan assists the Receiver with overseeing ongoing business operations and property recovered by the Receiver, including aiding with efforts to sell such businesses and property.  His efforts are designed to ensure that Receivership assets are maintained and/or enhanced to allow for maximum recovery for the Receivership Estate.  RWJ started providing services for the Receivership on April 18, 2019.  Copies of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite **Exhibit 10**.

## VII.    Glenn D. Godfrey & Co. LLP.

The Receiver requests the Court award the Godfrey Firm fees for professional services rendered and costs incurred from January 1, 2020 through March 31, 2020, in the amount of $6,625.00.[7]  The Godfrey Firm is a law firm located in Belize and is experienced in providing legal services to the financial services industry, as well as providing these services to international clients wishing to establish businesses in Belize.  The Godfrey Firm is assisting the Receiver in his efforts to repatriate over $500,000 of funds held in Belize to the United States.  The Godfrey Firm started providing services for the Receivership on July 12, 2019.  A copy of the statement summarizing the services rendered and costs incurred for the pertinent period is attached as **Exhibit 11**.

---

[7] This amount includes a general sales tax imposed by the Belize government on goods and services.

VIII.   **Maples Group.**

The Receiver requests the Court award the Maples Group fees for professional services rendered and costs incurred from January 1, 2020 through March 31, 2020, in the amount of $608.75.  The Maples Group, located in the Cayman Islands, is providing local counsel services to effectuate the transfer of control of the Receivership defendant, Oasis International Group, Ltd. (organized in the Cayman Islands) to the Receiver, allowing the Receiver to direct the operations of OIG and carry-out his directives under the Consolidated Order.  A copy of the statement summarizing the services rendered and costs incurred for the pertinent period is attached as **Exhibit 12**.

## MEMORANDUM OF LAW

It is well settled that this Court has the power to appoint a receiver and to award the receiver and those appointed by him fees and costs for their services.  *See, e.g., S.E.C. v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) (receiver is entitled to compensation for faithful performance of his duties); *Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984) ("[T]he receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to reasonable compensation for his efforts."); *S.E.C. v. Custable*, 1995 WL 117935 (N.D. Ill. Mar. 15, 1995) (receiver is entitled to fees where work was of high quality and fees were reasonable); *S.E.C. v. Mobley*, 2000 WL 1702024 (S.D.N.Y. Nov. 13, 2000) (court awarded reasonable fees for the receiver and his professionals); *see also* Doc. 7 ¶ 40 & Doc. 44 ¶ 58.  The determination of fees to be awarded is largely within the discretion of the trial court.  *See Monaghan v. Hill*, 140 F.2d 31, 34 (9th Cir. 1944).  In determining reasonable compensation for the services rendered by the Receiver and his

Professionals, the Court should consider the circumstances surrounding the Receivership. *See Elliot*, 953 F.2d at 1577.

Here, because of the nature of this case, it is necessary for the Receiver to employ attorneys and accountants experienced and familiar with financial frauds, federal receiverships, banking, and finance.  Further, to perform the services required and achieve the results obtained to date, the skills and experience of the Receiver and the Professionals in the areas of fraud, commodities, computer and accounting forensics, and financial transactions are indispensable.

As discussed above, the Receiver and WGK have discounted their normal and customary rates as an accommodation to the Receivership and to conserve Receivership assets.  The rates charged by the attorneys and paralegals are at or below those charged by attorneys and paralegals of comparable skill from other law firms in the Middle District of Florida.

This case has been time-intensive for the Receiver and his Professionals because of the need to resolve many issues rapidly and efficiently.  The attached Exhibits detail the time, nature, and extent of the professional services rendered by the Receiver and his Professionals for the benefit of investors, creditors, and other interested parties.  The Receiver anticipates that additional funds will be obtained through the Receiver's negotiations or litigation with third parties.

Although the CFTC investigated and filed the initial pleadings in this case, as directed by the Consolidated Order (*see, e.g.,* Doc. 177 ¶ 44), the Receiver is now involved with the investigation and forensic analysis of the events leading to the commencement of the pending

action, the efforts to locate and gather investors' money, the determination of investor and creditor claims and any ultimate payment of these claims. While the Receiver is sensitive to the need to conserve the Receivership Entities' assets, he believes the fees and costs expended to date were reasonable, necessary, and benefited the Receivership. The Commission has no objection to the relief sought in this motion. *Cf. Custable*, 1995 WL 117935 at *7 ("In securities law receiverships, the position of the SEC in regard to the awarding of fees will be given great weight.").

