**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

COMMODITY FUTURES TRADING
COMMISSION,

        Case No. 8:19-CV-886-T-33SPF

    Plaintiff,

v.

OASIS INTERNATIONAL GROUP,
LIMITED; OASIS MANAGEMENT, LLC;
SATELLITE HOLDINGS COMPANY;
MICHAEL J DACORTA; JOSEPH S.
ANILE, II.; RAYMOND P MONTIE III;
FRANCISCO "FRANK" L. DURAN; and
JOHN J. HAAS,

    Defendants;

and

MAINSTREAM FUND SERVICES, INC.;
BOWLING GREEN CAPITAL
MANAGEMENT LLC; LAGOON
INVESTMENTS, INC.; ROAR OF THE
LION FITNESS, LLC; 444 GULF OF
MEXICO DRIVE, LLC; 4064 FOUNDERS
CLUB DRIVE, LLC; 6922 LACANTERA
CIRCLE, LLC; 13318 LOST KEY PLACE,
LLC; and 4 OAKS LLC,

    Relief Defendants.

_____/

**THE RECEIVER'S SECOND VERIFIED MOTION**
**TO APPROVE THE PRIVATE SALE OF REAL PROPERTY – SPECIFICALLY,**
**13318 LOST KEY PLACE, LAKEWOOD RANCH, FLORIDA 34202**

    Burton W. Wiand, as receiver over the assets of the above-captioned defendants and

relief defendants (the "**Receiver**" and the "**Receivership**" or "**Receivership Estate**") moves

the Court to approve the sale of 13318 Lost Key Place, Lakewood Ranch, Florida 34202 (the "**Property**") to Raymond Abreu (the "**Purchaser**") for $1,100,000.[1] A copy of the Purchase and Sale Agreement is attached as **Exhibit 1** (the "**PSA**"). As explained below, the Receiver believes the proposed sale is commercially reasonable and will result in a fair and equitable recovery for the Receivership Estate.

## BACKGROUND

At the request of the Commodity Futures Trading Commission ("**CFTC**"), the Court appointed the Receiver on April 15, 2019 and directed him, in relevant part, to "[t]ake exclusive custody, control, and possession of the Receivership Estate," which includes "all the funds, properties, premises, accounts, income, now or hereafter due or owing to the Receivership Defendants, and other assets directly or indirectly owned, beneficially or otherwise, by the Receivership Defendants." Doc. 7 at p. 14, ¶ 32 & p. 15, ¶ 30.b.

The Court also directed the Receiver to develop a plan for the liquidation of Receivership assets (Doc. 44 ¶¶ 51, 52), which the Receiver filed on June 7, 2019 (Doc. 103) (the "**Liquidation Plan**"). That same day, the Receiver moved the Court to approve (1) the Liquidation Plan, (2) a Memorandum of Understanding (the "**MOU**") between the Receiver and the United States Marshals Service ("**USMS**"), and (3) a Consent Forfeiture Agreement (the "**Consent**") between the Receiver and the Department of Justice ("**DOJ**"). Doc. 105. The Court granted the Receiver's motion and approved the attached documents on June 13, 2019.

---

[1] This is the Receiver's second motion with respect to this Property because the previous purchasers were unable to close the transaction due to a tax issue. They paid the Receiver $10,000 as a form of damages, thereby reimbursing the fees and costs incurred with respect to the unsuccessful transaction. *See* Docs. 297, 308, 320, 321.

Doc. 112. On July 11, 2019, the Court entered a Consolidated Receivership Order (Doc. 177) (the "**Consolidated Order**"), which combined and superseded two prior orders (Docs. 7 & 44) and is now the operative document governing the Receiver's activities.

**The Procedures Applicable to Sales of Real Property**

The Consolidated Order requires the Receiver to obtain Court approval of sales of real (as opposed to personal) property:

> Upon further Order of this Court, pursuant to such procedures as many be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estates. The parties agree the Receiver can move the Court to waive strict compliance with 28 U.S.C. §§ 2001 and 2004.

Doc. 177 ¶ 40. The procedures applicable to private sales of receivership real estate are set forth in 28 U.S.C. § 2001(b) ("**Section 2001(b)**"):

> After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby. Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities. No private sale shall be confirmed at a price less than two-thirds of the appraised value. Before confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation. The private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale.

