# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

COMMODITY FUTURES TRADING
COMMISSION,

                            Case No. 8:19-CV-886-T-33SPF

       Plaintiff,

v.

OASIS INTERNATIONAL GROUP,
LIMITED; OASIS MANAGEMENT, LLC;
SATELLITE HOLDINGS COMPANY;
MICHAEL J DACORTA; JOSEPH S.
ANILE, II.; RAYMOND P MONTIE III;
FRANCISCO "FRANK" L. DURAN; and
JOHN J. HAAS,

       Defendants;

and

FUNDAMDINISTRATION, INC.;
BOWLING GREEN CAPITAL
MANAGEMENT LLC; LAGOON
INVESTMENTS, INC.; ROAR OF THE
LION FITNESS, LLC; 444 GULF OF
MEXICO DRIVE, LLC; 4064 FOUNDERS
CLUB DRIVE, LLC; 6922 LACANTERA
CIRCLE, LLC; 13318 LOST KEY PLACE,
LLC; and 4 OAKS LLC,

Relief Defendants.

_____/

# RECEIVER'S SEVENTH INTERIM MOTION FOR
# ORDER AWARDING FEES, COSTS, AND REIMBURSEMENT OF
# <u>COSTS TO RECEIVER AND HIS PROFESSIONALS</u>

Burton W. Wiand, the Court-appointed receiver over the assets of the above-captioned defendants and relief defendants (the "**Receiver**" and the "**Receivership**" or "**Receivership Estate**") pursuant to the Court's order dated July 11, 2019 (the "**Consolidated Order**"),[1] respectfully moves the Court for the entry of an order awarding fees and the reimbursement of costs to the Receiver and his professionals.  *See* Doc. 98 (approving retention of professionals).  This motion covers all fees and costs incurred from October 1, 2020 through December 31, 2020.  The Standardized Accounting Report (the "**Accounting Report**") for the time covered by this motion is attached as **Exhibit 1**.[2]

## Case Background and Status

As of the date of filing this motion, the Court has appointed Burton W. Wiand as Receiver over the assets of the following entities and individuals:

a)   Defendants Oasis International Group, Limited; Oasis Management, LLC; Satellite Holdings Company; Michael J. DaCorta; Joseph S. Anile, II; Francisco "Frank" L. Duran; John J. Haas; and Raymond P. Montie, III; and

---

[1] On July 11, 2019, the Court entered the Consolidated Order (Doc. 177), which combined and superseded two prior orders (Docs. 7 and 44) and is now the operative document governing the Receiver's activities.

[2] The Commodity Futures Trading Commission ("**CFTC**" or the "**Commission**") provided the Receiver with detailed Billing Instructions for Receivers in Civil Actions Commenced by the Commission (the "**Billing Instructions**"). The Accounting Report is one of the requirements contained in the Billing Instructions.

b) Relief defendants Fundadministration, Inc.;[3] Bowling Green Capital Management, LLC; Lagoon Investments, Inc.; Roar of the Lion Fitness, LLC; 444 Gulf of Mexico Drive, LLC; 4064 Founders Club Drive, LLC; 6922 Lacantera Circle, LLC; 13318 Lost Key Place, LLC; and 4Oaks LLC.

*See* Doc. 177. The foregoing defendants and relief defendants are collectively referred to as the "**Receivership Entities**."

On February 1, 2021, the Receiver filed his Seventh Interim Report (Doc. 367) (the "**Interim Report**"). The Interim Report contains comprehensive and detailed information regarding the case background and status; the recovery of assets; financial information about Receivership Entities; the Receiver's proposed course of action regarding assets in the Receivership Estate; the establishment of a claims process; and related (and/or contemplated) litigation involving Receivership Entities. The Receiver incorporates the Interim Report into this motion and has attached a true and correct copy of the Interim Report as **Exhibit 2** for the Court's convenience. The Interim Report addresses all activity that resulted in the fees and costs sought in this motion.

