UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

COMMODITY FUTURES TRADING
COMMISSION,

    Plaintiff,

v.                              Case No. 8:19-CV-886-T-VMC-33SPF

OASIS INTERNATIONAL GROUP,
LIMITED; OASIS MANAGEMENT, LLC;
SATELLITE HOLDINGS COMPANY;
MICHAEL J. DACORTA; JOSEPH S.
ANILE, II; RAYMOND P. MONTIE, III;
FRANCISCO "FRANK" L. DURAN; and
JOHN J. HAAS,

    Defendants;

and

FUNDADMINISTRATION, INC.;
BOWLING GREEN CAPITAL
MANAGEMENT LLC; LAGOON
INVESTMENTS, INC.; ROAR OF THE
LION FITNESS, LLC; 444 GULF OF
MEXICO DRIVE, LLC; 4064 FOUNDERS
CLUB DRIVE, LLC; 6922 LACANTERA
CIRCLE, LLC; 13318 LOST KEY PLACE,
LLC; and 4OAKS LLC,

    Relief Defendants.
_____/

**MOTION TO APPROVE THE RECEIVER'S ENGAGEMENT OF SALLAH ASTARITA & COX, LLC TO PROSECUTE POTENTIAL CLAIMS AGAINST ATC BROKERS**

Burton W. Wiand, the Court-appointed receiver over the assets of the above-captioned defendants and relief defendants (the "**Receiver**" and the "**Receivership**" or "**Receivership Estate**") pursuant to the Court's order dated July 11, 2019 (Doc. 177) (the "**Consolidated Order**"), moves the Court

for "reappointment" and also to approve his engagement of Sallah Astarita & Cox, LLC (the "**Sallah Firm**") as contingency counsel for the purpose of further investigating and pursuing claims against ATC Brokers Ltd. and related individuals and entities (generally, "**ATC**"). The Receiver believes that (1) continuing to investigate and pursue such claims on a contingency fee basis would be in the best interests of the Receivership; (2) the Sallah Firm would be effective counsel because, among other reasons, its attorneys have experience asserting claims against entities like ATC; and (3) the Sallah Firm's contingency fee arrangement (attached as **Exhibit 1**) is fair and reasonable. This relief is procedurally and substantively similar – if not identical – to the Court's prior approval of the Receiver's engagement of the Sallah Firm to pursue claims against Fundadministration, Inc. ("**FAI**"), which resulted in a pre-suit settlement of almost $4 million.

The Receiver also seeks "reappointment" so that he may file the documents required by 28 U.S.C. § 754 in the United States District Court for the Central District of California and in any other appropriate locations.[1]

---

[1] David Manoukian ("**Manoukian**") is a "co-founder" of ATC. According to information he posted on LinkedIn, "ATC Brokers is an NFA registered brokerage firm that serve[s] the US Forex industry from its headquarters in Los Angeles. ATC Brokers Ltd is an FCA-registered brokerage firm that serves the global Forex industry from its headquarters in London and operations in the US." Manoukian purports to work from Glendale, California. A copy of the LinkedIn page is attached as **Exhibit 2**. The Receiver believes Manoukian controlled all relevant ATC entities and conducted and directed their operations with respect to Oasis from his California office. He was also the primary person at ATC with whom Oasis employees and insiders communicated regarding operational and other issues.

2

Reappointment is an administrative matter that will allow the Receiver to pursue claims for the benefit of the Receivership Estate. Reappointment is common in federal equity receiverships, and as explained below, the Court has already resolved similar issues both in this enforcement action and in related "clawback" litigation. *See, e.g.,* Doc. 177 at p. 3 ¶ 3 (The Consolidated Order "shall also constitute the appointment or re-appointment of the Receiver for purposes of 28 U.S.C. § 754."); *see also infra* fn. 4; *S.E.C. v. Nadel et al.*, Case No. 8:09-cv-0087-T-33CPT (M.D. Fla.) (Docs. 139, 140, 315, 316, 492, 493, 934, 935, 983, 984).[2]

## BACKGROUND

The Commodity Futures Trading Commission ("**CFTC**") filed this action (the "**CFTC Action**") on April 15, 2019. That same day, at the request of the CFTC, the Court appointed the Receiver and directed him, in relevant part, to "[t]ake exclusive custody, control, and possession of the Receivership Estate," which includes "all the funds, properties, premises, accounts, income, now or hereafter due or owing to the Receivership Defendants, and other assets directly or indirectly owned, beneficially or otherwise, by the Receivership Defendants." Doc. 7 at p. 14 ¶ 32 & p. 15 ¶ 30.b.

