UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

COMMODITY FUTURES
TRADING COMMISSION,

      Plaintiff,

v.                           Case No.: 8:19-cv-886-VMC-SPF

OASIS INTERNATIONAL
GROUP, LTD., et al.,

      Defendants.

_____/

**ORDER**

This cause comes before the Court *sua sponte*. In the past week, the Court has received approximately 150 filings, most of them entitled "Beneficiary's Notice and Objection to Receiver's Continued Operations in the Absence of Discovery, Hearing, and Final Judgment" (the "Notices"). (Doc. ## 489-586, 588-621, 625, 628, 631-36). The filings are identical, although they were purportedly all filed by different individuals, none of whom are named parties to this case. Numerous non-parties have also filed purported "Declarations." (Doc. ## 622-24, 626-27, 629-30). Because none of these non-party individuals has standing to submit such unauthorized filings in this case, and in accordance

1

with this Court's inherent power to control its docket, all of the Notices and Declarations will be stricken.

## I. Background

This case began three years ago, in April 2019, when the Commodity Futures Trading Commission ("CFTC") filed a complaint against: (1) Defendants Oasis International Group, Limited ("OIG"); Oasis Management, LLC ("Oasis Management"); Michael J. DaCorta; Joseph S. Anile, II; Francisco "Frank" L. Duran; Satellite Holdings Company; John J. Haas; and Raymond P. Montie, III (collectively, the "Defendants") and (2) nine relief defendants, who need not be named here (together, the "Receivership Entities"). (Doc. # 1). In essence, the CFTC alleged that the Defendants orchestrated a massive Ponzi scheme in which they defrauded thousands of investors out of millions of dollars.

On the same day the CFTC filed its complaint, April 15, 2019, this Court entered an order appointing Burton W. Wiand as temporary Receiver for the Receivership Entities. (Doc. # 7). The Court directed him, in relevant part, to "[t]ake exclusive custody, control, and possession of the Receivership Estate," which includes "all the funds, properties, premises, accounts, income, now or hereafter due or owing to the Receivership Defendants, and other assets

directly or indirectly owned, beneficially or otherwise, by the Receivership Defendants." See (Id. at 14-15).

Subsequently, all Defendants and Relief Defendants either defaulted or consented to the entry of a preliminary injunction against them. On July 11, 2019, the Court entered a Consolidated Receivership Order (Doc. # 177), which obligated the Receiver to take possession of the Receivership Entities' assets for the benefit of creditors, including defrauded investors. As he has explained at multiple points in this litigation, the Receiver's goal is to marshal, liquidate, and then distribute those assets to investors and other creditors in a fair and equitable manner.

With Court oversight and approval, the Receiver instituted a claims process whereby defrauded investors could submit claims for reimbursement of funds that they lost to the Defendants' scheme. (Doc. ## 230, 231). In total, purported creditors submitted 791 claims to the Receiver, alleging losses of more than $70 million. (Doc. # 439 at 7, 9). As described in the Receiver's recent Determinations Motion, a certain group of investors retained a purported attorney named Brent Winters to prepare and submit their claims, and that group (the "Winters Group") ultimately submitted 473 of the 791 claims. (Id. at 9). As described in

the Determinations Motion, although "[a]lmost none" of those submitted claims complied with the required claims procedure, the Receiver "processed the claims to the best of [its] abilities." (Id. at 9-10).

After reviewing all of the nearly 800 submitted claims, the Receiver grouped them into three categories: allowed in full, allowed in part, and denied. (Id. at 10-25). With regard to the Winters Group in particular, the Receiver suggested to the Court that those claimants must personally verify their proof of claim forms under penalty of perjury, instead of relying upon the sample "power of attorney" forms submitted by Winters. (Id. at 9-10, 26). The Receiver proposed to send those claimants a "Personal Verification Form," explaining that personal certification of claims is essential to the integrity of the claims determination process. (Id. at 26-27).

On March 7, 2022, this Court granted the Determinations Motion, finding the Receiver's suggested procedures for marshaling and distributing funds to claimants and the related objections procedure to be fair, equitable, and efficient. In granting the Determinations Motion, the Court approved the Receiver's plan to pool all Receivership assets and then distribute them to claimants on a *pro rata* basis.

4

(Id. at 39-40). Importantly, the Court has approved an objections procedure that claimants may use who are dissatisfied with the Receiver's determination of their claim. (Id. at 40-41).

Beginning on April 11, 2022, this Court began to receive the Notices, all identical and purportedly submitted by different individuals (the "Notice Claimants"), none of whom are named parties to this action. See, e.g., (Doc. # 489). They call themselves "presumptive Beneficiaries" or "Claimants" of the "Receivership Estate Constructive Trust." (Id. at 1). They claim to be objecting to the Receiver's ongoing activities, including "premature distribution of Trust funds." (Id.). They claim, essentially, that the Receiver cannot make any distribution of the assets of the Receivership Entities until the case against OIG and Oasis Management is resolved. (Id. at 3-4).

## II. Standing

The Notice Claimants spend a significant portion of their filings arguing, or appearing to argue, that they are the beneficiaries of a constructive trust, of which the Receiver is the trustee, and the assets are the accumulated Receivership assets. See, e.g., (Doc. # 489 at 5-10). As such,

5

they appear to request injunctive relief against the Receiver's continued operations. (Id.).

