# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

COMMODITY FUTURES TRADING
COMMISSION,

                Case No. 8:19-CV-886-T-33SPF

      Plaintiff,

v.

OASIS INTERNATIONAL GROUP,
LIMITED; OASIS MANAGEMENT, LLC;
SATELLITE HOLDINGS COMPANY;
MICHAEL J DACORTA; JOSEPH S.
ANILE, II.; RAYMOND P MONTIE III;
FRANCISCO "FRANK" L. DURAN; and
JOHN J. HAAS,

      Defendants;

and

FUNDAMDINISTRATION, INC.;
BOWLING GREEN CAPITAL
MANAGEMENT LLC; LAGOON
INVESTMENTS, INC.; ROAR OF THE
LION FITNESS, LLC; 444 GULF OF
MEXICO DRIVE, LLC; 4064 FOUNDERS
CLUB DRIVE, LLC; 6922 LACANTERA
CIRCLE, LLC; 13318 LOST KEY PLACE,
LLC; and 4 OAKS LLC,

Relief Defendants.

_____/

## RECEIVER'S TWELFTH INTERIM MOTION FOR
## ORDER AWARDING FEES, COSTS, AND REIMBURSEMENT OF
## <u>COSTS TO RECEIVER AND HIS PROFESSIONALS</u>

Burton W. Wiand, the Court-appointed receiver over the assets of the above-captioned defendants and relief defendants (the "**Receiver**" and the "**Receivership**" or "**Receivership Estate**") pursuant to the Court's order dated July 11, 2019 (the "**Consolidated Order**"[1]), respectfully moves the Court for the entry of an order awarding fees and the reimbursement of costs to the Receiver and his professionals. *See* Doc. 98 (approving retention of professionals). This motion covers all fees and costs incurred from January 1, 2022 through March 31, 2022. The Standardized Accounting Report (the "**Accounting Report**") for the time covered by this motion is attached as **Exhibit 1**.[2]

## Case Background and Status

As of the date of filing this motion, the Court has appointed Burton W. Wiand as Receiver over the assets of the following entities and individuals:

    a)    Defendants Oasis International Group, Limited; Oasis Management, LLC; Satellite Holdings Company; Michael J. DaCorta; Joseph S. Anile, II; Francisco "Frank" L. Duran; John J. Haas; and Raymond P. Montie, III; and

    b)    Relief defendants Bowling Green Capital Management, LLC; Lagoon Investments, Inc.; Roar of the Lion Fitness, LLC; 444 Gulf of Mexico Drive, LLC; 4064 Founders Club Drive, LLC; 6922

---

[1] On July 11, 2019, the Court entered the Consolidated Order (Doc. 177), which combined and superseded two prior orders (Docs. 7 and 44) and is the operative document governing the Receiver's activities. *See also* Doc. 390 (reappointing Receiver).

[2] The Commodity Futures Trading Commission ("**CFTC**" or the "**Commission**") provided the Receiver with detailed Billing Instructions for Receivers in Civil Actions Commenced by the Commission (the "**Billing Instructions**"). The Accounting Report is one of the requirements contained in the Billing Instructions.

Lacantera Circle, LLC; 13318 Lost Key Place, LLC; and 4Oaks LLC.[3]

*See* Doc. 177. The foregoing defendants and relief defendants are collectively referred to as the "**Receivership Entities**."

On May 10, 2022, the Receiver filed his Twelfth Interim Report (Doc. 642) (the "**Interim Report**"). The Interim Report contains comprehensive and detailed information regarding the case background and status; the recovery of assets; financial information about Receivership Entities; the Receiver's proposed course of action regarding assets in the Receivership Estate; the claims process; and related (and/or contemplated) litigation involving Receivership Entities. The Receiver incorporates the Interim Report into this motion and has attached a true and correct copy of the Interim Report as **Exhibit 2** for the Court's convenience. The Interim Report addresses all activity that resulted in the fees and costs sought in this motion.

### Professional Services Rendered and Costs Incurred

The Consolidated Order authorizes the Receiver to "solicit persons and entities ('Retained Personnel') to assist him in carrying out the duties and

---

[3] Fundadministration, Inc. ("**Fundadministration**") was a relief defendant, but the Receiver was not acting as Receiver over all that entity's assets. The company maintained three accounts at Citibank, N.A. One of these accounts contained funds in the amount of approximately $6,012,397.78 belonging to Oasis International Group, Limited. Fundadministration transferred those funds to the Receiver. The other accounts are not included in this Receivership. *See* Docs. 13, 14, 366. Fundadministration is no longer a party to this action in any capacity. *See* Doc. 376.

responsibilities described in this Order" and states that the "Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates," subject to approval by the Court. *See* Doc. 177 ¶¶ 59, 60. The Consolidated Order also requires that the Receiver obtain the Court's authorization of the retention of any Retained Personnel. *See* Doc. 177 ¶ 59. On May 30, 2019, the Receiver filed a motion to approve the retention of professionals (Doc. 87), which the Court granted on June 6, 2019 (Doc. 98). The Receiver also filed motions to approve the retention of special foreign counsel in Belize and the Cayman Islands (Docs. 133 and 184), which the Court granted on June 21, 2019 and August 27, 2019, respectively (Docs. 138 and 187). The Receiver filed motions to approve the retention of Sallah Astarita & Cox, LLC (the "**Sallah Firm**") as counsel and Sergio C. Godinho as litigation consultant in connection with the investigation and prosecution of claims against Fundadministration (Docs. 238 and 253), which the Court granted on April 7, 2020 (Doc. 261).[4] On March 24, 2020, the Receiver filed a motion to retain John Waechter and Englander Fischer ("**Englander Fischer**") (Doc. 258), which the Court granted on April 13, 2020 (Doc. 264). On March 31, 2021, the Receiver filed a motion to approve the retention of the Sallah Firm on a contingency fee basis

---

[4] The Sallah Firm was engaged on a contingency fee basis and thus was not included in prior interim fee motions. This litigation has been resolved.

for the purpose of further investigating and pursuing claims against ATC Brokers Ltd. and related individuals and entities (generally, "**ATC**") (Doc. 385), which the Court granted on April 23, 2021.[5] On June 25, 2021, the Receiver filed a motion to approve the engagement of Thomas J. Bakas as a litigation consultant to assist the Sallah Firm with litigation against ATC (Doc. 412). The Court granted this motion on July 13, 2021 (Doc. 415).

On March 1, 2022, the Receiver filed a motion to approve the retention of Wayne Piper and Flores Piper LLP (the "**Piper Firm**"), a law firm in Belize (Doc. 478). The Receiver sought the Piper Firm's retention as special foreign counsel in Belize to facilitate the return of a $500,000 license deposit held by a bank in Belize for Oasis Global FX, S.A. as well as the return of Receivership records currently in the possession of Glenn D. Godfrey and the Godfrey Firm of Belize City (the "**Godfrey Firm**"). The Court granted this motion on March 24, 2022 (Doc. 488). In accordance with the motion and order, the Receiver paid a retainer of $2,000 to the Piper Firm on March 28, 2022. The Piper Firm did not submit any invoices for this matter yet. Any invoices submitted will be included in subsequent motions for fees.

Pursuant to the Consolidated Order and the aforementioned orders, the Receiver retained (1) Wiand Guerra King P.A., now known as Guerra King

---

[5] As with the Receiver's retention of this firm to pursue claims against Fundadministration, the Sallah Firm has been engaged on a contingency fee basis and thus will not be included in interim fee motions.

P.A. ("**GK**"), to provide legal services;[6] (2) KapilaMukamal, LLP ("**KM**") to provide forensic accounting services; (3) PDR CPAs ("**PDR**") to provide general accounting and tax services; (4) RWJ Group, LLC ("**RWJ**") to provide asset management and investigative services; (5) E-Hounds, Inc. ("**E-Hounds**") to provide computer forensic services; (6) the Godfrey Firm to provide legal services in Belize;[7] (7) Maples Group to provide legal services in the Cayman Islands; (8) Sergio Godinho with SEDA Experts, LLC to provide litigation consulting in connection with litigation against Fundadministration, Inc.; (9) Englander Fischer to assist the Receiver and his counsel with clawback litigation; and (10) Thomas J. Bakas with RPM Financial Markets Group LLC ("**RPM**") to provide litigation consulting in connection with litigation against ATC  (all of the foregoing and the Piper Firm are collectively, the "**Professionals**").[8]

---

[6] Mary Gura has been the primary paralegal for the Receiver for this matter. In March 2021, Ms. Gura left Guerra King and joined Johnson Cassidy Newlon and DeCort, a litigation firm with extensive experience in federal court practice. All other professionals at Guerra King who have also been providing legal services to the Receiver for this matter have remained at Guerra King. Given Ms. Gura's knowledge regarding this matter, the Receiver determined that it is in the best interests of the Receivership that Ms. Gura continue, at least temporarily, to provide legal services to the Receiver along with the professionals at Guerra King. The Receiver does not anticipate that there will be duplication of services provided by Ms. Gura and Guerra King.

[7] The Receiver is no longer working with the Godfrey Firm and anticipates that all future legal services related to Belize will be through the Piper Firm.

[8] The Maples Group and Sergio Godinho did not submit any invoices for the time covered by this motion and therefore are not included in this motion.

As shown in the Interim Report, the Professionals have provided services and incurred expenses to investigate the affairs of the Receivership Entities, preserve Receivership assets, attempt to locate and recover additional assets, analyze investor information for the claims process and litigation, and administer the claims process. These services are for the benefit of aggrieved investors, creditors, and other interested parties.

## I.     **The Receiver.**

The Receiver requests the Court award him fees for the professional services rendered and costs incurred from January 1, 2022 through March 31, 2022, in the amount of $27,986.11. The standard hourly rate the Receiver charges clients in private litigation is $500. However, the Receiver agreed, for purposes of his appointment as the Receiver, that his hourly rate would be reduced to $360, representing a twenty-eight percent discount off the standard hourly rate that he charges clients in comparable matters. This rate was set forth in the Receiver's submission to the CFTC. *See* Doc. 87, Ex. A.

The Receiver commenced services immediately upon his appointment. The Receiver has billed his time for these activities in accordance with the Billing Instructions, which request that this motion contain a narrative of each "business enterprise or litigation matter" for which outside professionals have been employed. The Billing Instructions identify each such business enterprise or litigation matter as a separate "project." Further, the Billing

Instructions request that time billed for each project be allocated to one of several Activity Categories.[9] In addition to the work of the Receivership, the Receiver created two projects for litigation commenced on April 14, 2020.

### A.    The Receivership.

For the time covered by this motion, the work of the Receiver and GK focused on investigating the fraud and related activities, locating and taking control of Receivership assets, investigating and pursuing additional assets for the Receivership, analyzing investor information for the claims process and litigation, and administering the claims process. These activities of the Receiver are set forth in detail in the Interim Report. Ex. 2. A copy of the statement summarizing the Receiver's services rendered for the Receivership is attached as **Exhibit 3**. The Receiver's time and fees for services rendered for each Activity Category from January 1, 2022 through March 31, 2022, are as follows:

---

[9] The Activity Categories set forth by the Commission in the Billing Instructions are as follows: (1) Asset Analysis and Recovery, which is defined as identification and review of potential assets including causes of action and non-litigation recoveries; (2) Asset Disposition, which is defined as sales, leases, abandonment and related transaction work (where extended series of sales or other disposition of assets is contemplated, the Billing Instructions provide that a separate category should be established for each major transaction); (3) Business Operations, which is defined as issues related to operation of an ongoing business; (4) Case Administration, which is defined as coordination and compliance activities, including preparation of reports to the court, investor inquiries, etc.; and (5) Claims Administration and Objections, which is defined as expenses in formulating, gaining approval of and administering any claims procedure. The Billing Instructions provide that time spent preparing motions for fees may not be charged to the Receivership Estate. In accordance with these instructions, the Receiver created an additional Activity Category for work on fees motions and has accounted for time spent on such work but has not charged any amount for that work.

<u>Receivership</u>
**Receiver's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Disposition | 0.50 | $180.00 |
| Asset Analysis and Recovery | 21.30 | $7,668.00 |
| Business Operations | 4.50 | $1,620.00 |
| Case Administration | 1.70 | $612.00 |
| Claims Administration | 7.90 | $2,844.00 |
| **TOTAL** | **35.90** | **$12,924.00** |

In addition to legal fees, the Receiver has advanced costs of $10,094.11 as summarized below.[10]

| Costs | Total |
|---|---|
| Delivery Services | $31.12 |
| Web-Related | $10,062.99 |
| **Total** | **$10,094.11** |

**B.      Discrete Litigation Projects.**

In conjunction with the Receivership, the following two discrete litigation projects have been formally commenced by the Receiver.

**1.      Recovery of False Profits from Investors.**

This is a project involving the Receiver's efforts to recover false profits from investors whose purported accounts received monies in an amount that exceeded their investments. (*See also* Ex. 2 § V.2.b.) These purported profits

---

[10]  The amount sought for costs includes $5,009.15 for costs which were incurred in 2021 but were inadvertently not included in the prior fee motions.

were false because they were not based on any trading or investment gain, but rather were fruits of a Ponzi scheme that consisted of funds of new and existing investors. With the Court's approval, the Receiver engaged in a pre-suit resolution process with investors who received such false profits. *See* Docs. 237 and 247. The pre-suit resolution process was fruitful, as discussed in the Interim Report. Ex. 2 at 29-30. However, many investors did not take advantage of the opportunity afforded by this process. On March 24, 2020, the Receiver moved the Court for authority to file clawback litigation. Doc. 258. The Court granted the Receiver's motion on April 13, 2020. Doc. 264. Pursuant to the Consolidated Order and the Court's express authorization, on April 14, 2020, the Receiver filed a clawback complaint against numerous non-settling investors. A copy of the statement summarizing the Receiver's services rendered for this project from January 1, 2022 through March 31, 2022 is attached as **Exhibit 4**. The Receiver's time and fees for services rendered for each Activity Category are as follows:

### Recovery from Investors
### Receiver's Time and Fees for Services Rendered

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Analysis and Recovery | 12.40 | $4,464.00 |
| **TOTAL** | **12.40** | **$4,464.00** |

### 2.    Litigation Against Raymond P. Montie.

This is a project involving the Receiver's clawback litigation against Raymond P. Montie, which seeks to recover approximately $1.7 million in fraudulent transfers and as much as $50 million for aiding and abetting or personally committing breaches of fiduciary duty. (*See also* Ex. 2 § V.2.c.) A copy of the statement summarizing the Receiver's services rendered for this project from January 1, 2022 through March 31, 2022 is attached as **Exhibit 5**. The Receiver's time and fees for services rendered for each Activity Category are as follows:

**Litigation Against Raymond P. Montie**
**Receiver's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Analysis and Recovery | 1.40 | $504.00 |
| **TOTAL** | **1.40** | **$504.00** |

## II.    **Guerra King P.A.**

The Receiver requests the Court award GK fees for professional services rendered and costs incurred from January 1, 2022 through March 31, 2022, in the amounts of $51,073.00 and $1,677.18 respectively. A categorization and summary of all costs for which GK seeks reimbursement is attached as **Exhibit 6**.

As an accommodation to the Receiver and to conserve the resources of the Receivership Estate, GK's attorneys and paralegals have agreed to reduce

their standard rates by as much as 30 percent as provided in the fee schedule attached as **Exhibit 7**. GK began providing services immediately upon the appointment of the Receiver. The activities of GK for the time covered by this motion are set forth in the Interim Report. *See* Ex. 2. GK has billed time for these activities in accordance with the Billing Instructions.

### A.    The Receivership.

As discussed above, the work of the Receiver and GK focused on investigating the fraud and related activities, locating and taking control of Receivership assets, investigating and pursuing additional assets for the Receivership, analyzing investor information for the claims process and litigation, and administering the claims process. Ex. 2. A copy of the statement summarizing the services rendered and costs incurred by GK from January 1, 2022 through March 31, 2022, is attached as **Exhibit 8.** GK's time and fees for services rendered on this matter for each Activity Category are as follows:

**Receivership**
**GK's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Disposition | 3.70 | $795.50 |
| Asset Analysis and Recovery | 54.80 | $14,434.00 |
| Business Operations | 25.90 | $3,496.50 |
| Case Administration | 17.20 | $4,571.00 |
| Claims Administration | 88.80 | $18,990.50 |
| **TOTAL** | **190.40** | **$42,287.50** |

The Receiver also requests the Court award Johnson Cassidy Newlon and DeCort fees for professional services rendered by paralegal Mary Gura for her continuation of work on behalf of the Receivership from January 1, 2022 through March 31, 2022, in the amount of $2,997.00. A copy of the statement summarizing the services rendered and costs incurred by Ms. Gura from January 1, 2022 through March 31, 2022, is attached as **Exhibit 9**.

**B.    Discrete Litigation Projects.**

In conjunction with the Receivership, the following two discrete litigation projects have been formally commenced by the Receiver.

**1.    Recovery of False Profits from Investors.**

As discussed above in Section I.B.1, this is a project involving the Receiver's clawback litigation to recover false profits from investors whose purported accounts received monies in an amount that exceeded their investments. (*See also* Ex. 2 § V.2.b.) These purported profits were false

13

because they were not based on any trading or investment gain, but rather were fruits of a Ponzi scheme that consisted of funds of new and existing investors. A copy of the statement summarizing the services rendered and costs incurred by GK from January 1, 2022 through March 31, 2022 for this project is attached as **Exhibit 10**. GK's time and fees for services rendered for each Activity Category are as follows:

**Recovery from Investors**
**GK's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Analysis and Recovery | 12.30 | $2,548.50 |
| **TOTAL** | **12.30** | **$2,548.50** |

### 2. Litigation Against Raymond P. Montie.

This is a project involving the Receiver's clawback litigation against Raymond P. Montie, which seeks to recover approximately $1.7 million in fraudulent transfers and as much as $50 million for aiding and abetting or personally committing breaches of fiduciary duty. (*See also* Ex. 2 § V.2.c.) A copy of the statement summarizing the services rendered and costs incurred by GK from January 1, 2022 through March 31, 2022 for this project is attached as **Exhibit 11**. GK's time and fees for services rendered for each Activity Category are as follows:

**Litigation Against Raymond P. Montie**
**GK's Time and Fees for Services Rendered**

| Activity Category | Hours Expended | Fee Amount |
|---|---|---|
| Asset Analysis and Recovery | 20.30 | $6,237.00 |
| **TOTAL** | **20.30** | **$6,237.00** |

## III.   Englander Fischer.

The Receiver requests the Court award Englander Fischer fees for professional services rendered and costs incurred from January 1, 2022 through March 31, 2022 in the amount of $24,420.26. On March 24, 2020, the Receiver sought the approval of the retention of John Waechter and Englander Fischer to assist the Receiver and his primary counsel, GK, with the clawback litigation explained in Sections I.B.1 and I.B.2 above. Doc. 258. The Court granted the Receiver's motion on April 13, 2020. Doc. 264. The Receiver's clawback litigation is proceeding against numerous defendants who received false profits as well as Raymond P. Montie. As an accommodation to the Receiver, Mr. Waechter agreed to a reduced rate of $335 per hour for his work on behalf of the Receivership. Copies of the statements summarizing the services rendered and costs incurred by

Englander Fischer from January 1, 2022 through March 31, 2022 are attached as **Exhibit 12.**[11]

Englander Fischer's invoices do not contain a summary of the professionals' hours. Therefore, a summary of the professionals' hours rendered during the time covered by this motion is set forth below.[12]

| Professional | Hours | Rate | Total |
|---|---|---|---|
| John Waechter (JWW) | 13.75 | $335.00 | $4,606.25 |
| Beatriz McConnell (BM) | 24.20 | $335.00 | $8,107.00 |
| Amy Dilday (AD) | 24.00 | $335.00 | $8,040.00 |
| Alicia Gangi (AG) | 7.80 | $325.00 | $2,535.00 |
| Alex M. Dragovich (AMD) | .20 | $250.00 | $50.00 |
| April Bogert (ALB) | 1.40 | $185.00 | $259.00 |
| Tara Dillon (TD) | 3.15 | $175.00 | $551.25 |
| Fees | | | $24,148.50 |
| Disbursements | | | $271.76 |
| Total | | | $24,420.26 |

## IV. **KapilaMukamal, LLP.**

The Receiver requests the Court award KM fees for professional services rendered and costs incurred from January 1, 2022 through March 31, 2022, in the amount of $1,325.95. KM is a forensic accounting firm that specializes in insolvency and restructuring, Ponzi schemes, fraud

---

[11] The statements reflect a larger "Total Amount Due" than currently outstanding or requested here because they were generated before the firm received payment for services performed in connection with prior motion for fees.

[12] Effective beginning January 1, 2022, Englander Fischer increased the hourly rates for Alex Dragovich from $225 to $250 and Alicia Gangi from $275 to $325. The Receiver believes that these rate increases are reasonable and that these professionals' rates are still at or below those charged by attorneys and paralegals of comparable skill from other law firms in the Middle District of Florida.

investigations, insolvency taxation, business valuation, and litigation support. At the Receiver's request, KM performed forensic reconstructions of numerous bank accounts, which required the analysis of thousands of transactions involving hundreds of investors. Through this analysis, KM has identified the individualized amounts most investors lost in connection with the scheme as well the amounts certain other investors gained as a result of the scheme. KM's analysis allowed the Receiver to (1) institute a claims process to return money to defrauded investors (with approved claims); and (2) pursue litigation against those that profited from the scheme. KM's analysis also will allow the Receiver, among other things, to calculate a total loss amount for additional litigation against third parties and related purposes. As an accommodation to the Receiver and to conserve the resources of the Receivership Estate, Soneet Kapila, a principal of KM, agreed to reduce his hourly billing rate and to discount all other forensic accounting work by 15 percent. KM started providing services for the Receivership on April 30, 2019. A copy of the statement summarizing the services rendered and costs incurred for this period is attached as **<u>Exhibit 13</u>**.

## V.    **<u>PDR CPAs.</u>**

The Receiver requests the Court award PDR fees for professional services rendered and costs incurred from January 1, 2022 through March 31, 2022, in the amount of $4,404.82. PDR is an accounting firm that specializes

in tax matters and has extensive experience with the tax treatment of settlement funds. PDR is assisting the Receiver with internal Receivership accounting, financial reporting, and tax preparation and filing. PDR started providing services for the Receivership on May 17, 2019. Copies of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite **Exhibit 14**.

## VI. **E-Hounds, Inc.**

The Receiver requests the Court award E-Hounds fees for professional services rendered and costs incurred from January 1, 2022 through March 31, 2022, in the amount of $10,397.50. E-Hounds is a computer forensics firm that assists the Receiver in securing, analyzing, and maintaining electronic data. E-Hounds started providing services for the Receivership on April 22, 2019. Copies of the statements summarizing the services rendered and costs incurred for the pertinent period are attached as composite **Exhibit 15**.

## VII. **The RWJ Group, LLC.**

The Receiver requests the Court award RWJ fees for professional services rendered and costs incurred from January 1, 2022 through March 31, 2022, in the amounts of $746.25 and $114.08, respectively. RWJ, which is owned and operated by Roger Jernigan, is an asset management and investigation firm. Mr. Jernigan assists the Receiver with overseeing ongoing business operations and property recovered by the Receiver, including aiding

with efforts to sell such businesses and property. His efforts are designed to ensure that Receivership assets are maintained and/or enhanced to allow for maximum recovery for the Receivership Estate. RWJ started providing services for the Receivership on April 18, 2019. A copy of the statement summarizing the services rendered and costs incurred for the pertinent period is attached as **Exhibit 16**.

## VIII. **RPM Financial Markets Group LLC.**

The Receiver requests the Court award RPM fees for professional services rendered and costs incurred from January 1, 2022 through March 31, 2022, in the amount of $5,737.00. Thomas Bakas is the managing principal of RPM. On June 25, 2021, the Receiver filed a motion to approve the retention of Mr. Bakas as a litigation consultant in connection with the investigation and prosecution of litigation against ATC (Doc. 412), which the Court granted on July 13, 2021 (Doc. 415). Mr. Bakas' extensive experience was set forth in the Receiver's motion to retain him. Doc. 412. In short, Mr. Bakas' experience will provide essential insight into ATC's onboarding of pertinent accounts and trading and customer-service activities, which will be invaluable to the Receiver's ability to litigate his claims. Mr. Bakas' standard rate is generally $600 per hour, but he has agreed to discount that rate to $510 per hour for

this engagement. A copy of the statement summarizing the services rendered and costs incurred for the pertinent period is attached as **Exhibit 17**.[13]

## MEMORANDUM OF LAW

It is well settled that this Court has the power to appoint a receiver and to award the receiver and those appointed by him fees and costs for their services. *See, e.g., S.E.C. v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) (receiver is entitled to compensation for faithful performance of his duties); *Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984) ("[T]he receiver diligently and successfully discharged the responsibilities placed upon him by the Court and is entitled to reasonable compensation for his efforts."); *S.E.C. v. Custable*, 1995 WL 117935 (N.D. Ill. Mar. 15, 1995) (receiver is entitled to fees where work was of high quality and fees were reasonable); *S.E.C. v. Mobley*, 2000 WL 1702024 (S.D.N.Y. Nov. 13, 2000) (court awarded reasonable fees for the receiver and his professionals); *see also* Doc. 7 ¶ 40 & Doc. 44 ¶ 58. The determination of fees to be awarded is largely within the discretion of the trial court. *See Monaghan v. Hill*, 140 F.2d 31, 34 (9th Cir. 1944). In determining reasonable compensation for the services rendered by

---

[13] The Court approved Mr. Bakas' engagement as a litigation consultant. As such, his activities are subject to certain privileges and immunities from disclosure. In Exhibit 17, the Receiver and Mr. Bakas have attempted to balance those privileges and the Court's role in supervising and approving expenditures. To that end, Mr. Bakas has included on the second page of his invoice a general description of the work done during this period.

the Receiver and his Professionals, the Court should consider the circumstances surrounding the Receivership.  *See Elliot*, 953 F.2d at 1577.

Here, because of the nature of this case, it is necessary for the Receiver to employ attorneys and accountants experienced and familiar with financial frauds, federal receiverships, banking, and finance.  Further, to perform the services required and achieve the results obtained to date, the skills and experience of the Receiver and the Professionals in the areas of fraud, commodities, computer and accounting forensics, and financial transactions are indispensable.

As discussed above, the Receiver and GK have discounted their normal and customary rates as an accommodation to the Receivership and to conserve Receivership assets. The rates charged by the attorneys and paralegals are at or below those charged by attorneys and paralegals of comparable skill from other law firms in the Middle District of Florida.

This case has been time-intensive for the Receiver and his Professionals because of the need to resolve many issues rapidly and efficiently. The attached Exhibits detail the time, nature, and extent of the professional services rendered by the Receiver and his Professionals for the benefit of investors, creditors, and other interested parties.  The Receiver anticipates that additional funds will be obtained through the Receiver's negotiations or litigation with third parties.

Although the CFTC investigated and filed the initial pleadings in this case, as directed by the Consolidated Order (*see, e.g.,* Doc. 177 ¶ 44), the Receiver is involved with the investigation and forensic analysis of the events leading to the commencement of the pending action, the efforts to locate and gather investors' money, the determination of investor and creditor claims and any ultimate payment of these claims. While the Receiver is sensitive to the need to conserve the Receivership Entities' assets, he believes the fees and costs expended to date were reasonable, necessary, and benefited the Receivership. The Commission has no objection to the relief sought in this motion. *Cf. Custable*, 1995 WL 117935 at *7 ("In securities law receiverships, the position of the SEC in regard to the awarding of fees will be given great weight.").

## CONCLUSION

Under the Consolidated Order, the Receiver, among other things, is authorized and empowered to engage professionals to assist him in carrying out his duties and obligations. The Consolidated Order further provides that he apply to the Court for authority to pay himself and his Professionals for services rendered and costs incurred. In exercising his duties, the Receiver has determined that the services rendered and their attendant fees and costs were reasonable, necessary, advisable, and in the best interests of the Receivership.

22

WHEREFORE, Burton W. Wiand, the Court-appointed Receiver, respectfully requests that this Court award the following sums and direct that payment be made from the Receivership assets:[14]

| | |
|---|---:|
| Burton W. Wiand, Receiver | $27,986.11 |
| Guerra King P.A. | $52,750.18 |
| Johnson Cassidy Newlon & DeCort | $2,997.00 |
| Englander Fischer | $24,420.26 |
| KapilaMukamal, LLP | $1,325.95 |
| PDR CPAs | $4,404.82 |
| E-Hounds, Inc. | $10,397.50 |
| RWJ Group, LLC | $860.33 |
| RPM Financial Markets Group LLC | $5,737.50 |

## LOCAL RULE 3.01(g) CERTIFICATION OF COUNSEL

Undersigned counsel for the Receiver has conferred with counsel for the CFTC and is authorized to represent to the Court that the CFTC does not oppose the relief requested in this motion. Defendants Anile and Montie do not oppose the motion. The undersigned has not yet determined the positions of defendants Haas, Duran, and DaCorta (the latter of whom generally opposed the Receiver's fee applications prior to his criminal conviction) but will update this certification accordingly. The undersigned has not consulted with the United States, as an intervening party, because the government has not previously taken a position on the Receiver's fee applications, and its involvement in this case is concluding following DaCorta's recent trial.

---

[14] A proposed order is attached as **Exhibit 18.**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 16, 2022, I electronically filed the

foreetgoing with the Clerk of the Court by using the CM/ECF system.  I have

also provided the following non-CM/ECF participants with a true and correct

copy of the foregoing by electronic mail and US mail to:

Gerard Marrone
Law Office of Gerard Marrone, P.C.
66-85 73rd Place
Second Floor
Middle Village, NY  11379
gmarronelaw@gmail.com
*Counsel for Defendant Joseph S. Anile, II*

Frank Duran
flduran7@gmail.com

**s/ Jared J. Perez**
Jared J. Perez, FBN 0085192
Email: jperez@guerraking.com
GUERRA KING P.A.
The Towers at Westshore
1408 N. Westshore Blvd
Suite 1010
Tampa, FL  33607
Tel.:  (813) 347-5100
Fax:  (813) 347-5198

*Counsel for the Receiver, Burton W. Wiand*

## RECEIVER'S CERTIFICATION

The Receiver has reviewed this Twelfth Interim Motion for Order Awarding Fees, Costs, and Reimbursement of Costs to Receiver and His Professionals (the "**Motion**").

To the best of the Receiver's knowledge, information, and belief formed after reasonable inquiry, the Motion and all fees and expenses herein are true and accurate and comply with the Billing Instructions provided to the Receiver by the Commodity Futures Trading Commission.

All fees contained in the Motion are based on the rates listed in the fee schedule, attached as Exhibit 7. Such fees are reasonable, necessary, and commensurate with (if not below the hourly rate that is commensurate with) the skill and experience required for the activity performed.

The Receiver has not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth in the Billing Instructions for photocopies and facsimile transmission).

To the extent the Receiver seeks reimbursement for any service which the Receiver justifiably purchased or contracted for from a third

party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), the Receiver has requested reimbursement only for the amount billed to the Receiver by the third-party vendor and/or paid by the Receiver to such vendor. The Receiver is not making a profit on such reimbursable services.

The Receiver believes that the fees and expenses included in this Motion were incurred in the best interests of the Receivership Estate. With the exception of the Billing Instructions and the Court-approved engagements described above, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

**s/ Burton W. Wiand**
Burton W. Wiand, as Receiver