# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) ) ) |
| Plaintiff; | ) ) Case No. ) 8:19-cv-886-VMC-SPF |
| v. | ) ) ) |
| OASIS INTERNATIONAL GROUP, LIMITED; OASIS MANAGEMENT, LLC; SATELLITE HOLDINGS COMPANY; MICHAEL J. DaCORTA; JOSEPH S. ANILE, II; RAYMOND P. MONTIE, III; FRANCISCO "FRANK" L. DURAN; and JOHN J. HAAS, | ) ) ) ) ) ) ) ) ) |
| Defendants; | ) ) |
| and | ) ) |
| MAINSTREAM FUND SERVICES, INC.; BOWLING GREEN CAPITAL MANAGEMENT LLC; LAGOON INVESTMENTS, INC.; ROAR OF THE LION FITNESS, LLC; 444 GULF OF MEXICO DRIVE, LLC; 4064 FOUNDERS CLUB DRIVE, LLC; 6922 LACANTERA CIRCLE, LLC; 13318 LOST KEY PLACE, LLC; and 4OAKS LLC, | ) ) ) ) ) ) ) ) ) ) ) |
| Relief Defendants. | |

## CONSENT ORDER FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF AGAINST DEFENDANT JOSEPH S. ANILE, II

## I.   INTRODUCTION

On April 15, 2019, Plaintiff Commodity Futures Trading Commission ("CFTC") filed its initial complaint[1] (Dkt. 1) against Defendants Oasis International Group, Limited ("OIG"); Oasis Management, LLC ("OM"); Satellite Holdings Company ("SHC"); Michael J. DaCorta; Joseph S. Anile, II; Raymond P. Montie, III; Francisco "Frank" L. Duran; and John J. Haas (collectively, "Defendants"), seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–26, and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. pts. 1–190 (2022).  The Complaint alleged that from at least mid-April 2014 until the CFTC filed its initial complaint on April 15, 2019 (the "Relevant Period"), Defendants engaged in a fraudulent scheme to solicit participation in commodity pools trading retail foreign currency, among other violations.  The Court entered an *ex parte* statutory restraining order against Defendants on April 15, 2019 (Dkt. 7), and then Consent Orders for Preliminary Injunction and Other Equitable Relief against Defendants OIG, OM, DaCorta, and Anile on April 30, 2019 (Dkt. 43), and against

---

[1] The CFTC subsequently filed its First Amended Complaint (Dkt. 110) against all Defendants on June 12, 2019, which shall hereinafter be referred to simply as the Complaint.

Defendants Duran, Haas and SHC, and Montie on July 11, 2019 (Dkts. 174, 175, 176, respectively).

The CFTC requested that a receiver be appointed to this matter in order to, among other things, marshal assets held by Defendants as a result of their involvement in the fraudulent scheme (the "Receivership Estate").  On April 15, 2019, Burton Wiand was appointed as the receiver ("Receiver") in this matter and continues to serve in this capacity (Dkt. 7).

Based on similar allegations in the Complaint with respect to the fraudulent scheme, on August 12, 2019, Defendant Anile pleaded guilty to an information charging him with conspiracy to commit wire fraud and mail fraud, an illegal monetary transaction, and filing a false income tax return, for his involvement in the fraudulent scheme.  Plea Agreement, *United States v. Anile* (the "Criminal Action"), No. 8:19-CR-00334-MSS-CPT (M.D. Fla. Aug. 12, 2019) (Dkt. 3).  On May 4, 2022, a jury found Defendant DaCorta guilty of conspiracy to commit wire fraud and mail fraud, illegal monetary transactions, and filing a false income tax return—all related to the same fraudulent scheme alleged in the Complaint and admitted to by Defendant Anile.  Jury Verdict, *United States v. DaCorta*, No. 8:19-CR-00605-WFJ-CPT (M.D. Fla. May 4, 2022) (Dkt. 192).  Defendant DaCorta and Defendant Anile were each ordered to pay $53,270,336.08 in criminal restitution, representing the loss to victims of the fraudulent scheme, and both were also ordered to serve prison sentences.  *See* respective Judgments in a Criminal Case, *DaCorta*, Dkt. 234; *Anile*, Dkt. 58.

## II.     CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendant Anile without a trial on the merits or any further judicial proceedings, Defendant Anile:

1.      Consents to the entry of this Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendant Joseph S. Anile, II ("Consent Order");

2.      Affirms that he has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the CFTC or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order;

3.      Acknowledges service of the summons and Complaint;

4.      Admits the jurisdiction of this Court over him and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

5.      Admits the jurisdiction of the CFTC over the conduct and transactions at issue in this action pursuant to the Act;

6.      Admits that venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e);

7.      Waives:

> (a)      Any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and/or the

rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2022), relating to, or arising from, this action;

(b)   Any and all claims that he may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201–253, 110 Stat. 847, 857–74 (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this action;

(c)   Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d)   Any and all rights of appeal from this action;

8.   Agrees that the CFTC is the prevailing party in this action for purposes of the waiver of any and all rights under the Equal Access to Justice Act and the Small Business Regulatory Enforcement Fairness Act of 1996 specified in paragraph 7.

9.   Consents to the continued jurisdiction of this Court over him for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Defendant Anile now or in the future resides outside the jurisdiction of this Court;

10.   Agrees that he will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waives any objection based thereon;

11.   Acknowledges that he pleaded guilty in *United States v. Anile*, No. 8:19-CR-00334-MSS-CPT (M.D. Fla. Aug. 12, 2019), to violating 18 U.S.C.

§§ 1349, 1957, and 7206(1), and in connection with that plea, admitted the facts set out in the transcript of his plea allocution, a copy of which is attached as Exhibit A to this Consent Order, and those same facts are admitted as if set forth in this Order;

12.     Admits to all of the findings made in this Consent Order and all of the allegations in the Complaint;

13.     Agrees to provide immediate notice to this Court and the CFTC by certified mail, in the manner required by paragraph 97 of Part IX of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against him, whether inside or outside the United States; and

14.     Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against him in any other proceeding.

### III.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay.  The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein.  The findings and conclusions in this Consent Order are not binding on any other party to this action.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A.     Findings of Fact**

**1.      The CFTC and Defendant Anile Are the Parties to This Consent Order.**

15.     Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act and the Regulations.

16.     Defendant Joseph S. Anile, II is a resident of Jacksonville, Florida. Anile co-founded and was a principal shareholder, director, and president of OIG.  Anile had responsibility for staffing, guiding, and managing OIG's vision, mission, strategic plan, and direction.  Anile controlled OIG bank accounts. Additionally, Anile opened trading accounts for the Oasis Pools.  Anile assisted in facilitating real estate purchases with pool funds and making non-forex investments with pool funds.  Anile has never been registered with the Commission in any capacity.

**2.      Defendants' Investment Scheme Defrauded Hundreds of Pool Participants.**

17.     During the Relevant Period, Defendants operated a fraudulent scheme to solicit and misappropriate money given to them for the purpose of engaging in leveraged, margined, or financed transactions in foreign currency with customers that were not ECPs as described in Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) ("retail forex").  Defendants did so through several interrelated domestic and foreign entities (OIG, OM, and SHC), acting as a

common enterprise.  These entities acted as commodity pool operators for the commodity pools Oasis Global FX, Limited and later Oasis Global FX, S.A. (together, the "Oasis Pools").

18.     Defendants fraudulently solicited approximately 800 members of the public ("pool participants") to invest over $80 million in the Oasis Pools, which purportedly would trade in retail forex.  But only a portion of the pool funds were used to trade retail forex—which trading incurred losses—and instead the majority of pool funds were misappropriated and pool participants were issued false account statements to conceal the trading losses and misappropriation.

19.     During the course of the fraudulent scheme, Defendants made material misrepresentations to pool participants, including that:  (1) all pool funds would be used to trade retail forex; (2) pool participants would receive a minimum 12% guaranteed annual return from this retail forex trading; (3) the Oasis Pools were profitable and returned 22% in 2017 and 21% in 2018; (4) the Oasis Pools had never had a losing month; (5) money being returned to pool participants was from profitable trading; (6) there was no risk of loss with the Oasis Pools; and (7) pool participants could earn extra returns by referring other pool participants to the Oasis Pools.

20.     Instead, Defendants DaCorta and Anile misappropriated the majority of pool funds.  Defendants deposited only $21 million into retail forex trading accounts in the names of the Oasis Pools, all of which was lost trading

8

retail forex.  Defendants misappropriated over $28 million of pool funds to make Ponzi-like payments to other pool participants.  Defendants misappropriated over $18 million of pool funds for unauthorized personal or business expenses, such as real estate purchases in Florida, exotic vacations, sports tickets, loans to family members, and college and study abroad tuition.

21.     To conceal the trading losses and misappropriation, Defendants DaCorta and Anile, on behalf of OIG and OM, created and issued false account statements to pool participants that inflated and misrepresented the value of the pool participants' investments in the Oasis Pools and the Oasis Pools' trading returns.  The pool participants believed that these account statement balances reflected money actually held in accounts for the Oasis Pools and that they reflected the pool participants' principal investment amounts, interest on that principal, and in many cases, "referral" fees for introducing other pool participants to the "opportunity."  When the CFTC filed its initial complaint, however, the assets of the Oasis Pools were such that they were ultimately short $50 million to pay back even pool participants' principal investments, let alone interest on their investments and referral fees.

**3.     Anile Misappropriated Pool Funds for Personal Use.**

22.     Instead of using pool participants' funds for forex trading in the Oasis Pools, Defendant Anile knowingly misappropriated the funds for his personal benefit.

23.     Defendant Anile used pool funds to purchase a personal residence in Sarasota, Florida in which he and his family resided.  To effect the purchase, Anile created a legal entity, 4064 Founders Club Drive, LLC ("4064 Founders Club"), which had a bank account on which Anile and his wife were the only signatories.  4064 Founders Club received over $590,000 in pool funds during the Relevant Period, and pool funds were the only source of funds in the account. 4064 Founders Club was named as a Relief Defendant in the Complaint, and was transferred to the care and custody of the Receiver.

24.     Defendant Anile also created additional legal entities, Bowling Green Capital Management LLC ("Bowling Green"), and 4Oaks LLC ("4Oaks").  Bowling Green and 4Oaks both had bank accounts on which Anile and his wife were the only signatories.  Bowling Green's account received over $2.1 million in pool funds during the Relevant Period, and 4Oaks received over $177,000 in pool funds during the Relevant Period.  Pool funds were the only source of funds in the Bowling Green and 4Oaks accounts.  Both Bowling Green and 4Oaks were named as Relief Defendants in the Complaint and transferred to the care and custody of the Receiver.

25.     Defendant Anile misappropriated millions of dollars from the Oasis Pools.  Anile regularly used corporate bank accounts, in which pool funds were the only source of funds, to pay for personal living expenses for himself and his family.  Anile also spent substantial pool funds on numerous vehicles, including a Ferrari; private school and college tuition and loan payments for his family;

jewelry; furniture; landscaping; moving expenses; restaurants; vacations; and pet supplies.

26.     Defendant Anile controlled OIG's bank accounts, and opened the trading accounts for the Oasis Pools.  Of the approximately $80 million received from pool participants for the Oasis Pools, Anile deposited just over $20 million in the trading accounts for retail forex trading.  Nearly all of this money was lost trading retail forex.

27.     Defendant Anile executed all payments, wires, and withdrawals from OIG's bank accounts at his own or Defendant DaCorta's direction.  The only source of funds in these accounts was from participants in the Oasis Pools.

28.     Defendant Anile's misappropriation of pool funds operated as a fraud on pool participants.

**4.     Defendant OIG Failed To Operate the Oasis Pools As Separate Legal Entities or To Receive Funds in the Oasis Pools' Names.**

29.     Defendant OIG, acting as a commodity pool operator ("CPO") of the Oasis Pools, did not operate the Oasis Pools as separate legal entities.  OIG failed to open bank accounts specifically designated for the Oasis Pools.  OIG also failed to receive pool participants' funds in the names of the Oasis Pools and commingled the property of the Oasis Pools with the property of Defendants or others.

**5.     Defendant OIG Failed To Register with the CFTC.**

30.     Defendant OIG operated as a CPO in that it engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and they solicited, accepted, or received funds, securities, property, or capital contributions for the purpose of trading in commodity interests, including retail forex transactions.

31.     Defendant OIG used emails, wire transfers, phone calls including conference calls, and other means or instrumentalities of interstate commerce to solicit, accept, and receive pool participants' funds for the purpose of trading retail forex.

32.     During the Relevant Period, Defendant OIG was never registered as a CPO and was not exempt or excluded from registration as a CPO.

**6.     Defendant OIG Failed To Provide Adequate Pool Disclosures and Other Relevant Documents.**

33.     At or near the time of participation in the Oasis Pools, Defendant OIG, while acting as a CPO of the Oasis Pools, provided potential pool participants with a document titled "Agreement and Risk Disclosures," along with a "Promissory Note and Loan Agreement."

34.     The Agreement and Risk Disclosure purported to alert investors to the risks associated with investing in retail forex, but at the same time, the Promissory Note and Loan Agreement guaranteed pool participants a minimum 12% annual return.

35.     The Agreement and Risk Disclosure did not include the required cautionary statement to investors or a full and complete risk disclosure, including the risks involved in retail forex trading.

36.     In addition, Defendant OIG also failed to provide pool participants with additional required information, including but not limited to the fees and expenses incurred by the Oasis Pools, past performance disclosures, and a statement that the CPO is required to provide all pool participants with monthly or quarterly account statements, as well as an annual report containing financial statements certified by an independent public accountant.

### 7.     Defendant Anile Was a Controlling Person of OIG.

37.     Defendant Anile was a controlling person of OIG.  He co-founded and was an OIG principal shareholder, director, and president of OIG.  Oasis's website stated that Anile had responsibility for staffing, guiding, and managing OIG's vision, mission, strategic plan, and direction.  Additionally, Anile opened the trading accounts used for the Oasis Pools and controlled OIG bank accounts.

## B.     Conclusions of Law

### 1.     Jurisdiction and Venue

38.     This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), provides that the

CFTC may bring actions for injunctive relief or to enforce compliance with the Act or any rule, regulation, or order thereunder in the proper district court of the United States whenever it shall appear to the CFTC that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

39.     Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e), because a number of Defendants reside in this jurisdiction and the acts and practices in violation of the Act occurred within this District.

**2.      Defendants Anile and OIG Committed Fraud in Violation of Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C.§6b(a)(2)(A)-(C) and Regulation 5.2(b), 17 C.F.R. § 5.2(b).**

40.     7 U.S.C. § 6b(a)(2)(A)-(C), makes it unlawful:

(2)     [F]or any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or swap, that is made, or to be made, for or on behalf of, or with any other person, other than on or subject to the rules of a designated contract market

(A)     to cheat or defraud or attempt to cheat or defraud the other person;

(B)     willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; [or]

(C)     willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency

> performed, with respect to any order or
> contract for or, in the case of paragraph (2),
> with the other person[.]

41.     Under Section 2(c)(2)(C)(i) and (iv) of the Act, 7 U.S.C.
§ 2(c)(2)(C)(i), (iv), transactions in foreign currency (such as the retail forex transactions described herein), that are entered into with persons who are not eligible contract participants, are subject to Section 4b of the Act "as if" they are a contract of sale of a commodity for future delivery.

42.     Section 1a(18)(A)(ix) of the Act, 7 U.S.C. § 1a(18)(A)(xi), defines an ECP (eligible contract participant), in relevant part, as an individual who has amounts invested on a discretionary basis, the aggregate of which exceeds $10 million, or $5 million if the individual enters into the transaction to manage the risk associated with an asset owned or liability occurred, or reasonably likely to be owned or incurred, by the individual.

43.     17 C.F.R. § 5.2(b) provides, in relevant part, that:

> It shall be unlawful for any person, by use of the mails or by
> any means or instrumentality of interstate commerce, directly
> or indirectly, in or in connection with any retail forex
> transaction:
>
> (1)    To cheat or defraud or attempt to cheat or
>        defraud any person;
>
> (2)    Willfully to make or cause to be made to any
>        person any false report or statement or cause to
>        be entered for any person any false record; or
>
> (3)    Willfully to deceive or attempt to deceive any
>        person by any means whatsoever.

44.     Defendant Anile engaged in a fraud by depositing only a portion of pool participants' funds in trading accounts used to trade retail forex.  Anile misappropriated the remainder of funds, paying back other pool participants in the nature of a Ponzi scheme, or transferring funds to himself, or accounts owned by him, or to other defendants and relief defendants.

45.     Defendant OIG engaged in a fraud by, among other things: (1) issuing false account statements to pool participants, and (2) paying returns to pool participants by using the principal of other pool participants in the nature of a Ponzi scheme.

46.     By reason of the foregoing, Defendant OIG and Defendant Anile, by violated 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3).

47.     Defendant Anile controlled OIG, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, OIG's conduct as described above, and therefore under Section 13(b) of the Act, 7 U.S.C. § 13c(b), Defendant Anile is liable for OIG's violations of 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3).

48.     Each act of misappropriation, misrepresentation, omission of material fact, or false report or statement is a separate and distinct violation of 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3).

**3.      Defendant OIG Committed Fraud as a CPO in Violation of Section 4*o*(1)(A)-(B) of the Act, 7 U.S.C. § 6*o*(1)(A)-(B).**

49.      Section 1a(11) of the Act, 7 U.S.C. § 1a(11)(A)(i), defines a CPO, in relevant part, as any person

> [E]ngaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests, including any—
>
> (I)      commodity for future delivery, security futures product, or swap; [or]
>
> (II)     agreement, contract, or transaction described in [S]ection 2(c)(2)(C)(i) [of the Act] or [S]ection 2(c)(2)(D)(i) [of the Act].

50.      Under Regulation 5.1(d)(1), 17 C.F.R. § 5.1(d)(1) (2022), and subject to certain exceptions not relevant here, any person who operates or solicits funds, securities, or property for a pooled investment vehicle and engages in retail forex transactions is a retail forex CPO.

51.      Under Section 2(c)(2)(C)(ii)(I) of the Act, 7 U.S.C. § 2(c)(2)(C)(ii)(I), "[a]greements, contracts, or transactions" in retail forex and accounts or pooled investment vehicles "shall be subject to . . . section[ ] 6*o* [of the Act]," except in circumstances not relevant here.

52.      During the Relevant Period, Defendant OIG engaged in a business, for compensation or profit, that is of the nature of a commodity pool, investment

trust, syndicate, or similar form of enterprise, and in connection therewith, solicited, accepted, or received from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests; therefore, Defendant OIG acted as a CPO, as defined by 7 U.S.C. § 1a(11).

53.     During the Relevant Period, Defendant OIG was not registered with the CFTC as a CPO.

54.     7 U.S.C. § 6o(1)(A)-(B), prohibits CPOs, whether registered with the CFTC or not, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, from employing devices, schemes, or artifices to defraud any client or participant or prospective client or participant, or engaging in transactions, practices, or courses of business which operate as a fraud or deceit upon any client or participant or prospective client or participant.

55.     By reason of the foregoing, Defendant OIG violated 7 U.S.C. § 6o(1)(A)-(B).

56.     At all times relevant to this Consent Order, Defendant Anile controlled OIG, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, OIG's conduct; therefore, pursuant to 7 U.S.C.  § 13c(b), Defendant Anile is also liable for OIG's violations of 7 U.S.C. § 6o(1)(A)-(B).

57.     Each act of misappropriation, misrepresentation, omission of material fact, or false report or statement is a separate and distinct violation of 7 U.S.C. § 6*o*(1)(A)-(B).

**4.     OIG Failed To Register as a CPO in Violation of Sections 2(c)(2)(C)(iii)(I)(cc) and 4m(1) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6m(1), and Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2022).**

58.     Subject to certain exceptions not relevant here, 7 U.S.C. § 6m(1) states that it shall be "unlawful for any . . . [CPO], unless registered under this chapter, to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as such . . . [CPO]."

59.     Subject to certain exceptions not relevant here, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc) states that a

>  [P]erson, unless registered in such capacity as the Commission by rule, regulation, or order shall determine and a member of a futures association registered under section 21 of this title, shall not . . .
>
>          . . . . .
>
>          (cc) operate or solicit funds, securities, or property for any pooled investment vehicle that is not an eligible contract participant in connection with [retail forex contracts, agreements, or transactions].

60.     For the purposes of retail forex transactions, a CPO is defined in Regulation 5.1(d)(1), 17 C.F.R. § 5.1(d)(1) (2022), as any person who operates or solicits funds, securities, or property for a pooled investment vehicle that is not

an ECP, as defined in Section 1a(18) of the Act, 17 U.S.C. § 1a(18), and who engages in retail forex transactions.

61.     Except in circumstances not relevant here, Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2022), requires those that meet the definition of a retail forex CPO under Regulation 5.1(d), 17 C.F.R. § 5.1(d) (2022), to register as a CPO with the CFTC.

62.     By reason of the foregoing, Defendant OIG engaged in a business, for compensation or profit, that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and in connection therewith, solicited, accepted, or received from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests, including retail forex transactions; therefore, Defendant OIG acted as a CPO as defined by 7 U.S.C. § 1a(11).

63.     Defendant OIG while using the mails or means of interstate commerce in connection with its business as a CPO, was not registered with the CFTC as a CPO.

64.     By reason of the foregoing, Defendant OIG acted as an unregistered CPO in violation of 7 U.S.C. § 6m(1).

65.     By reason of the foregoing, Defendant OIG solicited funds, securities, or property for a pooled investment vehicle from investors who were not ECPs, as defined by 7 U.S.C. § 1a(18), for the purpose of trading in retail forex

transactions (as defined by 17 C.F.R. § 5.1(m)); thus, OIG acted as a CPO engaged in retail forex transactions as defined by 17 C.F.R. § 5.1(d)(1).

66.   Defendant OIG was not registered with the CFTC as a CPO engaged in retail forex transactions, and therefore violated 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc) and 17 C.F.R. § 5.3(a)(2)(i).

67.   Defendant Anile controlled OIG, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, OIG's conduct. Therefore, under 7 U.S.C. § 13c(b), Defendant Anile is liable for OIG's violations of 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc) and 6m(1) and 17 C.F.R. § 5.3(a)(2)(i).

68.   Each instance that OIG acted as a CPO but failed to register with the CFTC as such is a separate and distinct violation.

### 5.   OIG Failed To Accept Funds in the Name of the Oasis Pools and Commingled Funds in Violation of Regulation 4.20, 17 C.F.R. § 4.20 (2022).

69.   Regulation 5.4, 17 C.F.R. § 5.4 (2022), states that Part 4 of the Regulations, 17 C.F.R. pt. 4 (2022), applies to any person required to register as a CPO pursuant to Part 5 of the Regulations, 17 C.F.R. pt. 5 (2022), relating to forex transactions.

70.   17 C.F.R. § 4.20(b) prohibits CPOs, whether registered or not, from receiving pool participants' funds in any name other than that of the pool.

71.   17 C.F.R. § 4.20(c) prohibits CPOs, whether registered or not, from commingling the property of any pool it operates with the property of any other person.

72.     By reason of the foregoing, Defendant OIG, while acting as a CPO for the Oasis Pools, failed to receive the pool participants' funds in the names of the Oasis Pools, and commingled the property of the Oasis Pools with property of Defendants or others.

73.     By reason of the foregoing, Defendant OIG violated 17 C.F.R. § 4.20(b)-(c).

74.     Defendant Anile controlled OIG, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, OIG's conduct. Therefore, under 7 U.S.C. § 13c(b), Defendant Anile is liable for OIG's violations of 17 C.F.R. § 4.20(b)-(c).

75.     Each act of improperly receiving pool participants' funds and commingling the property of the Oasis Pools with non-pool property, including but not limited to those specifically described herein, is a separate and distinct violation of 17 C.F.R. § 4.20(b)-(c).

6.     **Defendant OIG Failed To Provide Pool Disclosures in Violation of Regulation 4.21, 17 C.F.R. § 4.21 (2022).**

76.     Regulation 5.4, 17 C.F.R. § 5.4 (2022), states 17 C.F.R. pt. 4 applies to any person required to register as a CPO under 17 C.F.R. pt. 5 relating to forex transactions.

77.     17 C.F.R. § 4.21 provides that

> [E]ach commodity pool operator registered or required to be registered under the Act must deliver or cause to be delivered to a prospective participant in a pool that it operates or intends to operate a Disclosure Document for the pool

> prepared in accordance with §§ 4.24 and 4.25 by no later than the time it delivers to the prospective participant a subscription agreement for the pool . . . .

78.     By reason of the foregoing, Defendant OIG failed to provide to prospective pool participants with pool disclosure documents in the form specified in Regulations 4.24 and 4.25, 17 C.F.R. § 4.24, 4.25 (2022).

79.     By reason of the foregoing, Defendant OIG violated 17 C.F.R. § 4.21.

80.     Defendant Anile controlled OIG, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, OIG's conduct. Therefore, under 7 U.S.C. § 13c(b), Defendant Anile is liable for OIG's violations of 17 C.F.R. § 4.21.

81.     Each failure to furnish the required disclosure of documents to prospective pool participants and pool participants is a separate and distinct violation of 17 C.F.R. § 4.21.

82.     Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defendant Anile will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

## IV.    PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

83.     Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Defendant Anile is permanently restrained, enjoined and prohibited from directly or indirectly:

a.   Cheating or defrauding, or attempting to cheat or defraud, other

persons in or in connection with any order to make, or the making

of, any contract of sale of any retail forex transaction that is made, or

to be made, for or on behalf of, or with, any other person, in violation

of Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C), and

Regulation 5.2(b)(1)-(3), 17 C.F.R. § 5.2(b)(1)-(3) (2022);

b.   Employing any device, scheme, or artifice to defraud any client or

participant or prospective client or participant, or engaging in any

transaction, practice or course of business which operates as a fraud

or deceit upon any client or participant or prospective participant in

violation of Section 4*o*(1)(A)-(B) of the Act, 7 U.S.C. § 6*o*(1)(A)-(B);

c.   Failing to register as a CPO in violation of Sections

2(c)(2)(C)(iii)(I)(cc) and 4m(1), 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc),

6m(1), and Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2022);

d.   Failing to operate a commodity pool as an entity cognizable as a legal

entity separate from that of the pool operator, in violation of

Regulation 4.20(a)(1), 17 C.F.R. § 4.20(a)(1) (2022);

e.   Failing to require that all funds, securities, or other property

received by a CPO from a prospective or existing pool participant be

received in the commodity pool's name, in violation of Regulation

4.20(b), 17 C.F.R. § 4.20(b) (2022);

    f.      Commingling the property of a commodity pool in violation of Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2022); and

    g.     Failing to provide prospective pool participants with pool disclosure documents in the form specified in Regulations 4.24 and 4.25, 17 C.F.R. §§ 4.24, 4.25 (2022), in violation of Regulation 4.21, 17 C.F.R. § 4.21 (2022).

84.    Defendant Anile is also permanently restrained, enjoined and prohibited from directly or indirectly:

    a.     Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40));

    b.     Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2022)), for his own personal account or for any account in which he has a direct or indirect interest;

    c.     Having any commodity interests traded on his behalf;

    d.     Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

    e.     Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

    f.     Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity

requiring such registration or exemption from registration with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2022); and

g.   Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2022)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38)), registered, exempted from registration or required to be registered with the CFTC except as provided for in 17 C.F.R. § 4.14(a)(9).

## V.   RESTITUTION

85.   Defendant Anile shall pay, jointly and severally, restitution in the amount of fifty-three million, two hundred and seventy thousand, three hundred and thirty-six dollars and eight cents ($53,270,336.08) ("Restitution Obligation").

86.   In the Criminal Action, Defendant Anile was sentenced to ten years' imprisonment and ordered to pay restitution in the amount of fifty-three million, two hundred and seventy thousand, three hundred and thirty-six dollars and eight cents ($53,270,336.08) to the pool participants defrauded by Anile in connection with the same conduct at issue in this Consent Order.  For amounts disbursed to the pool participants as a result of satisfaction of any restitution ordered in the Criminal Action, Defendant Anile shall receive a dollar-for-dollar credit against the Restitution Obligation.  One year after the Consent Order is

entered by the Court and on an annual basis thereafter, Defendant Anile shall, under a cover letter that identifies the name and docket number of this proceeding, transmit to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581, and to the Receiver, Burton Wiand, Receiver, Burton W. Wiand PA, 114 Turner Street, Clearwater, FL 33576, a report detailing payments made by Anile in satisfaction of his restitution obligation in the Criminal Action for the year immediately preceding, until such criminal restitution obligation is fulfilled.

87.   To effect payment of the Restitution Obligation and the distribution of any restitution payments to participants in the Oasis Pools, the Court directs the Receiver to receive restitution payments from Defendant as set forth below. Because the Receiver is acting as an officer of this Court in performing these services, the Receiver shall not be liable for any action or inaction arising from his appointment, other than actions involving fraud.

88.   The Receiver shall oversee the Restitution Obligation and shall make any distributions of the same in accordance with the March 7, 2022 Order (Dkt. 482) granting the Receiver's Motion to:  (1) Approve Determination and Priority of Claims; (2) Pool Receivership Assets and Liabilities; (3) Approve Plan of Distribution; and (4) Establish Objection Procedure (Dkt. 439).

89.   Upon the termination of the Receivership Estate, the Receiver shall provide the CFTC with a report detailing the disbursement of funds to participants in the Oasis Pools.  The delivery of the Court's order terminating the

27

Receivership that contains this information shall satisfy this requirement.  The Receiver shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street NW, Washington, D.C. 20581.

90.     The provision of the preliminary injunction entered against Defendant Anile on April 30, 2019 (Dkt. 43), continuing a freeze on assets or funds in his name or under his management and control, shall remain in full force and effect with respect to those assets or funds that can be traced to amounts deposited by or belonging to pool participants in the Oasis Pools, until such time as the Court orders otherwise pursuant to a request by the Receiver or the CFTC.

91.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defendant Anile's Restitution Obligation, such funds shall be transferred to the Receiver for disbursement in accordance with the procedures set forth above.

## VI.   CIVIL MONETARY PENALTY

92.     Defendant Anile shall pay a civil monetary penalty in the amount of five million dollars ($5,000,000.00) ("CMP Obligation").  If the CMP Obligation is not paid in full immediately, then post-judgment interest shall accrue on the unpaid portion of the CMP Obligation beginning on the date of entry of this

Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

93.     Defendant Anile shall pay his CMP Obligation and any post-judgment interest, by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> 6500 S. MacArthur Blvd.
> HQ Room 266
> Oklahoma City, OK 73169
> 9-amz-ar-cftc@faa.gov

If payment by electronic funds transfer is chosen, Defendant Anile shall contact Tonia King or her successor at the address above to receive payment instructions and shall fully comply with those instructions.  Defendant Anile shall accompany payment of the CMP Obligation with a cover letter that identifies Defendant Anile and the name and docket number of this proceeding.  Defendant Anile shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

## VII.   PROVISIONS RELATED TO MONETARY SANCTIONS

94.     Partial Satisfaction:  Acceptance by the CFTC or the Receiver of any partial payment of Defendant Anile's Restitution Obligation or CMP Obligation shall not be deemed a waiver of his obligation to make further payments

pursuant to this Consent Order, or a waiver of the CFTC's or Receiver's right to seek to compel payment of any remaining balance.

## VIII. COOPERATION

95.     Defendant Anile shall cooperate fully and expeditiously with the CFTC and the Receiver, including the CFTC's Division of Enforcement ("Division Staff") and any other governmental agency or any self-regulatory organization, in this action, and in any current or future CFTC investigation or action related thereto.  Defendant Anile shall also cooperate in any investigation, civil litigation, or administrative matter related to, or arising from, this action and any action brought by the Receiver.  As part of such cooperation, Defendant Anile agrees to:

   a.   preserve and produce to the CFTC in a responsive and prompt manner, as requested by Division Staff, all relevant non-privileged documents, information, and other materials wherever located, in the appropriate possession, custody, or control of Anile;

   b.   utilize his knowledge and skill to explain transactions, interpret information and technology, or identify new and productive lines of inquiry;

   c.   prepare and appear for interviews and testimony at such times and places as requested by Division Staff, upon reasonable notice;

   d.   respond completely and truthfully to all inquiries and interviews, when requested to do so by Division Staff;

   e.   identify and authenticate relevant documents and other evidentiary materials, execute affidavits and/or declarations, and testify completely and truthfully at depositions, trial, and other judicial proceedings, when requested to do so by Division Staff;

   f.   accept service by mail, electronic mail, or facsimile transmission of notices or subpoenas for documents and/or testimony;

g.    appoint his attorney, if any, as agent to receive service of such notices and such subpoenas; and

h.    waive the territorial limits on service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules in connection with requests or subpoenas of Division Staff.

## IX.   MISCELLANEOUS PROVISIONS

96.    Until such time as Defendant Anile satisfies in full his Restitution Obligation and CMP Obligation under this Consent Order, upon the commencement by or against Defendant Anile of insolvency, receivership or bankruptcy proceedings or any other proceedings for the settlement of Defendant Anile's debts, all notices to creditors required to be furnished to the CFTC under Title 11 of the United States Code or other applicable law with respect to such insolvency, receivership bankruptcy or other proceedings, shall be sent to the address below:

    Secretary of the Commission
    Legal Division
    Commodity Futures Trading Commission
    Three Lafayette Centre
    1155 21st Street N.W.
    Washington, DC 20581

97.    Notice:  All notices required to be given by any provision in this Consent Order, except as set forth in paragraph 96, above, shall be sent via electronic mail, as follows:

Notice to CFTC:

> Charles Marvine, Deputy Director
> Commodity Futures Trading Commission
> 2600 Grand Blvd., Suite 210
> Kansas City, MO 64108
> cmarvine@cftc.gov

Notice to Defendant Anile:

> jsanile@jsa-atty.com

Notice to Receiver:

> Burton W. Wiand, Receiver
> Burton W. Wiand PA
> 114 Turner Street
> Clearwater, FL 33756

All such notices to the CFTC shall reference the name and docket number of this action.

98.     Change of Address/Phone:  Until such time as Defendant Anile satisfies in full his Restitution Obligation and CMP Obligation as set forth in this Consent Order, Defendant Anile shall provide written notice to the CFTC and the Receiver by certified mail of any change to his telephone number and mailing address within ten calendar days of the change.

99.     Entire Agreement and Amendments:  This Consent Order and other court orders referenced herein incorporate all of the terms and conditions of the settlement among the parties hereto to date.  Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless:  (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

100.    Invalidation:  If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

101.    Waiver:  The failure of any party to this Consent Order at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

102.    Waiver of Service, and Acknowledgement:  Defendant Anile waives service of this Consent Order and agrees that entry of this Consent Order by the Court and filing with the Clerk of the Court will constitute notice to Defendant Anile of its terms and conditions.  Defendant Anile further agrees to provide counsel for the CFTC, within thirty days after this Consent Order is filed with the Clerk of Court, with an affidavit or declaration stating that Defendant Anile has received and read a copy of this Consent Order.

103.    Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including the Receiver's collection efforts

and any motion by Defendant Anile to modify or for relief from the terms of this Consent Order.

104.    Injunctive and Equitable Relief Provisions:  The injunctive and equitable relief provisions of this Consent Order shall be binding upon the following persons who receive actual notice of this Consent Order, by personal service or otherwise:  (1) Defendant Anile; (2) any officer, agent, servant, employee, or attorney of Defendant Anile; and (3) upon any other persons who are in active concert or participation with any persons described in subsections (1) and (2) above.

105.    Counterparts and Facsimile Execution:  This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

106.    Contempt:  Defendant Anile understands that the terms of the Consent Order, except with respect to restitution, are enforceable through contempt proceedings, and that, in any such proceedings he may not challenge the validity of this Consent Order.

107.   Agreements and Undertakings:  Defendant Anile shall comply with all of the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendant Anile* forthwith and without further notice.


**IT IS SO ORDERED** on this __12th__ day of _____December_____, 2023.


_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

CONSENTED TO AND APPROVED
BY:

_____
Joseph S. Anile, II, individually
jsanile@jsa-atty.com

Dated _____21 June 2023_____

_____
Jeffery C. Le Riche
J. Alison Auxter
Commodity Futures Trading
Commission
2600 Grand Boulevard, Suite 210
Kansas City, Missouri 64108
(816) 960-7700
(816) 960-7750 (facsimile)
jleriche@cftc.gov
aauxter@cftc.gov


Dated
_____12/07/2023_____


Approved as to form:

_____
Burton W. Wiand, Receiver
Burton W. Wiand PA
114 Turner Street
Clearwater, FL 33756
burt@burtonwwiandpa.com

Dated    **12-7-2023**

_____