## **<u>CONCLUSION</u>**

Under the Consolidated Order, the Receiver, among other things, is authorized and empowered to engage professionals to assist him in carrying out his duties and obligations. The Consolidated Order further provides that he apply to the Court for authority to pay himself and his Professionals for services rendered and costs incurred. In exercising his duties, the Receiver has determined that the services rendered and their attendant fees and costs were reasonable, necessary, advisable, and in the best interests of the Receivership.

WHEREFORE, Burton W. Wiand, the Court-appointed Receiver, respectfully requests that this Court award the following sums and direct that payment be made from the Receivership assets:[8]

| | |
|---|---|
| Burton W. Wiand, Receiver | $23,436.00 |
| Wiand Guerra King P.A. | $178,304.64 |
| KapilaMukamal, LLP | $27,748.01 |
| PDR CPAs | $5,554.50 |
| E-Hounds, Inc. | $5,902.50 |
| RWJ Group, LLC | $8,171.33 |
| Glenn D. Godfrey | $6,625.00 |
| Maples Group | $608.75 |

## LOCAL RULE 3.01(g) CERTIFICATION OF COUNSEL

Undersigned counsel for the Receiver has conferred with counsel for the CFTC and is authorized to represent to the Court that the CFTC does not oppose the relief requested in this motion. The United States (as an intervening party) takes no position on the motion. Defendants Duran, Haas, Montie, and Anile and relief defendant Mainstream do not oppose the relief requested in the motion. The Receiver's representatives sent a copy of this motion to defendant DaCorta by email on May 21, 2020 and followed-up by email on May 25, 2020 but have been unable to ascertain his position.

---

[8] A proposed order is attached as **Exhibit 13**.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on May 26, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I have also provided the following non-CM/ECF participants with a true and correct copy of the foregoing by electronic mail and US mail to:

> Gerard Marrone
> Law Office of Gerard Marrone, P.C.
> 66-85 73rd Place
> Second Floor
> Middle Village, NY  11379
> gmarronelaw@gmail.com
> *Counsel for Defendant Joseph S. Anile, II*
>
> Michael DaCorta
> 13313 Halkyn Point
> Orlando, FL 32832
> cdacorta@yahoo.com
>
> Francisco "Frank" Duran
> 535 Fallbrook Drive
> Venice, FL  34292
> flduran7@gmail.com

**s/ Jared J. Perez**
Jared J. Perez, FBN 0085192
Email:  jperez@wiandlaw.com
Lawrence J. Dougherty, FBN 0068637
Email: ldougherty@wiandlaw.com
WIAND GUERRA KING P.A.
5505 West Gray Street
Tampa, FL  33609
Tel.:   (813) 347-5100
Fax:   (813) 347-5198

*Attorneys for the Receiver, Burton W. Wiand*

## <u>RECEIVER'S CERTIFICATION</u>

The Receiver has reviewed this Fourth Interim Motion for Order Awarding Fees, Costs, and Reimbursement of Costs to Receiver and His Professionals (the "**Motion**").

To the best of the Receiver's knowledge, information, and belief formed after reasonable inquiry, the Motion and all fees and expenses herein are true and accurate and comply with the Billing Instructions provided to the Receiver by the Commodity Futures Trading Commission.

All fees contained in the Motion are based on the rates listed in the fee schedule, attached as Exhibit 5. Such fees are reasonable, necessary, and commensurate with (if not below the hourly rate that is commensurate with) the skill and experience required for the activity performed.

The Receiver has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth in the Billing Instructions for photocopies and facsimile transmission).

To the extent the Receiver seeks reimbursement for any service which the Receiver justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), the Receiver has requested reimbursement only for the amount billed to the Receiver by the third-party vendor and/or paid by the Receiver to such vendor. The Receiver is not making a profit on such reimbursable services.

The Receiver believes that the fees and expenses included in this Motion were incurred in the best interests of the Receivership Estate.  With the exception of the Billing Instructions and the Court-approved engagements described above, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

**s/ Burton W. Wiand**
Burton W. Wiand, as Receiver