28 U.S.C. § 2001(b).[2]  As noted above and in the Consolidated Order, the Receiver can move the Court to waive strict compliance with these procedures, but as explained below, the Receiver has substantially and materially complied with the statute.

**The Civil Forfeiture of the Property**

On April 17, 2019, the DOJ, through the United States Attorney's Office for the Middle District of Florida, filed a civil forfeiture action against the Property and several others. *See United States of America v. 13318 Lost Key Place, Lakewood Ranch, Florida et al.,* Case No. 8:19-cv-00908 (M.D. Fla.) (Doc. 1 ¶ 1) (the "**Forfeiture Action**" or "**FA**"). To avoid unnecessary litigation between the Receiver and the government or other interested parties, the Receiver consented to the forfeiture of the Property (among others), which Consent this Court approved. *See* Docs. 105, 112.

On June 26, 2019, the DOJ filed a motion for judgment of forfeiture regarding, in relevant part, the Property (FA Doc. 53), and the court in the Forfeiture Action granted the DOJ's motion on July 16, 2019 (FA Doc. 60) (the "**Forfeiture Order**"). The court recognized claims against the Property, in relevant part, by (1) the Manatee County Tax Collector and (2) the pertinent homeowners association. FA Doc. 60 at 3-4. FA Doc. 60 at 3-4. The court then condemned and forfeited all right, title, and interest in the Property to the United States "for disposition according to law." *Id.* at 4. The court held that "[c]lear title to the [Property] is now vested in the United States," subject to the claims described above. *Id*.

---

[2]  Section 2001(b) governs here because this is a private sale of real property and because 28 U.S.C. §§ 2001(a) and 2004 deal with public auctions and personal property, respectively.

4

**The Receiver's Role under the MOU in Cooperation with the USMS**

The USMS and the Receiver executed an MOU, which establishes procedures for the liquidation of the Property (and others at issue in the Forfeiture Action). Doc. 105, Ex. B. According to the MOU, "[t]he Receiver has sole discretion to decide the logistics of the sale of the Forfeited Receivership Assets, on the terms and in the manner the Receiver deems most beneficial to the Receivership Estate and with due regard to the realization of the true and proper value of such property." *Id.* § VI.C. The MOU also recognizes that "[a]ll sales of Receivership Assets, including Forfeited Receivership Assets, must comply with the provisions set forth in the Receivership Orders [now, the Consolidated Order]." *Id.* § III. Finally, the MOU authorizes the Receiver to deduct certain "**Asset Expenses**" from the proceeds of the sale, which are defined as "direct expenses necessary to safeguard, maintain, advertise, and sell" the assets, including "closing costs, publication costs, and broker fees or commissions." *Id.* § IV.D.

At closing, the Receiver and the United States will transfer the Property to the Purchaser, as set forth in the PSA.[3] After the Receiver sells the Property (or any other forfeited property), the Receiver will deduct any Asset Expenses and transfer the net proceeds to the USMS for deposit in the Department of Justice Asset Forfeiture Fund. *Id.* § IV.E. Once all properties have been sold, the Receiver will file a petition for remission with the DOJ, and the sale proceeds will be returned for distribution to defrauded investors through the ongoing

---

[3] The United States, by its consent to this motion, and the USMS, by its consent to the PSA, authorize the Receiver to transfer the interest of the United States in the Property to the Purchasers pursuant to a Receiver's Deed.

claims process established by the Court. As noted above, the Court has already approved the MOU and its contents. *See* Docs. 105, 112.

**The Property, the Receiver's Marketing Efforts, and the Proposed Sale**

Defendant DaCorta was the authorized representative of 13318 Lost Key Place, LLC – the limited liability company that owned the Property until its forfeiture. The Property was purchased with scheme proceeds – *i.e.*, money contributed to the scheme by victim investors. The Property has five bedrooms and five and one-half bathrooms.[4] It was purchased for approximately $1,000,000 in 2016. There is currently no mortgage on the property.

The Receiver's marketing efforts included listing the Property for sale on his website[5] and retaining Coldwell Banker to advertise the Property through various means. The list price was originally $1,235,000. The sale price represents a gross recovery of $1,100,000 for the ultimate benefit of the Receivership Estate and a profit of $100,000 over the purchase price.

To further ensure the fairness of the sale price, the Receiver has obtained an appraisal or a broker's price opinion from each of three disinterested sources, which are attached as **Exhibits 2-4** (the "**BPOs**"). According to the BPOs, a reasonable sale price for the Property would be between $1,000,000 and $1,200,000. As demonstrated by these exhibits, the $1,100,000 sale price is within this range and is thus fair and reasonable.

**Section 2001(b) Publication**

To satisfy the publication requirement of Section 2001(b), the Receiver will publish the terms of the sale for one day in the Sarasota Herald Tribune, which is regularly issued and of

---

[4] www.coldwellbankerhomes.com/fl/lakewood-ranch/13318-lost-key-pl/pid_34215613/
[5] www.oasisreceivership.com/assets-for-sale/13318-lost-key-place/

general circulation in the district where the Property is located. A copy of the notice is attached as **Exhibit 5**. The Receiver will also publish this motion and the notice on his website – www.oasisreceivership.com. No less than 10 days after publication of the notice, the Receiver will inform the Court whether any potential purchaser submitted a "bona fide offer," as contemplated by Section 2001(b). Given these circumstances and the existence of ready-and-willing Purchaser, the Receiver believes that approval of the proposed sale pursuant to the Liquidation Plan and Section 2001(b) is commercially reasonable, fair and equitable, and will ensure a cost-effective recovery for the ultimate benefit of the Receivership Estate.

## ARGUMENT

The Court's power to supervise an equity receivership and to determine the appropriate actions to be taken in the administration of the receivership is extremely broad. *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992); *S.E.C. v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). The Court's wide discretion derives from the inherent powers of an equity court to fashion relief. *Elliott*, 953 F.2d at 1566; *S.E.C. v. Safety Finance Service, Inc.*, 674 F.2d 368, 372 (5th Cir. 1982). A court imposing a receivership assumes custody and control of all assets and property of the receivership, and it has broad equitable authority to issue all orders necessary for the proper administration of the receivership estate. *See S.E.C. v. Credit Bancorp Ltd.*, 290 F.3d 80, 82-83 (2d Cir. 2002); *S.E.C. v. Wencke*, 622 F.2d 1363, 1370 (9th Cir. 1980). The court may enter such orders as may be appropriate and necessary for a receiver to fulfill his duty to preserve and maintain the property and funds within the receivership estate. *See, e.g., Official Comm. Of Unsecured Creditors of Worldcom, Inc. v. S.E.C.*, 467 F.3d 73, 81 (2d Cir. 2006). Any action taken by a district court in the exercise of its discretion is subject to great

deference by appellate courts. *See United States v. Branch Coal*, 390 F.2d 7, 10 (3d Cir. 1969). Such discretion is especially important considering that one of the ultimate purposes of a receiver's appointment is to provide a method of gathering, preserving, and ultimately liquidating assets to return funds to creditors. *See S.E.C. v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372 (5th Cir. 1982) (court overseeing equity receivership enjoys "wide discretionary power" related to its "concern for orderly administration") (citations omitted).

Given these principles, the Court should approve the proposed sale for at least six reasons. First, the Receiver is complying with Section 2001(b). Specifically, he obtained three valuations, and the sale price is within the estimates disclosed in those valuations. *See* Exs. 2-4. Section 2001(b) provides that "[n]o private sale shall be confirmed at a price less than two-thirds of the appraised value" – here, $733,333 based on an average of the three highest valuations. The $1,100,000 sale price is well above that amount. Shortly after filing this motion, the Receiver will publish notice of the proposed sale and its terms in the Sarasota Herald Tribune. After the expiration of the 10-day statutory window, the Receiver will advise the Court whether any individual or entity submitted a "bona fide offer" – *i.e.*, an offer 10% higher than the current sale price. If no one objects to this motion or submits a "bona fide offer," to conserve resources, the Receiver asks that the Court grant the motion without a hearing. *See* Doc. 177 ¶ 40 ("The parties agree the Receiver can move the Court to waive strict compliance with 28 U.S.C. §§ 2001 and 2004.).

Second, as noted above, the sale price represents a gross recovery of $1,100,000 for the ultimate benefit of the Receivership Estate and a profit of $100,000 over the purchase price.

8

Third, the United States and the USMS are the only parties with an interest in the Property under the Forfeiture Order (aside from the forfeiture claimants who will be paid at closing), and both the United States and the USMS consent to the transaction, as evidenced below and in the PSA. The Receiver is not aware of any other encumbrances. Under such circumstances, the Consolidated Order authorizes the Receiver (in conjunction with the United States) to transfer clear title to the Purchasers. *See* Doc. 177 ¶ 40.

Fourth, the existence of a ready-and-willing Purchaser will ensure an efficient and cost-effective recovery for the Receivership Estate, and in the Receiver's opinion, the sale price is at or near the maximum price that can be anticipated for the sale of this residential home. In fact, the sale price is identical to the price already approved by the Court in connection with the Receiver's first motion to sell the Property.

Fifth, sale of the Property will eliminate the Receiver's need to pay for additional upkeep and carrying costs on the Property, including insurance, utilities, and repairs. To date, the Receiver has spent more than $35,000 maintaining and safeguarding the Property. The Receiver will recover those costs as Asset Expenses under the MOU.

Sixth, this is an arms'-length transaction with an independent, third-party Purchaser.

## **CONCLUSION**

For the reasons discussed above, the transaction is commercially reasonable, fair and equitable, and will ensure a cost-effective recovery for the ultimate benefit of the Receivership Estate. As such, the Receiver requests an order, in substantially the form attached as **Exhibit 6**: (1) approving the transaction and the PSA and (2) ordering that the Receiver may transfer title

to the Property by Receiver's Deed to the Purchaser, free and clear of all claims, liens, and encumbrances, including without limitation the interests of the Receiver and the United States.

## **LOCAL RULE 3.01(G) CERTIFICATION**

Counsel for the Receiver has conferred with counsel for the CFTC and is authorized to represent to the Court that the CFTC has no objection to the requested relief. The United States also has no objection to the requested relief and consents to the sale of the Property and transfer of title, including the title of the United States, to the Purchaser, as reflected below and in the PSA. Defendants Anile, Montie, Haas, and Duran as well as relief defendant Mainstream do not oppose the motion. The Receiver's representatives sent a copy of this motion to defendant DaCorta on November 13, 2020 and attempted to contact him by phone on November 16, 2020 but have not been able to ascertain his position. The Receiver is filing this motion now to ensure the timely closing of this transaction. If DaCorta responds to the Receiver during the publication process, the undersigned will update this certification accordingly.

## VERIFICATION OF THE RECEIVER

I, Burton W. Wiand, Court-Appointed Receiver in the above-styled matter, hereby certify that the information contained in this motion is true and correct to the best of my knowledge and belief.

**s/ Burton W. Wiand**
Burton W. Wiand, Court-Appointed Receiver

## CONSENT OF THE UNITED STATES

By the signature of its representative to this motion, the United States consents to the Receiver's transfer of the United States' interest in and title to the Property by Receiver's Deed to the Purchasers, as set forth in the PSA and proposed order.

**s/ Suzanne C. Nebesky**
Suzanne C. Nebesky
suzanne.nebesky@usdoj.gov
Assistant United States Attorney
Fla. Bar No. 59377
400 N. Tampa Street, Suite 3200
Tampa, FL 33602
(813) 274-6000
*Counsel for United States of America*

11

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 16, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I also served the foregoing by mail and email on the following non-CM/ECF participants:

Gerard Marrone
Law Office of Gerard Marrone, P.C.
66-85 73rd Place, 2nd Floor
Middle Village, NY  11379
gmarronelaw@gmail.com
*Counsel for Defendant Joseph S. Anile, II*

Michael DaCorta
13313 Halkyn Point
Orlando, FL 32832
cdacorta@yahoo.com

    Respectfully submitted,

    **s/ Jared J. Perez**
    Jared J. Perez, FBN 0085192
    jperez@wiandlaw.com
    Lawrence J. Dougherty, FBN 0068637
    ldougherty@wiandlaw.com
    WIAND GUERRA KING P.A.
    5505 West Gray Street
    Tampa, FL 33609
    Tel: (813) 347-5100
    Fax: (813) 347-5198

    *Attorneys for the Receiver, Burton W. Wiand*