---

[3] While Fundadministration, Inc. ("**Fundadministration**") was a relief defendant, the Receiver was not acting as Receiver over all of that entity's assets. The company maintained three accounts at Citibank, N.A. One of these accounts contained funds in the amount of approximately $6,012,397.78 belonging to Oasis International Group, Limited. Fundadministration transferred those funds to the Receiver. The other accounts are not included in this Receivership. *See* Docs. 13, 14, 366.

## Professional Services Rendered and Costs Incurred

The Consolidated Order authorizes the Receiver to "solicit persons and entities ('Retained Personnel') to assist him in carrying out the duties and responsibilities described in this Order" and states that the "Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates," subject to approval by the Court. *See* Doc. 177 ¶¶ 59, 60. The Consolidated Order also requires that the Receiver obtain the Court's authorization of the retention of any Retained Personnel. *See* Doc. 177 ¶ 59. On May 30, 2019, the Receiver filed a motion approve the retention of professionals (Doc. 87), which the Court granted on June 6, 2019 (Doc. 98). The Receiver also filed motions to approve the retention of special foreign counsel in Belize and the Cayman Islands (Docs. 133 and 184), which the Court granted on June 21, 2019 and August 27, 2019, respectively (Docs. 138 and 187). The Receiver filed motions to approve the retention of Sallah Astarita & Cox, LLC (the "**Sallah Firm**") as counsel and Sergio C. Godinho as litigation consultant in connection with the investigation and prosecution of claims against Fundadministration (Docs. 238 and 253), which the Court granted on April 7, 2020 (Doc. 261).[4] On March 24, 2020, the Receiver filed a motion to retain John Waechter and

---

[4] The Sallah Firm has been engaged on a contingency fee basis and thus will not be included in interim fee motions.

Englander Fischer ("**Englander Fischer**") (Doc. 258), which the Court granted on April 13, 2020 (Doc. 264).

Pursuant to the Consolidated Order and the aforementioned orders, the Receiver retained (1) Wiand Guerra King P.A., now known as Guerra King P.A. ("**GK**"), to provide legal services; (2) KapilaMukamal, LLP ("**KM**") to provide forensic accounting services; (3) PDR CPAs ("**PDR**") to provide general accounting and tax services; (4) RWJ Group, LLC ("**RWJ**") to provide asset management and investigative services; (5) E-Hounds, Inc. ("**E-Hounds**") to provide computer forensic services; (6) Glenn D. Godfrey & Company LLP (the "**Godfrey Firm**") to provide legal services in Belize; (7) Maples Group to provide legal services in the Cayman Islands; (8) Sergio Godinho with SEDA Experts, LLC to provide litigation consulting in connection with litigation against Fundadministration, Inc.; and (9) Englander Fischer to assist the Receiver and his counsel with clawback litigation (collectively, the "**Professionals**").[5]

As shown in the Interim Report, the Professionals have provided services and incurred expenses to investigate the affairs of the Receivership Entities, preserve Receivership assets, attempt to locate and recover additional assets, analyze investor information for the claims process and

---

[5] The Godfrey Firm, Maples Group, and Sergio Godinho did not incur expenses for the time covered by this motion and therefore are not included in this motion.

litigation, and institute and administer the claims process.  These services are for the benefit of aggrieved investors, creditors, and other interested parties.

## I.   __The Receiver.__

The Receiver requests the Court award him fees for the professional services rendered from October 1, 2020 through December 31, 2020, in the amount of $36,000.00.  The standard hourly rate the Receiver charges clients in private litigation is $500.  However, the Receiver agreed, for purposes of his appointment as the Receiver, that his hourly rate would be reduced to $360, representing a twenty-eight percent discount off the standard hourly rate that he charges clients in comparable matters.  This rate was set forth in the Receiver's submission to the CFTC.  *See* Doc. 87, Ex. A.

The Receiver commenced services immediately upon his appointment. The Receiver has billed his time for these activities in accordance with the Billing Instructions, which request that this motion contain a narrative of each "business enterprise or litigation matter" for which outside professionals have been employed.  The Billing Instructions identify each such business enterprise or litigation matter as a separate "project."  Further, the Billing Instructions request that time billed for each project be allocated to one of

several Activity Categories.[6]  In addition to the work of the Receivership, the Receiver created two projects for litigation commenced on April 14, 2020.

## A.    The Receivership.

For the time covered by this motion, the work of the Receiver and GK focused on investigating the fraud and related activities, locating and taking control of Receivership assets, investigating and pursuing additional assets for the Receivership, analyzing investor information for the claims process and litigation, and instituting and administering the claims process.  These activities of the Receiver are set forth in detail in the Interim Report.  Ex. 2. A copy of the statement summarizing the Receiver's services rendered for the Receivership is attached as **Exhibit 3**.  The Receiver's time and fees for services rendered for each Activity Category from October 1, 2020 through December 31, 2020, are as follows:

---

[6] The Activity Categories set forth by the Commission in the Billing Instructions are as follows: (1) Asset Analysis and Recovery, which is defined as identification and review of potential assets including causes of action and non-litigation recoveries; (2) Asset Disposition, which is defined as sales, leases, abandonment and related transaction work (where extended series of sales or other disposition of assets is contemplated, the Billing Instructions provide that a separate category should be established for each major transaction); (3) Business Operations, which is defined as issues related to operation of an ongoing business; (4) Case Administration, which is defined as coordination and compliance activities, including preparation of reports to the court, investor inquiries, etc.; and (5) Claims Administration and Objections, which is defined as expenses in formulating, gaining approval of and administering any claims procedure.  The Billing Instructions provide that time spent preparing motions for fees may not be charged to the Receivership Estate.  In accordance with these instructions, the Receiver created an additional Activity Category for work on fees motions and has accounted for time spent on such work but has not charged any amount for that work.

<u>Receivership</u>
**Receiver's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Disposition | 35.30 | $12,708.00 |
| Asset Analysis and Recovery | 33.10 | $11,916.00 |
| Business Operations | 3.90 | $1,404.00 |
| Case Administration | 1.70 | $432.00 |
| Claims Administration | 11.30 | $4,068.00 |
| **TOTAL** | **85.30** | **$30,528.00** |

**B.    Discrete Litigation Projects.**

In conjunction with the Receivership, the following two discrete litigation projects have been formally commenced by the Receiver.

**1.    Recovery of False Profits from Investors.**

This is a project involving the Receiver's efforts to recover false profits from investors whose purported accounts received monies in an amount that exceeded their investments. (*See also* Ex. 2 § V.1.d.) These purported profits were false because they were not based on any trading or investment gain, but rather were fruits of a Ponzi scheme that consisted of funds of new and existing investors. With the Court's approval, the Receiver engaged in a pre-suit resolution process with investors who received such false profits. *See* Docs. 237 and 247. The pre-suit resolution process was fruitful, as discussed in the Interim Report. Ex. 2 at 31-32. However, many investors did not take advantage of the opportunity afforded by this process. On March 24, 2020,

the Receiver moved the Court for authority to file clawback litigation. Doc. 258. The Court granted the Receiver's motion on April 13, 2020.  Doc. 264. Pursuant to the Consolidated Order and the Court's express authorization, on April 14, 2020, the Receiver filed a clawback complaint against numerous non-settling investors. A copy of the statement summarizing the Receiver's services rendered for this project from October 1, 2020 through December 31, 2020 is attached as **Exhibit 4**.  The Receiver's time and fees for services rendered for each Activity Category are as follows:

**Recovery from Investors**
**Receiver's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Analysis and Recovery | 12.10 | $4,356.00 |
| Case Administration | .50 | $180.00 |
| **TOTAL** | **12.60** | **$4,536.00** |

### 2.    Litigation Against Raymond P. Montie.

This is a project involving the Receiver's clawback litigation against Raymond P. Montie, which seeks to recover approximately $1.7 million in fraudulent transfers and as much as $50 million for aiding and abetting or personally committing breaches of fiduciary duty. (*See also* Ex. 2 § V.1.e.)  A copy of the statement summarizing the Receiver's services rendered for this project from October 1, 2020 through December 31, 2020 is attached as

**Exhibit 5**.   The Receiver's time and fees for services rendered for each Activity Category are as follows:

**Litigation Against Raymond P. Montie**
**Receiver's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Analysis and Recovery | 2.60 | $936.00 |
| **TOTAL** | **2.60** | **$936.00** |

## II.   **Guerra King P.A.**

The Receiver requests the Court award GK fees for professional services rendered and costs incurred from October 1, 2020 through December 31, 2020, in the amounts of $186,136.00 and $6,822.95, respectively.   A categorization and summary of all costs for which GK seeks reimbursement is attached as **Exhibit 6**.[7]

As an accommodation to the Receiver and to conserve the resources of the Receivership Estate, GK's attorneys and paralegals have agreed to reduce their standard rates by as much as 30 percent as provided in the fee schedule attached as **Exhibit 7**.   GK began providing services immediately upon the appointment of the Receiver.   The activities of GK for the time covered by

---

[7]   As noted on **Exhibit 6**, a total of $4,977.19 in costs fall within the category of "other." These "other" costs include: (1) $1,537.50 for monthly service charges and work performed on the Receivership website; (2) $2,229.73 in charges related to e-commerce costs associated with relief defendant Roar of the Lion Fitness, LLC or similar matters, including domain registration, hosting, and other web services; and (3) $1,209.96 for costs associated with the sale of Receivership property, including costs for appraisals, publication of proposed sales, and notarizing sale documents.   All costs are itemized on **Exhibit 8**, referenced below.

this motion are set forth in the Interim Report.  *See* Ex. 2.  GK has billed time for these activities in accordance with the Billing Instructions.

**A.    The Receivership.**

As discussed above, the work of the Receiver and GK focused on investigating the fraud and related activities, locating and taking control of Receivership assets, investigating and pursuing additional assets for the Receivership, analyzing investor information for the claims process and litigation, and instituting and administering the claims process.  Ex. 2.  A copy of the statement summarizing the services rendered and costs incurred by GK from October 1, 2020 through December 31, 2020, is attached as **Exhibit 8.**  GK's time and fees for services rendered on this matter for each Activity Category are as follows:

**Receivership**
**GK's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Disposition | 112.30 | $28,626.00 |
| Asset Analysis and Recovery | 183.90 | $49,854.00 |
| Business Operations | 25.00 | $3,375.00 |
| Case Administration | 59.00 | $13,347.50 |
| Claims Administration | 304.00 | $59,919.50 |
| **TOTAL** | **684.20** | **$155,122.00** |

**B.    Discrete Litigation Projects.**

In conjunction with the Receivership, the following two discrete litigation projects have been formally commenced by the Receiver.

### 1. Recovery of False Profits from Investors.

As discussed above in Section I.B.1, this is a project involving the Receiver's clawback litigation to recover false profits from investors whose purported accounts received monies in an amount that exceeded their investments.  (*See also* Ex. 2 § V.1.d.)  These purported profits were false because they were not based on any trading or investment gain, but rather were fruits of a Ponzi scheme that consisted of funds of new and existing investors.  A copy of the statement summarizing the services rendered and costs incurred by GK from October 1, 2020 through December 31, 2020 for this project is attached as **Exhibit 9**.  GK's time and fees for services rendered for each Activity Category are as follows:

**Recovery from Investors**
**GK's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Analysis and Recovery | 59.20 | $16,087.00 |
| **TOTAL** | **59.20** | **$16,087.00** |

### 2. Litigation Against Raymond P. Montie.

This is a project involving the Receiver's clawback litigation against Raymond P. Montie which seeks to recover approximately $1.7 million in fraudulent transfers and as much as $50 million for aiding and abetting or personally committing egregious breaches of fiduciary duty.  (*See also* Ex. 2 § V.1.e.)  A copy of the statement summarizing the services rendered and

costs incurred by GK from October 1, 2020 through December 31, 2020 for this project is attached as **Exhibit 10**.  GK's time and fees for services rendered for each Activity Category are as follows:

**Litigation Against Raymond P. Montie**
**GK's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Analysis and Recovery | 51.00 | $14,927.00 |
| **TOTAL** | **51.00** | **$14,927.00** |

## III.  **Englander Fischer.**

The Receiver requests the Court award Englander Fischer fees for professional services rendered and costs incurred from October 1, 2020 through December 31, 2020 in the amount of $62,834.20.  On March 24, 2020, the Receiver sought the approval of the retention of John Waechter and Englander Fischer to assist the Receiver and his primary counsel, GK, with the clawback litigation explained in Sections I.B.1 and I.B.2 above. Doc. 258. The Court granted the Receiver's motion on April 13, 2020. Doc. 264. The Receiver's clawback litigation is proceeding against numerous defendants who received false profits as well as Raymond P. Montie. As an accommodation to the Receiver, Mr. Waechter agreed to a reduced rate of $335 per hour for his work on behalf of the Receivership. Copies of the statements summarizing the services rendered and costs incurred by

Englander Fischer from October 1, 2020 through December 31, 2020 are attached as **Exhibit 11.**

Englander Fischer's invoices do not contain a summary of the professionals' hours. Therefore, a summary of the professionals' hours rendered during the time covered by this motion is set forth below.

| Professional | Hours | Rate | Total |
|---|---|---|---|
| John Waechter (JWW) | 58.25 | $335.00 | $19,513.75 |
| Beatriz McConnell (BM) | 94.30 | $335.00 | $31,590.50 |
| Courtney Fernald (CLF) | 1.05 | $335.00 | $351.75 |
| Alicia Gangi (AG) | 13.60 | $225.00 | $3,060.00 |
| Alex Dragovich (AMD) | 0.55 | $195.00 | $107.25 |
| Mary Norberg (MN) | 2.50 | $175.00 | $437.50 |
| Tara Dillon (TD) | 6.75 | $150.00 | $1,012.50 |
| Fees | | | $56,073.25 |
| Disbursements | | | $6,760.95 |
| Total | 177.00 | | $62,834.20 |

## IV.   **KapilaMukamal, LLP.**

The Receiver requests the Court award KM fees for professional services rendered and costs incurred from October 1, 2020 through December 31, 2020, in the amount of $9,352.91. KM is a forensic accounting firm that specializes in insolvency and restructuring, Ponzi schemes, fraud investigations, insolvency taxation, business valuation, and litigation support. At the Receiver's request, KM performed forensic reconstructions of numerous bank accounts, which required the analysis of thousands of transactions involving hundreds of investors. Through this analysis, KM has identified the individualized amounts most investors lost in connection with

the scheme as well the amounts certain other investors gained as a result of the scheme. KM's analysis allowed the Receiver to (1) institute a claims process to return money to defrauded investors (with approved claims); and (2) begin litigation against those that profited from the scheme. KM's analysis also will allow the Receiver, among other things, to calculate a total loss amount for additional litigation against third parties and related purposes. As an accommodation to the Receiver and to conserve the resources of the Receivership Estate, Soneet Kapila, a principal of KM, has agreed to reduce his hourly billing rate and to discount all other forensic accounting work by 15 percent. KM started providing services for the Receivership on April 30, 2019. Copies of the statements summarizing the services rendered and costs incurred for this period are attached as composite **Exhibit 12**.

## V.   **PDR CPAs.**

The Receiver requests the Court award PDR fees for professional services rendered and costs incurred from October 1, 2020 through December 31, 2020, in the amount of $4,616.25. PDR is an accounting firm that specializes in tax matters and has extensive experience with the tax treatment of settlement funds. PDR is assisting the Receiver with internal Receivership accounting, financial reporting, and tax preparation and filing. PDR started providing services for the Receivership on May 17, 2019. Copies

of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite **Exhibit 13**.

## VI.   **E-Hounds, Inc.**

The Receiver requests the Court award E-Hounds fees for professional services rendered and costs incurred from October 1, 2020 through December 31, 2020, in the amount of $5,176.50.  E-Hounds is a computer forensics firm that assists the Receiver in securing and analyzing electronic data.   E-Hounds started providing services for the Receivership on April 22, 2019. Copies of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite **Exhibit 14**.

## VII.   **The RWJ Group, LLC.**

The Receiver requests the Court award RWJ fees for professional services rendered and costs incurred from October 1, 2020 through December 31, 2020, in the amounts of $6,727.50 and $907.96, respectively.  RWJ, which is owned and operated by Roger Jernigan, is an asset management and investigation firm. Mr. Jernigan assists the Receiver with overseeing ongoing business operations and property recovered by the Receiver, including aiding with efforts to sell such businesses and property.  His efforts are designed to ensure that Receivership assets are maintained and/or enhanced to allow for maximum recovery for the Receivership Estate. RWJ started providing services for the Receivership on April 18, 2019.  Copies of the statements

summarizing the services rendered and costs incurred for the pertinent period are attached as composite **Exhibit 15**.

## MEMORANDUM OF LAW

It is well settled that this Court has the power to appoint a receiver and to award the receiver and those appointed by him fees and costs for their services. *See, e.g., S.E.C. v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) (receiver is entitled to compensation for faithful performance of his duties); *Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984) ("[T]he receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to reasonable compensation for his efforts."); *S.E.C. v. Custable*, 1995 WL 117935 (N.D. Ill. Mar. 15, 1995) (receiver is entitled to fees where work was of high quality and fees were reasonable); *S.E.C. v. Mobley*, 2000 WL 1702024 (S.D.N.Y. Nov. 13, 2000) (court awarded reasonable fees for the receiver and his professionals); *see also* Doc. 7 ¶ 40 & Doc. 44 ¶ 58. The determination of fees to be awarded is largely within the discretion of the trial court. *See Monaghan v. Hill*, 140 F.2d 31, 34 (9th Cir. 1944). In determining reasonable compensation for the services rendered by the Receiver and his Professionals, the Court should consider the circumstances surrounding the Receivership. *See Elliot*, 953 F.2d at 1577.

Here, because of the nature of this case, it is necessary for the Receiver to employ attorneys and accountants experienced and familiar with financial

frauds, federal receiverships, banking, and finance.  Further, to perform the services required and achieve the results obtained to date, the skills and experience of the Receiver and the Professionals in the areas of fraud, commodities, computer and accounting forensics, and financial transactions are indispensable.

As discussed above, the Receiver and GK have discounted their normal and customary rates as an accommodation to the Receivership and to conserve Receivership assets. The rates charged by the attorneys and paralegals are at or below those charged by attorneys and paralegals of comparable skill from other law firms in the Middle District of Florida.

This case has been time-intensive for the Receiver and his Professionals because of the need to resolve many issues rapidly and efficiently.  The attached Exhibits detail the time, nature, and extent of the professional services rendered by the Receiver and his Professionals for the benefit of investors, creditors, and other interested parties.  The Receiver anticipates that additional funds will be obtained through the Receiver's negotiations or litigation with third parties.

Although the CFTC investigated and filed the initial pleadings in this case, as directed by the Consolidated Order (*see, e.g.,* Doc. 177 ¶ 44), the Receiver is now involved with the investigation and forensic analysis of the events leading to the commencement of the pending action, the efforts to

locate and gather investors' money, the determination of investor and creditor claims and any ultimate payment of these claims. While the Receiver is sensitive to the need to conserve the Receivership Entities' assets, he believes the fees and costs expended to date were reasonable, necessary, and benefited the Receivership. The Commission has no objection to the relief sought in this motion. *Cf. Custable*, 1995 WL 117935 at *7 ("In securities law receiverships, the position of the SEC in regard to the awarding of fees will be given great weight.").

## CONCLUSION

Under the Consolidated Order, the Receiver, among other things, is authorized and empowered to engage professionals to assist him in carrying out his duties and obligations. The Consolidated Order further provides that he apply to the Court for authority to pay himself and his Professionals for services rendered and costs incurred. In exercising his duties, the Receiver has determined that the services rendered and their attendant fees and costs were reasonable, necessary, advisable, and in the best interests of the Receivership.

WHEREFORE, Burton W. Wiand, the Court-appointed Receiver, respectfully requests that this Court award the following sums and direct that payment be made from the Receivership assets:[8]

| | |
|---|---|
| Burton W. Wiand, Receiver | $36,000.00 |
| Guerra King P.A. | $192,958.95 |
| Englander Fischer | $62,834.20 |
| KapilaMukamal, LLP | $9,352.91 |
| PDR CPAs | $4,616.25 |
| E-Hounds, Inc. | $5,176.50 |
| RWJ Group, LLC | $7,635.46 |

## **LOCAL RULE 3.01(g) CERTIFICATION OF COUNSEL**

Undersigned counsel for the Receiver has conferred with counsel for the CFTC and is authorized to represent to the Court that the CFTC does not oppose the relief requested in this motion. As with previous fee applications, the United States (as an intervening party) takes no position on the motion. Defendants Anile, Montie, Haas, and Duran as well as relief defendant Fundadministration do not oppose the relief requested in this motion. The Receiver's representatives sent a copy of the motion and exhibits to defendant DaCorta via email on February 26, 2021 and made follow-up communications by email and telephone/voicemail on March 1, 2021, but they have not been able to determine defendant DaCorta's position. The undersigned will update

---

[8] A proposed order is attached as **Exhibit 16**.

this certification if and when defendant DaCorta's position can be determined.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 1, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I have also provided the following non-CM/ECF participants with a true and correct copy of the foregoing by electronic mail and US mail to:

> Gerard Marrone
> Law Office of Gerard Marrone, P.C.
> 66-85 73rd Place
> Second Floor
> Middle Village, NY  11379
> gmarronelaw@gmail.com
> *Counsel for Defendant Joseph S. Anile, II*
>
> Michael DaCorta
> 11557 Via Lucerna Circle
> Windermere, FL  34786
> mdacorta64@yahoo.com

**s/ Jared J. Perez**
Jared J. Perez, FBN 0085192
Email:  jperez@guerraking.com
Lawrence J. Dougherty, FBN 0068637
Email: ldougherty@guerraking.com
GUERRA KING P.A.
5505 West Gray Street
Tampa, FL  33609
Tel.:  (813) 347-5100
Fax:  (813) 347-5198

*Counsel for the Receiver, Burton W. Wiand*

## RECEIVER'S CERTIFICATION

The Receiver has reviewed this Seventh Interim Motion for Order Awarding Fees, Costs, and Reimbursement of Costs to Receiver and His Professionals (the "**Motion**").

To the best of the Receiver's knowledge, information, and belief formed after reasonable inquiry, the Motion and all fees and expenses herein are true and accurate and comply with the Billing Instructions provided to the Receiver by the Commodity Futures Trading Commission.

All fees contained in the Motion are based on the rates listed in the fee schedule, attached as Exhibit 7. Such fees are reasonable, necessary, and commensurate with (if not below the hourly rate that is commensurate with) the skill and experience required for the activity performed.

The Receiver has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth in the Billing Instructions for photocopies and facsimile transmission).

To the extent the Receiver seeks reimbursement for any service which the Receiver justifiably purchased or contracted for from a third

party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), the Receiver has requested reimbursement only for the amount billed to the Receiver by the third-party vendor and/or paid by the Receiver to such vendor. The Receiver is not making a profit on such reimbursable services.

The Receiver believes that the fees and expenses included in this Motion were incurred in the best interests of the Receivership Estate. With the exception of the Billing Instructions and the Court-approved engagements described above, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

**s/ Burton W. Wiand**
Burton W. Wiand, as Receiver