---

[2] These docket citations identify both the Receiver's motions and the orders granting those motions. Copies of the orders are attached as **Exhibit 3**. At the Court's request, the Receiver will provide a Word version of a proposed order customized for this action.

On July 11, 2019, the Court entered the Consolidated Order. The Court found that entry of the Consolidated Order was necessary and appropriate for the purposes of marshaling and preserving all assets, including in relevant part, assets that "were fraudulently transferred by the [CFTC] Defendants and/or [CFTC] Relief Defendants." Doc. 177 at 2. The Court also expressly authorized the Receiver "to sue for and collect, recover, receive and take into possession all Receivership Property" (*id.* ¶ 8.B.) and "[t]o bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver" (*id.* ¶ 8.I.). Similarly, the Court authorized, empowered, and directed the Receiver to "prosecute" actions "of any kind as may in his discretion, and in consultation with the CFTC's counsel, be advisable or proper to recover and/or conserve Receivership Property." *Id.* ¶ 43. To that end, the Consolidated Order broadly authorizes the Receiver to retain professionals "in his discretion." *Id.* ¶ 8.F. As the Court has previously explained in nearly identical circumstances:

> The order expressly reserves to the Receiver discretion as to whether retention of such experts or legal counsel is necessary to discharging his duties. **The Court agrees with the Receiver that, at this juncture, the sole question before the Court is whether the Receiver's proposals constitute an abuse of his delegated discretion**. *See Bendall v. Lancer Mgmt. Grp., LLC*, 523 F. App'x 554, 557 (11th Cir. 2013) ("[A]ny action by a trial court in supervising an equity receivership is committed to [his] sound discretion and will not be disturbed unless there is a clear showing of abuse."); *S.E.C. v. N. Am. Clearing, Inc.*, No. 6:08-cv-829-Orl-35KRS, 2015 WL 13389926, at *3 (M.D. Fla. Jan. 12, 2015) (describing receiver as an officer of the court).

4

Doc. 261 at 5-6 (emphasis added; approving the Receiver's engagement of the Sallah Firm to pursue contingency claims against FAI).

This action is stayed to protect an ongoing criminal investigation into certain defendants' conduct by the Department of Justice through the United States Attorney's Office for the Middle District of Florida, but the stay does not apply to the Receiver's activities under the Consolidated Order. Defendant Joseph S. Anile, II has pled guilty and been sentenced to 10 years in prison. Defendant Michael J. DaCorta has been indicted on charges of participating in a conspiracy to commit wire and mail fraud. He is scheduled to stand trial in October 2021.

**The Receiver's Prior Engagement of the Sallah Firm to Further Investigate and Pursue Potential Claims**

On March 5, 2020, the Receiver filed a motion seeking the Court's approval of his engagement of the Sallah Firm to further investigate and pursue potential claims against FAI on a contingency fee basis. Doc. 238. Shortly thereafter, the Receiver filed a similar motion seeking the Court's approval of his engagement of a litigation consultant to assist the Receiver and the Sallah Firm. Doc. 253. FAI opposed both motions, but the Court determined that substantive arguments about the Receiver's claims "put the cart before the horse." Doc. 261 at 6. "[T]he sole question before the Court [was] whether the Receiver's proposals constitute[d] an abuse of his delegated

discretion." *Id.* at 5-6. On April 7, 2020, the Court granted the Receiver's motions because it determined that the Receiver's exercise of his discretion was "reasonable." *Id.* The parties were ultimately able to settle their dispute without the need for additional litigation. On February 8, 2021, the Receiver filed a motion to approve the settlement. Doc. 368. On February 9, 2021, the Court referred the Receiver's motion to U.S. Magistrate Judge Sean P. Flynn for disposition (Doc. 369), and on February 25, 2021, the Magistrate Judge granted the motion and approved the settlement (Doc. 376).

**The Receiver's Proposed Engagement of the Sallah Firm to Further Investigate and Pursue Potential Claims Against ATC**

Through this motion, the Receiver seeks the Court's approval of his second engagement of the Sallah Firm under similar (if not identical) procedural, factual, and legal circumstances – *i.e.*, to further investigate and pursue potential claims against ATC on a contingency fee basis. As explained in Exhibit 1, the Sallah Firm has substantial experience with litigation related to securities and commodities fraud, which now includes the multi-million-dollar, pre-suit resolution of the Receiver's claims against FAI. Jim Sallah, a principal of the firm, served as Senior Counsel in the SEC's Division of Enforcement before he entered private practice in 2004. *See* Ex. A to Ex. 1. He has served as a court-appointed receiver in numerous actions and as counsel to receivers in additional matters. *Id.* Most relevant here, Mr. Sallah has

6

experience asserting claims against aiders and abettors of Ponzi schemes. The Receiver believes Mr. Sallah and the Sallah Firm are an excellent choice of counsel to represent the interests of the Receivership with respect to ATC.

The Receiver has already collected more than $18 million in litigation income and seized and/or forfeited assets. To protect those funds and to ensure the largest possible recovery for the Receivership's creditors, including defrauded investors, the Receiver has negotiated a contingency fee arrangement with the Sallah Firm. As explained in Exhibit 1, the applicable fee ranges from 10% for a pre-suit resolution (like FAI) to 15% for a pre-answer resolution to 25% for a post-answer resolution and, finally, to 33% for a settlement within forty days of trial or a successful verdict thereafter.

The Receiver believes this sliding scale is appropriate because it will afford the Receivership Estate a greater proportional recovery in the event of an early settlement while also compensating the Sallah Firm fairly as the litigation increases in length and complexity. The arrangement caps the contingency fee at 20% for any amounts recovered above $10,000,000 and 10% for any amounts recovered above $20,000,000. The Sallah Firm will advance costs subject to reimbursement from any recovery except for costs associated with experts retained by the Receiver – for example, the Receiver's forensic accountants, KapilaMukamal, LLP. As with any contingency fee arrangement, the Sallah Firm is only entitled to payment if it procures a successful resolution

7

of the Receiver's potential claims. The Receiver believes this arrangement is fair and reasonable, given the value and complexity of those claims and the risks inherent in litigation. It will protect the funds already in the Receivership while allowing the Receiver to attempt to marshal additional funds through litigation, as directed and authorized by the Consolidated Order. Perhaps most importantly, the Court has already approved this exact arrangement in connection with the Receiver's claims against FAI.

**The Receiver's Preliminary Investigation of ATC**

As noted above, the Receiver is not required to pre-litigate his potential claims, but he nevertheless submits the information discussed below to assure the Court that the relief requested in this motion does not constitute an abuse of the Receiver's delegated discretion.

- ATC accepted approximately $20 million raised from defrauded investors but never transferred any of that money back to Oasis during the scheme.

- The Receiver believes defendant DaCorta (and possibly others) lost almost all that money through unsuccessful foreign exchange or "forex" trading.

- The Receiver believes ATC knew about DaCorta's unsuccessful trading for multiple reasons, including (1) its role in facilitating the trading, (2) the issuance of numerous margin calls and other adverse indicators, and (3) frequent communications between ATC personnel and Oasis insiders, including between Manoukian and DaCorta.

- Oasis insiders concealed activities from investors by making "adjustments" at the end of each day. These adjustments offset actual trading losses and caused the scheme to appear profitable.

8

- Oasis insiders initially made the adjustments manually, but as the scheme grew and no later than July 2018, they asked ATC and Spotex LLC ("**Spotex**") to automate the process. Specifically, the insiders told Manoukian, ATC, and Spotex: "We need to do this programmatically. We would like for you to expose this capability programmatically via the web service." A copy of this email is attached as **Exhibit 4**.

- Shortly thereafter, Manoukian wrote Spotex: "The goal is to be able to do the adjustment into the client account automatically via FIX or via an upload." This same document appears to confirm that investors were "unable to see" the adjustments through the website they used to access and monitor their accounts. A copy of this email is attached as **Exhibit 5**.

- For these and other services, ATC charged Oasis approximately $5 million in fees.

While the Receiver is not required to disclose his entire investigation in this motion (and he has not done so), the foregoing is sufficient to demonstrate that the relief requested does not constitute an abuse of discretion.[3]

## **The Receiver's Initial § 754 Filings and the Need for Reappointment**

As the Court has recognized in a related case, 28 U.S.C. §§ 754 & 1692 allow the Receiver to obtain personal jurisdiction over defendants located in other districts and authorize nationwide service of process.[4] In July 2019, the

---

[3] Defendant DaCorta opposes this motion in part because he characterizes the Receiver's potential claims as a "fishing expedition," but despite being provided with a copy of this motion and its exhibits for purposes of Local Rule 3.01(g), he ignores the substance of the Receiver's investigation. *See* Ex. 6. DaCorta's objection is without merit because this motion is consistent with the Receiver's mandate to investigate and prosecute claims, as established by the Court in the Consolidated Order.

[4] On April 14, 2020, the Receiver initiated clawback litigation against almost 100 defendants who received "false profits" and who declined a settlement proposal from the Receiver. *See Burton W. Wiand, as Receiver for Oasis International Group, Ltd., et al., v. Chris and Shelley Arduini, et al.*, Case No. 8:20-cv-862-T-33TGW (M.D. Fla.). A number of those defendants

9

Receiver filed the Consolidated Order in 21 federal district courts where potential defendants and/or assets of the Receivership Estate were believed to be located. These filings were made within 10 days of entry of the Consolidated Order, as required by 28 U.S.C. § 754. The Receiver deemed the filing of the Consolidated Order in each of the 94 federal district courts an inefficient use of the Estate's resources. Because most investors, including those who received "false profits," are located in the eastern and particularly the northeastern United States, the Receiver has not yet filed the pertinent paperwork in the District Court for the Central District of California – *i.e.*, where Manoukian resides and where ATC maintains, at minimum, its domestic operations. In addition to the approval of the engagement of the Sallah Firm to further investigate and prosecute possible claims, the Receiver seeks an order reappointing him so that he may file the appropriate documents in the Central District of California and any other relevant districts. As explained below, this method of resetting the 10-day window under 28 U.S.C. § 754 is common and well-established in receivership actions.

---

moved to quash the summonses served on them or otherwise moved to dismiss the complaint for lack of jurisdiction. *See Arduini* Docs. 234, 235, 236, 237, 238, 239, 240, 241, 242, 258, 260, 261, 335, 340. The Court denied those motions. *See Arduini* Doc. 344.

## MEMORANDUM OF LAW

### I. The Receiver Has Broad Discretion To Request, And The Court Has Broad Discretion To Approve, The Engagement Of Professionals To Assist In The Recovery of Assets

The Court's power to supervise this equity Receivership and to determine the appropriate actions to be taken in the administration of the Receivership is extremely broad. *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992); *S.E.C. v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). The Court's wide discretion derives from the inherent powers of an equity court to fashion relief. *Elliott*, 953 F.2d at 1566; *S.E.C. v. Safety Finance Service, Inc.*, 674 F.2d 368, 372 (5th Cir. 1982). A court imposing a receivership assumes custody and control of all assets and property of the receivership, and it has broad equitable authority to issue all orders necessary for the proper administration of the receivership estate. *See S.E.C. v. Credit Bancorp Ltd.*, 290 F.3d 80, 82–83 (2d Cir. 2002); *S.E.C. v. Wencke*, 622 F.2d 1363, 1370 (9th Cir. 1980). The court may enter such orders as may be appropriate and necessary for a receiver to fulfill his duty to preserve and maintain the property and funds within the receivership estate. *See, e.g., Official Comm. Of Unsecured Creditors of Worldcom, Inc. v. S.E.C.*, 467 F.3d 73, 81 (2d Cir. 2006). Any action taken by a district court in the exercise of its discretion is subject to great deference by appellate courts. *See United States v. Branch Coal*, 390 F.2d 7, 10 (3d Cir. 1969). Such discretion is especially important considering that one of the

11

purposes of a receiver's appointment is to provide a method of gathering, preserving, and ultimately liquidating assets to return funds to creditors. *See S.E.C. v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372 (5th Cir. 1982) (court overseeing equity receivership enjoys "wide discretionary power" related to its "concern for orderly administration") (citations omitted).

As noted above, the Consolidated Order authorizes, empowers, and directs the Receiver to "investigate the manner in which the financial and business affairs of the Receivership Defendants were conducted…." Doc. 177 ¶ 44. It also authorizes the Receiver "[t]o bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver." *Id* ¶ 8.I; *see also* ¶ 8.J (authorizing the Receiver to "pursue … all suits, actions, claims, and demands, which may now be pending or which may be brought by … the Receivership Estates."). To facilitate that mandate, the Court authorized the Receiver "[t]o engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisors, liquidating agents, real estate agents, forensic experts, brokers, traders or auctioneers." *Id.* ¶ 8.F (emphasis added). The Receiver's exercise of those delegated powers is subject to abuse of discretion

12

review, and the Court need not "put the cart before the horse" by requiring the Receiver to pre-litigate his potential claims. *See* Doc. 261.

The Receiver believes that ATC and Manoukian could have significant liability to the Receivership. As discussed above, ATC and Manoukian appear to have personally participated in activities that afforded Oasis insiders the ability to conceal losses from investors. If litigation is ultimately required, the Receiver expects it to involve zealous advocacy as well as complex legal and factual issues. Indeed, Manoukian and ATC have repeatedly denied any liability or knowledge of the scheme, but as explained above, FAI also described the Receiver's claims as "unfounded and frivolous" before agreeing to settle them for almost $4 million. The use of contingency counsel under such circumstances is common and appropriate to safeguard existing assets.[5]

Based on (1) the Court's wide discretion, (2) the Receiver's independent investigation into the matters discussed herein, (3) the skill and competency of the Sallah Firm to further investigate and prosecute those matters, and (4) the

---

[5] Defendant DaCorta opposes this motion in part because he claims any resultant litigation would be profitable for the Receiver but wasteful for the Receivership Estate. *See* Ex. 6. DaCorta's objection is without merit because the Receiver will not be paid any portion of any contingency fee. The proposed arrangement only applies to the Sallah Firm, and its attorneys will only be paid if they procure a successful resolution of the Receiver's potential claims. The sliding scale and "large recovery" discounts explained above and in Exhibit 1 further ensure the fairness of the arrangement to the Receivership Estate. For example, the Sallah Firm only received a 10% contingency fee (as opposed to a maximum of 33%) with respect to FAI because it was able to settle the Receiver's claims pre-suit. Put simply, DaCorta's objection is without merit because the proposed engagement will conserve and potentially increase – not waste – Receivership resources.

13

reasonableness of the Sallah Firm's contingency fee arrangement, the Receiver requests that the Court approve the Receiver's engagement of the Sallah Firm to further investigate and pursue potential claims against ATC, Manoukian, and related parties under the terms of the agreement attached as Exhibit 1.

## II. The Court Should Reappoint The Receiver For Purposes Of 28 U.S.C. § 754

The Receiver seeks reappointment so that he may file the documents required by 28 U.S.C. § 754 in the United States District Court for the Central District of California. Reappointment will allow the Receiver to obtain jurisdiction over certain potential defendants should litigation prove necessary, but importantly, this motion does not ask the Court to resolve any substantive jurisdictional issues. If the Court grants the motion, the Receiver will file the requisite documents, which generally requires (1) the completion of a civil cover sheet for a "miscellaneous action;" (2) the payment of a small filing fee; and (3) submission of the foregoing along with a copy of the CFTC's complaint and the order of reappointment to the Clerk of the Court for the Central District of California. In other words, the requested relief is purely administrative. If plenary litigation is ultimately necessary and if the pertinent defendants wish to raise jurisdictional defenses, they will have the opportunity to do so at the appropriate time after commencement of the action through the mechanisms provided by the Federal Rules of Civil Procedure.

### A. 28 U.S.C. § 754 Empowers the Court, through the Receiver, to Obtain Jurisdiction over Defendants outside this District

For the Court[6] to obtain jurisdiction over property and defendants outside the Middle District of Florida, the Receiver must comply with 28 U.S.C. § 754, which states:

> A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof.
>
> He shall have capacity to sue in any district without ancillary appointment . . . .
>
> Such receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.

Section 754 extends "the territorial jurisdiction of the appointing court . . . to any district of the United States where property believed to be that of the receivership estate is found, provided that the proper documents have been filed in each such district as required by § 754." *S.E.C. v. Bilzerian,* 378 F.3d 1100, 1104 (D.C. Cir. 2004) (quoting *Haile v. Henderson Nat'l Bank,* 657 F.2d 816, 823 (6th Cir. 1981)). Section 754 is not limited to tangible property;

---

[6] The Receiver uses the term "Court" in this instance to refer broadly to the United States District Court for the Middle District of Florida. If litigation is necessary, the Receiver's claims will not be filed in this enforcement action. Instead, the Receiver will likely file a plenary action, which would be assigned to a district judge under governing procedures.

15

rather, it expressly includes personal property, which in turn includes intangible property like rights or causes of action. *See* Doc. 177 at 2 (stating the Consolidated Order is necessary "for the purposes of marshalling and preserving … personal, intangible" property); *id.* ¶ 6 ("The Receiver shall assume and control the operation of the Receivership Defendants and shall pursue and preserve all of their claims."); *id.* ¶ 8.A (directing the Receiver to identify "claims, rights, and other assets"); *id.* ¶ 8.J (directing the Receiver to "pursue … claims"); *id.* ¶ 31.C (prohibiting defendants from "releasing claims"). Thus, pursuant to 28 U.S.C. § 754, to provide this Court with jurisdiction over defendants or property – tangible or intangible – outside this district, the Receiver must file a copy of the complaint in this case and the order appointing or reappointing the Receiver in the districts in which the defendants or property is located within 10 days from the date of the pertinent order. *Bilzerian,* 378 F.3d at 1103; *see also Arduini* Doc. 344.

    **B.**    **Reappointment of the Receiver Resets the 10-Day Clock to Assert Jurisdiction over Potential Defendants and Property outside this District**

"Courts having addressed this issue unanimously suggest that an order of reappointment will renew the ten-day filing deadline mandated by section 754." *Terry v. June*, 2003 WL 21738299, at *3 (W.D. Va. July 21, 2003). As explained in *Terry*, courts across the country have approved a Receiver's reappointment to obtain jurisdiction over property and defendants in other

16

districts. *See, e.g.*, *Bilzerian,* 378 F.3d at 1105 (citing *S.E.C. v. Vision Communications, Inc.,* 74 F.3d 287, 291 (D.C. Cir. 1996)) ("On remand, the court may reappoint the receiver and start the ten-day clock ticking once again."); *S.E.C. v. Aquacell Batteries, Inc.*, 2008 WL 2915064, at *3 & n.4 (M.D. Fla. July 24, 2008) (citing *Warfield v. Arpe*, 2007 WL 549467, at *12 (N.D. Tex. Feb. 22, 2007)) ("A district court may reappoint a federal equity receiver in a securities fraud case in order to 'reset' the 10-day clock under § 754.")); *S.E.C. v. Heartland Group, Inc.*, 2003 WL 21000363, at *5 (N.D. Ill. May 2, 2003) ("[T]he court can easily correct [the Receiver's] failure to file such a claim by merely reappointing the Receiver and thereby starting the 10-day time period under § 754 ticking once more . . . .").

The *Terry* case also explains the reasons underlying this rule, which is intended to conserve receivership resources:

> [p]ermitting a receiver to reassume jurisdiction in this manner is consistent with the role and purpose of a federal receivership. Were this not the rule, a receiver would be forced to file the required documentation in all ninety-four federal districts to protect jurisdiction over any potential, but presently unknown, receivership assets – a result that would produce a needless waste of time and lead to dissipation of assets otherwise returnable to defrauded investors.

2003 WL 21738299 at *3 (citing *Heartland Group,* 2003 WL 21000363 at *5; *S.E.C. v. Infinity Group Company,* 27 F. Supp. 2d 559, 563 (E.D. Pa. 1998)); *accord Court-Appointed Receiver of Lancer Mgmt. Grp. LLC v. Lauer*, 2008 WL 906274, at *3 (S.D. Fla. Mar. 31, 2008). Indeed, the Consolidated Order

17

previously entered by this Court stated that it "shall also constitute the appointment or re-appointment of the Receiver for purposes of 28 U.S.C. § 754." Doc. 177 at 3 ¶ 3; *see also* Ex. 3 (*Nadel* orders) & *Arduini* Doc. 344.[7]

## CONCLUSION

Federal law supports the reappointment of the Receiver to reset the 10-day period specified by 28 U.S.C. § 754. This Court also has broad discretion to approve the Receiver's engagement of contingency counsel. Granting this motion will permit the Receiver to further investigate and pursue potential claims on behalf of the Receivership Estate against ATC, David Manoukian, and other affiliated individuals or entities.

WHEREFORE, the Receiver respectfully requests that this Court enter an order (i) reappointing him as Receiver over all the Receivership Entities in the CFTC Action so that he may timely file the papers required by 28 U.S.C. § 754 in the Central District of California and any other appropriate jurisdiction, (ii) approving the engagement of the Sallah Firm, and (iii) granting such other relief as the Court deems appropriate.

---

[7] Defendant DaCorta opposes this motion in part because certain *Arduini* defendants are attempting to appeal the Court's denial of their motions to quash service of process, but that appeal does not affect the other defendants in the *Arduini* action or this enforcement action much less the Receiver's potential claims against ATC. DaCorta also has no standing to assert jurisdictional or other legal defenses on behalf of ATC, and his apparent desire to shield ATC from litigation that could benefit the Receivership Estate is, at minimum, perplexing. No other defendant opposes this motion.

18

## **LOCAL RULE 3.0l(g) CERTIFICATION**

Counsel for the Receiver has conferred with counsel for the CFTC and is authorized to represent to the Court that the CFTC has no objection to the requested relief. The United States, as an intervening party, takes no position on this motion. Defendants Montie, Haas, Anile, and Duran do not oppose the requested relief, and FAI is no longer a party to this action.

Defendant DaCorta opposes the motion. Although not required by Local Rule 3.01(g), the undersigned has attached a copy of DaCorta's objection as **Exhibit 6** to expedite the Court's consideration of this matter.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 31, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

Gerard Marrone
Law Office of Gerard Marrone, P.C.
66-85 73rd Place, 2nd Floor
Middle Village, NY  11379
gmarronelaw@gmail.com
*Counsel for Defendant Joseph S. Anile, II*

Michael DaCorta
11557 Via Lucerna Cir
Windemere, FL  34786
mdacorta64@yahoo.com

        **/s/ Jared J. Perez**
        Jared J. Perez, FBN 0085192
        jperez@guerraking.com
        Lawrence J. Dougherty, FBN 68637
        ldougherty@guerraking.com
        GUERRA KING P.A.
        5505 West Gray Street
        Tampa, FL 33609
        Tel. (813) 347-5100
        Fax (813) 347-5198

        *Counsel for Burton W. Wiand, Receiver*