To the extent that the Notice Claimants are seeking injunctive relief from the Court, none of them are named parties to this action and, as such, they do not have standing to request an injunction or any other relief. The Federal Rules of Civil Procedure contemplate that only those designated as parties may file motions and pleadings. See Fed. R. Civ. P. 7. Moreover, where the non-party's filing is not a motion, but simply a document to be viewed by the Court, there is little case law available to guide this Court's decision. See DRFP, LLC v. Republica Bolivariana de Venezuela, No. 2:04-CV-793, 2012 WL 995288, at *2 (S.D. Ohio Mar. 22, 2012) ("[T]here is little precedent which deals with the issue of when a non-party may properly file some document with the Court."). One court has opined that a non-party must make some showing of necessity before such a filing will be permitted because "absent a specific reason to permit it, filings by non-parties have no place in litigation and ought not to be made. It is not unreasonable to place the burden on the non-party to show why its filing is proper or serves some proper purpose that cannot

6

legitimately be accomplished apart from the unusual step of filing a document in a case to which it is not a party." Id.

Here, the Notice Claimants have made no such showing. Instead, the deluge of identical filings seems to the Court merely to be a scheme — clearly led and directed by one person or a group of people — to disrupt the orderly administration of this Receivership case. Thus, to the extent the non-parties are attempting to intervene in this case and request injunctive or any other relief, they are without standing to do so. See Id.; see also Johnson v. Internal Revenue Serv., No. 2:20-cv-00090-HCN-DAO, 2021 WL 3134277, at *6 (D. Utah Jan. 29, 2021) ("[N]onparties generally fail to allege such a personal stake in the outcome of the controversy as to warrant invocation of federal-court jurisdiction."); Sec. & Exch. Comm'n v. Lauer, No. 03-80612-CIV, 2016 WL 6694858, at *2 (S.D. Fla. Mar. 31, 2016) (finding that, even where movant was former defendant, he had no standing to object to the payment of compensation to a receiver because he had no claim to the funds); Sec. & Exch. Comm'n v. Heartland Grp., Inc., No. 01 C 1984, 2003 WL 103015, at *3 (N.D. Ill. Jan. 10, 2003) (finding that non-parties who essentially requested a declaratory judgment were without standing).

The Notice Claimants argue that they have standing as beneficiaries of a trust, but that fundamentally misunderstands the nature of this lawsuit. This case does not involve a trust. It involves a receivership, which is a different animal and abides by different rules. For reasons amply explained by the Court elsewhere in the record, the Receiver in this case has abided by those rules and is in the process of amassing the Receivership Entities' assets and distributing those funds on a *pro rata* basis to claimants per the process previously approved by the Court.

It is also possible, however, for the Court to construe the Notices as these individuals' objections to the Receiver's determination of their submitted claims. While it is difficult to determine each filer's precise interest in this case, as the submitted Notices are vague and cookie-cutter in nature, it appears to the Court that the Notice Claimants are creditors or investors in the Oasis Ponzi scheme who are concerned about depletion of the accumulated assets. This understanding is buttressed by the "Declarations" that have been recently filed by non-parties, in which the declarant states his or her "understanding" that, while he or she may accept a monetary distribution from the Receiver "which [amount] does not constitute payment in full of all

8

principal and interest to which law entitles me . . . according to my claim filed at the beginning of this Case," he or she still believes that the Receiver is required to continue making distributions to them until they are paid in full. See, e.g., (Doc. # 629). These "Declarations" also have attached the personal verification forms sent out to the members of the Winters Group.

In that case, the Notice Claimants had a remedy – the claims process as instituted by the Receiver and approved by this Court. To the extent the Notice Claimants object to the Receiver's determination of their claim allowance or amount, they must use the established objection procedure. Thus, to the extent the Notices can be construed as objections to claim determination, claim priority, or the plan of distribution, such objection is denied without prejudice to the claimant's ability to timely submit an objection to the Receiver in accordance with the established objections procedure process.

The Notice Claimants are reminded that the Receiver does not have *cart blanche* to adjudicate their claims or objections thereto. Rather, under the established objections procedure, if the objecting party and the Receiver are unable to resolve the objection, the Receiver will submit any unresolved objections to the Court for final determination. (Doc. # 439

at 44-46). The Notice Claimants are advised to communicate any concerns about their claim or claims directly to the Receiver and otherwise follow the established objections procedure.

### III. Striking the Notices

This Court has the inherent power and discretion to control its docket. Mingo v. Sugar Cane Growers Co-op. of Fla., 864 F.2d 101, 102 (11th Cir. 1989) ("The district court possesses the inherent power to police its docket."). Where non-parties file unauthorized documents, as here, courts have found that this authority extends to striking the offending documents. See DRFP, 2012 WL 995288, at *2 (writing that it is "clearly" within a district court's discretion to strike non-party filings); see also Dixon v. Williams, No. 2:09-CV-0066-PMP-PAL, 2010 WL 3724884, at *1 (D. Nev. Sept. 17, 2010), reversed on other grounds, 750 F.3d 1027 (9th Cir. 2014) (striking letters filed by non-parties "as inappropriate and unauthorized filings"). But see United States Sec. & Exch. Comm'n v. Ahmed, No. 3:15-CV-675 (JBA), 2021 WL 1840276, at *1-2 (D. Conn. Mar. 9, 2021) (although finding that striking such filings to be well within its discretion, opting instead to disregard them).

Here, the Court views the piecemeal filings of more than 100 identical documents seeking relief that this Court cannot grant as an attempt to impede the orderly administration of this case and frustrate the ends of justice. It is an unfair attempt by one sub-section of claimants who seek Receivership funds to divert the Court's attention and avoid the process by which all other claimants must abide. The Court finds that it is therefore appropriate to strike all the Notices and Declarations that have been filed to this point.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

All Notices and Declarations filed by non-parties to this action (Doc. ## 489-586, 588-636) are hereby **STRICKEN.** The Clerk is directed to return any other substantially identical Notices or Declarations that it receives from this point forward, along with a copy of this Order.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 18th day of April, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE