## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

|  |  |  |
|---|---|---|
| **COMMODITY FUTURES TRADING COMMISSION,** | ) ) ) ) | |
| Plaintiff; | ) ) | **Case No.** **8:19-cv-886-VMC-SPF** |
| v. | ) ) ) | |
| **OASIS INTERNATIONAL GROUP, LIMITED; OASIS MANAGEMENT, LLC; SATELLITE HOLDINGS COMPANY; MICHAEL J. DaCORTA; JOSEPH S. ANILE, II; RAYMOND P. MONTIE, III; FRANCISCO "FRANK" L. DURAN; and JOHN J. HAAS,** | ) ) ) ) ) ) ) ) ) ) | |
| Defendants; | ) ) | |
| **and** | ) ) | |
| **MAINSTREAM FUND SERVICES, INC.; BOWLING GREEN CAPITAL MANAGEMENT LLC; LAGOON INVESTMENTS, INC.; ROAR OF THE LION FITNESS, LLC; 444 GULF OF MEXICO DRIVE, LLC; 4064 FOUNDERS CLUB DRIVE, LLC; 6922 LACANTERA CIRCLE, LLC; 13318 LOST KEY PLACE, LLC; and 4OAKS LLC,** | ) ) ) ) ) ) ) ) ) ) ) | |
| Relief Defendants. | | |

**CONSENT ORDER FOR PERMANENT INJUNCTION, CIVIL
MONETARY PENALTY AND OTHER EQUITABLE RELIEF
<u>AGAINST DEFENDANT RAYMOND MONTIE</u>**

## I.      INTRODUCTION

On April 15, 2019, Plaintiff Commodity Futures Trading Commission

("CFTC") filed its initial complaint[1] (<u>Dkt. 1</u>) against Defendants Oasis

International Group, Limited ("OIG"); Oasis Management, LLC ("OM"); Satellite

Holdings Company ("SHC"); Michael J. DaCorta; Joseph S. Anile, II; Raymond P.

Montie, III; Francisco "Frank" L. Duran; and John J. Haas (collectively,

"Defendants"), seeking injunctive and other equitable relief, as well as the

imposition of civil penalties, for violations of the Commodity Exchange Act

("Act"), <u>7 U.S.C. §§ 1–26</u>, and the Commission's Regulations ("Regulations")

promulgated thereunder, 17 C.F.R. pts. 1–190 (2022).  The Complaint alleged

that from at least mid-April 2014 until the CFTC filed its initial complaint on

April 15, 2019 (the "Relevant Period"), Defendants engaged in a fraudulent

scheme to solicit participation in commodity pools trading retail foreign currency

("forex"), among other violations.  The Court entered an *ex parte* statutory

restraining order against Defendants on April 15, 2019 (<u>Dkt. 7</u>), and then Consent

Orders for Preliminary Injunction and Other Equitable Relief against Defendants

OIG, OM, DaCorta, and Anile on April 30, 2019 (<u>Dkt. 43</u>), and against

---

[1] The CFTC subsequently filed its First Amended Complaint (<u>Dkt. 110</u>) against all Defendants on
June 12, 2019, which shall hereinafter be referred to simply as the Complaint.

Defendants Duran, Haas and SHC, and Montie on July 11, 2019 (Dkts. 174, 175, 176, respectively).

The CFTC requested that a receiver be appointed to this matter in order to, among other things, marshal assets held by Defendants as a result of their involvement in the fraudulent scheme (the "Receivership Estate"). On April 15, 2019, Burton Wiand was appointed as the receiver ("Receiver") in this matter and continues to serve in this capacity (Dkt. 7).

Based on similar allegations in the Complaint with respect to the fraudulent scheme, on August 12, 2019, Defendant Anile pleaded guilty to an information charging him with conspiracy to commit wire fraud and mail fraud, an illegal monetary transaction, and filing a false income tax return, for his involvement in the fraudulent scheme. Plea Agreement, *United States v. Anile*, No. 8:19-CR-00334-MSS-CPT (M.D. Fla. Aug. 12, 2019) (Dkt. 3). On May 4, 2022, a jury found Defendant DaCorta guilty of conspiracy to commit wire fraud and mail fraud, illegal monetary transactions, and filing a false income tax return—all related to the same fraudulent scheme alleged in the Complaint and admitted to by Defendant Anile. Jury Verdict, *United States v. DaCorta*, No. 8:19-CR-00605-WFJ-CPT (M.D. Fla. May 4, 2022) (Dkt. 192). Defendant DaCorta and Defendant Anile were each ordered to pay $53,270,336.08 in criminal restitution, representing the loss to victims of the fraudulent scheme, and both were also ordered to serve prison sentences. *See* respective Judgments in a Criminal Case, *DaCorta*, Dkt. 234; *Anile*, Dkt. 58.

## II.    CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendant Raymond Montie without a trial on the merits or any further judicial proceedings, Defendant Montie:

1.    Consents to the entry of this Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendant Montie ("Consent Order");

2.    Affirms that he has read and agreed to this Consent Order voluntarily and that no promise, other than as specifically contained herein, or threat, has been made by the CFTC or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order;

3.    Acknowledges service of the summons and Complaint;

4.    Admits the jurisdiction of this Court over him and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

5.    Admits the jurisdiction of the CFTC over the conduct and transactions at issue in this action pursuant to the Act and Regulations;

6.    Admits that venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e);

7.    Waives:

     (a)    Any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and/or the

rules promulgated by the CFTC in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2022), relating to, or arising from, this action;

(b)    Any and all claims that he may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201–253, 110 Stat. 847, 857–74 (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this action;

(c)    Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d)    Any and all rights of appeal from this action;

8.      For purposes of the waiver of any and all rights under the Equal Access to Justice Act and the Small Business Regulatory Enforcement Fairness Act of 1996, specified in paragraph 7, agrees that the Commission is the prevailing party in this action.

9.      Consents to the continued jurisdiction of this Court over him for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Defendant Montie now or in the future resides outside the jurisdiction of this Court;

10.     Agrees that he will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waives any objection based thereon;

11.     Agrees that neither he nor any of his agents or employees under his authority or control shall take any action or make any public statement denying,

directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect his: (a) testimonial obligations; or (b) right to take legal positions in other proceedings to which the CFTC is not a party.  Defendant Montie shall comply with this agreement, and shall undertake all steps necessary to ensure that all of his agents and/or employees under his authority or control understand and comply with this agreement;

12.     Consents to the entry of this Consent Order without admitting or denying the allegations of the Complaint or any findings or conclusions in this Consent Order, except as to jurisdiction and venue, which he admits;

13.     Consents to the use of the findings and conclusions in this Consent Order in this proceeding and in any other proceeding brought by the CFTC or to which the CFTC is a party or claimant and agrees that they shall be taken as true and correct and be given preclusive effect therein, without further proof;

14.     Does not consent, however, to the use of this Consent Order, or the findings and conclusions herein, as the sole basis for any other proceeding brought by the CFTC or to which the CFTC is a party, other than a statutory disqualification proceeding; proceeding in bankruptcy, or receivership; or proceeding to enforce the terms of this Order;

15.     Agrees to provide immediate notice to this Court and the CFTC by certified mail, in the manner required by paragraph 117 of Part IX of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against him, whether inside or outside the United States; and

16.     Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Defendant Montie in any other proceeding.

### III.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay.  The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction, and other relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein.  The findings and conclusions in this Consent Order are not binding on any other party to this action.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

### A.   Findings of Fact

#### 1.   The CFTC and Defendant Montie Are the Parties to This Consent Order.

17.     Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act and the Regulations.

18.     Defendant Montie is a resident of Pennsylvania.  During the Relevant Period, Montie was a co-founder, principal shareholder, and director of

OIG, as well as OIG's executive director of sales.  Montie has never been

registered with the CFTC in any capacity.

### 2. Defendants' Investment Scheme Defrauded Hundreds of Pool Participants.

19.     During the Relevant Period, Defendants operated a fraudulent

scheme to solicit and misappropriate money given to them for the purpose of

trading foreign currency ("forex") through several interrelated domestic and

foreign entities (OIG, OM, and SHC), acting as a common enterprise.  These

entities acted as commodity pool operators for the commodity pools Oasis Global

FX, Limited and later Oasis Global FX, S.A. (together, the "Oasis Pools").

20.     Defendants fraudulently solicited approximately 800 members of

the public ("pool participants") to invest over $80 million in the Oasis Pools,

which purportedly would trade in forex.  But only a portion of the pool funds

were used to trade forex—which trading incurred losses—and instead the

majority of pool funds were misappropriated and pool participants were issued

false account statements to conceal the trading losses and misappropriation.

21.     During the course of the fraudulent scheme, Defendants made

material misrepresentations to pool participants, including that:  (1) all pool

funds would be used to trade forex; (2) pool participants would receive a

minimum 12% guaranteed annual return from this forex trading; (3) the Oasis

Pools were profitable and returned 22% in 2017 and 21% in 2018; (4) the Oasis

Pools had never had a losing month; (5) money being returned to pool

participants was from profitable trading; (6) there was no risk of loss with the Oasis Pools; and (7) pool participants could earn extra returns by referring other pool participants to the Oasis Pools.

22.    Instead, Defendants DaCorta and Anile misappropriated the majority of pool funds.  Defendants deposited only $21 million into forex trading accounts in the names of the Oasis Pools, all of which was lost trading forex. Defendants misappropriated over $28 million of pool funds to make Ponzi-like payments to other pool participants.  Defendants misappropriated over $18 million of pool funds for unauthorized personal or business expenses, such as real estate purchases in Florida, exotic vacations, sports tickets, loans to family members, and college and study abroad tuition.

23.    To conceal the trading losses and misappropriation, Defendants DaCorta and Anile, on behalf of OIG and OM, created and issued false account statements to pool participants that inflated and misrepresented the value of the pool participants' investments in the Oasis Pools and the Oasis Pools' trading returns.  The pool participants believed that these account statement balances reflected money actually held in accounts for the Oasis Pools and that they reflected the pool participants' principal investment amounts, interest on that principal, and in many cases, "referral" fees for introducing other pool participants to the "opportunity."  When the CFTC filed its initial complaint, however, the assets of the Oasis Pools were such that they were ultimately short

9

$50 million to pay back even pool participants' principal investments, let alone interest on their investments and referral fees.

### 3. Defendant Montie Made Misrepresentations and Omissions in His Solicitations of Pool Participants for Investment in the Oasis Pools.

24.    Defendant Montie was the Executive Director of Sales for OIG, and, in this capacity, he organized and participated in in-person meetings, conference calls, and emails in which he, along with other Defendants, solicited members of the general public to become pool participants in the Oasis Pools.  In this capacity, Defendant Montie was an unregistered associated person ("AP") of OIG, OM, and SHC.

25.    During his solicitations of prospective pool participants, Defendant Montie repeatedly made numerous material misrepresentations and omissions, including:

a.    Misrepresenting the profitability of the Oasis Pools, such as representing that current pool participants were earning between 12% and 25% from forex trading or that the Oasis Pools earned a 22% return in 2017 and a 21% return in 2018 from forex trading;

b.    Misrepresenting that pool funds would be used solely to trade forex and that returns paid to pool participants were generated from forex trading profits;

c.    Misrepresenting that DaCorta was an experienced and profitable trader;

d.    Misrepresenting that DaCorta was trustworthy and financially successful; and

   e. Misrepresenting that the total amount of assets in the Oasis Pools exceeded $120 million.

26. In reality, only a fraction of the more than $80 million received by the Oasis Pools was invested in forex trading, and the Oasis Pools did not have trading profits.  In 2017 the Oasis Pools returned *negative* 45% and in 2018 the Oasis Pools returned *negative* 96%.  Most payments made to pool participants, instead of being profits generated from forex trading, were simply other pool participants' investments, in the nature of a Ponzi Scheme.

27. Further, DaCorta was not a profitable trader and had been permanently banned from trading forex by the NFA before the Relevant Period.

28. In none of these solicitations did Defendant Montie make any attempt to determine whether the potential pool participants were eligible contract participants ("ECPs")—i.e., individuals with $10,000,000 invested on a discretionary basis—and in fact most, if not all, of the pool participants were *not* ECPs.

29. Defendant Montie failed to reasonably perform his duties as an officer and Director of OIG.

30. It was reckless for Defendant Montie to represent to pool participants that the Oasis Pools were generating any trading profits at all, without reviewing the trading account statements for the Oasis Pools, which would have reflected the pools' losses.

31.     It was reckless for Defendant Montie to represent that pool funds would be invested only in forex when he knew that OIG and OM were making non-forex investments, and he did not verify that those non-forex investments were made with trading profits.

32.     It was reckless for Defendant Montie to represent DaCorta as trustworthy and financially successful when neither OIG nor OM kept regular books and records or prepared financial statements; thus, Montie could not independently verify his claims.

33.     Defendant Montie recklessly made material misrepresentations to the pool participants in order to solicit their investments in the Oasis Pools.

    **4.**    **Defendant OIG Failed To Operate the Oasis Pools As Separate Legal Entities or To Receive Funds in the Oasis Pools' Names.**

34.     Defendant OIG,  acting as a commodity pool operator ("CPO") of the Oasis Pools, did not operate the Oasis Pools as separate legal entities.  OIG failed to open bank accounts specifically designated for the Oasis Pools.  OIG also failed to receive pool participants' funds in the names of the Oasis Pools and commingled the property of the Oasis Pools with the property of Defendants or others.

35.     Defendant Montie was a controlling person of OIG.  He co-founded and was an OIG principal shareholder and director, as well as OIG's executive director of sales.  Defendant Montie did not act in good faith with respect to

OIG's fraudulent acts of failing to operate the Oasis Pools as separate legal entities and failing to receive funds in the names of the Oasis Pools.

### 5. Defendants OIG, OM, and SHC Failed To Register with the CFTC.

36.     Defendants OIG, OM, and SHC operated as CPOs in that they engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and they solicited, accepted, or received funds, securities, property, or capital contributions for the purpose of trading in commodity interests, including retail forex transactions.

37.     Defendants OIG, OM, and SHC used emails, wire transfers, phone calls including conference calls, and other means or instrumentalities of interstate commerce to solicit, accept, and receive pool participants' funds for the purpose of trading forex.

38.     During the Relevant Period, Defendants OIG, OM, and SHC were never registered as CPOs and were not exempt or excluded from registration as CPOs.

39.     Defendant Montie was associated with OIG, OM, and SHC as a partner, officer, employee, consultant, or agent in a capacity that involved the solicitation of funds, securities, or property for participation in a commodity pool that engaged in retail forex transactions.

40.     During the Relevant Period, Defendant Montie was never registered as an AP of OIG, OM, and SHC.

### 6.   Defendant OIG Failed To Provide Adequate Pool Disclosures and Other Relevant Documents.

41.   At or near the time of participation in the Oasis Pools, Defendant OIG, while acting as a CPO of the Oasis Pools, provided potential pool participants with a document titled "Agreement and Risk Disclosures," along with a "Promissory Note and Loan Agreement."

42.   The Agreement and Risk Disclosure purported to alert investors to the risks associated with investing in forex, but at the same time, the Promissory Note and Loan Agreement guaranteed pool participants a minimum 12% annual return.

43.   The Agreement and Risk Disclosure did not include the required cautionary statement to investors or a full and complete risk disclosure, including the risks involved in retail forex trading.

44.   In addition, Defendant OIG also failed to provide pool participants with additional required information, including but not limited to the fees and expenses incurred by the Oasis Pools, past performance disclosures, and a statement that the CPO is required to provide all pool participants with monthly or quarterly account statements, as well as an annual report containing financial statements certified by an independent public accountant.

### 7.   Defendant Montie Was a Controlling Person of OIG.

45.   Defendant Montie was a controlling person of OIG.  He co-founded and was an OIG principal shareholder and director, as well as OIG's executive

director of sales.  Defendant Montie did not act in good faith with respect to

OIG's fraudulent acts of failing to provide adequate pool disclosures and other

relevant documents.

**B.  Conclusions of Law**

**1.  Jurisdiction and Venue**

46.  This Court possesses jurisdiction over this action pursuant to 28

U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345

(providing that U.S. district courts have original jurisdiction over civil actions

commenced by the United States or by any agency expressly authorized to sue by

Act of Congress).  Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), provides that the

CFTC may bring actions for injunctive relief or to enforce compliance with the

Act or any rule, regulation, or order thereunder in the proper district court of the

United States whenever it shall appear to the CFTC that any person has engaged,

is engaging, or is about to engage in any act or practice constituting a violation of

any provision of the Act or any rule, regulation, or order thereunder.

47.  Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e)

because a number of Defendants reside in this jurisdiction and the acts and

practices in violation of the Act occurred within this District.

**2.   Defendants Montie and OIG Committed Fraud in Violation of Section 4b(a)(2)(A)-(C) of the Act, <u>7 U.S.C. § 6b(a)(2)(A)-(C)</u>, and Regulation 5.2(b), <u>17 C.F.R. § 5.2(b)</u> (2022).**

48.   <u>7 U.S.C. § 6b(a)(2)(A)-(C)</u> makes it unlawful:

    (2)   [F]or any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or swap, that is made, or to be made, for or on behalf of, or with any other person, other than on or subject to the rules of a designated contract market

        (A)   to cheat or defraud or attempt to cheat or defraud the other person;

        (B)   willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; [or]

        (C)   willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of paragraph (2), with the other person[.]

49.   Under Section 2(c)(2)(C)(i) and (iv) of the Act, <u>7 U.S.C. § 2(c)(2)(C)(i)</u>, <u>(iv)</u>, transactions in foreign currency (such as the forex transactions described herein), that are entered into with persons who are not eligible contract participants, are subject to Section 4b of the Act "as if" they are a contract of sale of a commodity for future delivery.

50.     Section 1a(18)(A)(ix) of the Act, 7 U.S.C. § 1a(18)(A)(xi), defines an

ECP (eligible contract participant), in relevant part, as an individual who has

amounts invested on a discretionary basis, the aggregate of which exceeds $10

million, or $5 million if the individual enters into the transaction to manage the

risk associated with an asset owned or liability occurred, or reasonably likely to

be owned or incurred, by the individual.

51.     17 C.F.R. § 5.2(b) provides, in relevant part, that:

> It shall be unlawful for any person, by use of the mails or by
> any means or instrumentality of interstate commerce, directly
> or indirectly, in or in connection with any retail forex
> transaction:
>
> > (1)     To cheat or defraud or attempt to cheat or
> > defraud any person;
> >
> > (2)     Willfully to make or cause to be made to any
> > person any false report or statement or cause to
> > be entered for any person any false record; or
> >
> > (3)     Willfully to deceive or attempt to deceive any
> > person by any means whatsoever.

52.     Defendants Montie and OIG engaged in a fraud by, among other

things:  (1) misrepresenting that Defendants were earning significant profits on

behalf of pool participants by trading forex; (2) misrepresenting that the returns

paid to pool participants were generated from forex trading profits; and

(3)  misrepresenting that DaCorta was an experienced and profitable trader.

53.     Defendant OIG engaged in a fraud by, among other things:  (1)

issuing false account statements to pool participants; and (2) paying returns to

pool participants by using the principal of other pool participants in the nature of a Ponzi scheme.

54.    By reason of the foregoing, Defendant OIG and Defendant Montie, violated 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3).

55.    Defendant Montie controlled OIG, directly or indirectly, and did not act in good faith with respect to OIG's conduct as described above, and therefore under Section 13(b) of the Act, 7 U.S.C. § 13c(b), Defendant Montie is liable for OIG's violations of 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3).

56.    Each act of misrepresentation or omission of material fact is a separate and distinct violation of 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3).

### 3.    Defendant Montie Committed Fraud as an AP of CPOs in Violation of Section 4*o*(1)(A)-(B) of the Act, 7 U.S.C. § 6*o*(1)(A)-(B).

57.    Section 1a(11) of the Act, 7 U.S.C. § 1a(11)(A)(i), defines a CPO, in relevant part, as any person—

> [E]ngaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests, including any—
>
> (I)    commodity for future delivery, security futures product, or swap; [or]

> (II)   agreement, contract, or transaction described in
> [S]ection 2(c)(2)(C)(i) [of the Act] or [S]ection
> 2(c)(2)(D)(i) [of the Act].

58.     Under Regulation 5.1(d)(1), 17 C.F.R. § 5.1(d)(1) (2022), and subject to certain exceptions not relevant here, any person who operates or solicits funds, securities, or property for a pooled investment vehicle and engages in retail forex transactions is a retail forex CPO.

59.     Under Section 2(c)(2)(C)(ii)(I) of the Act, 7 U.S.C. § 2(c)(2)(C)(ii)(I), "[a]greements, contracts, or transactions" in retail forex and accounts or pooled investment vehicles "shall be subject to . . . section[ ] 6*o* [of the Act]," except in circumstances not relevant here.

60.     During the Relevant Period, Defendants OIG, OM, and SHC (acting as a common enterprise) engaged in a business, for compensation or profit, that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and in connection therewith, solicited, accepted, or received from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests; therefore, Defendants OIG, OM, and SHC acted as CPOs, as defined by 7 U.S.C. § 1a(11).

61.     During the Relevant Period, Defendants OIG, OM, and SHC (acting as a common enterprise) were not registered with the CFTC as CPOs.

62.     Regulation 1.3, 17 C.F.R. § 1.3 (2022), defines an AP of a CPO as any natural person associated with a CPO

> [A]s a partner, officer, employee, consultant, or agent (or any natural person occupying a similar status or performing similar functions), in any capacity which involves (i) the solicitation of funds, securities, or property for a participation in a commodity pool or (ii) the supervision of any person or persons so engaged[.]

63.     Under 17 C.F.R. § 5.1(d)(2), any person associated with a CPO "as a partner, officer, employee, consultant or agent (or any natural person occupying a similar status or performing similar functions), in any capacity which involves: (i) [t]he solicitation of funds, securities, or property for a participation in a pooled vehicle; or (ii) [t]he supervision of any person or persons so engaged" is an AP of a retail forex CPO.

64.     During the Relevant Period, Defendant Montie was a partner, officer, employee, or agent of OIG, OM, and/or SHC in a capacity that involved the solicitation of funds, securities, or property for participation in a commodity pool or the supervision of any person or persons so engaged.  Therefore, Montie was an AP of CPOs as defined by 17 C.F.R. § 1.3.

65.     During the Relevant Period, Defendant Montie was not registered with the CFTC as an AP of a CPO.

66.     7 U.S.C. § 6o(1)(A)-(B), prohibits CPOs and APs of CPOs, whether registered with the CFTC or not, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, from employing

devices, schemes, or artifices to defraud any client or participant or prospective client or participant, or engaging in transactions, practices, or courses of business which operate as a fraud or deceit upon any client or participant or prospective client or participant.

67.    By reason of the foregoing, Defendants OIG, OM, and SHC (acting as a common enterprise) and Defendant Montie violated 7 U.S.C. § 6*o*(1)(A)-(B).

68.    At all times relevant to this Consent Order, Defendant Montie controlled OIG, directly or indirectly, and did not act in good faith with respect to OIG's conduct; therefore, pursuant to 7 U.S.C.  § 13c(b), Defendant Montie is also liable for OIG's violations of 7 U.S.C. § 6*o*(1)(A)-(B).

69.    Each act of misrepresentation, omission of material fact, or false report or statement is a separate and distinct violation of 7 U.S.C. § 6*o*(1)(A)-(B).

> **4.    OIG, OM, and SHC Failed To Register as CPOs in Violation of Sections 2(c)(2)(C)(iii)(I)(cc) and 4m(1) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6m(1), and Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2022), and Defendant Montie Failed To Register as an Associated Person of CPOs in Violation of Sections 2(c)(2)(C)(iii)(I)(cc), and 4k(2) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6k(2), and Regulation 5.3(a)(2), 17 C.F.R. § 5.3(a)(2).**

70.    Subject to certain exceptions not relevant here, 7 U.S.C. § 6m(1) states that it shall be "unlawful for any . . . [CPO], unless registered under this chapter, to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as such . . . [CPO]."

71.     Subject to certain exceptions not relevant here, 7 U.S.C.
§ 2(c)(2)(C)(iii)(I)(cc), states that a

> [P]erson, unless registered in such capacity as the Commission
> by rule, regulation, or order shall determine and a member of
> a futures association registered under section 21 of this title,
> shall not . . .
>
>          . . . . .
>
>          (cc) operate or solicit funds, securities, or
> property for any pooled investment vehicle that is not
> an eligible contract participant in connection with [retail
> forex contracts, agreements, or transactions].

72.     For the purposes of retail forex transactions, a CPO is defined in
Regulation 5.1(d)(1), 17 C.F.R. § 5.1(d)(1) (2022), as any person who operates or
solicits funds, securities, or property for a pooled investment vehicle that is not
an ECP, as defined in Section 1a(18) of the Act, 17 U.S.C. § 1a(18), and who
engages in retail forex transactions.

73.     Except in circumstances not relevant here, Regulation 5.3(a)(2)(i),
17 C.F.R. § 5.3(a)(2)(i) (2022), requires those that meet the definition of a retail
forex CPO under Regulation 5.1(d), 17 C.F.R. § 5.1(d) (2022), to register as a CPO
with the CFTC.

74.     Subject to certain exceptions not relevant here, 7 U.S.C. § 6k(2)
states that it shall be

> [U]nlawful for any person to be associated with a [CPO] as a
> partner, officer, employee, consultant, or agent . . . in any
> capacity that involves

> (i)     the solicitation of funds, securities, or property for a participation in a commodity pool or
>
> (ii)    the supervision of any person or persons so engaged, unless such person is registered with the Commission under this chapter as an [AP] of such [CPO] . . . .

75.     For the purpose of retail forex transactions, an AP of a CPO is defined in 17 C.F.R. § 5.1(d)(2) as any natural person associated with a retail forex CPO as a partner, officer, employee, consultant, or agent (or any natural person occupying a similar status or performing similar functions) in any capacity that involves soliciting funds, securities, or property for participation in a pooled investment vehicle or supervising persons so engaged.

76.     Except in certain circumstances not relevant here, Regulation 5.3(a)(2)(ii), 17 C.F.R. § 5.3(a)(2)(ii) (2022), requires those that meet the definition of an AP of a retail forex CPO under 17 C.F.R. § 5.1(d) to register as an AP of a CPO with the CFTC.

77.     By reason of the foregoing, Defendants OIG, OM, and SHC (acting as a common enterprise) engaged in a business, for compensation or profit, that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and in connection therewith, solicited, accepted, or received from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests, including retail forex transactions;

therefore, Defendants OIG, OM, and SHC acted as CPOs as defined by 7 U.S.C. § 1a(11).

78.     Defendants OIG, OM, and SHC (acting as a common enterprise), while using the mails or means of interstate commerce in connection with their business as CPOs, were not registered with the CFTC as CPOs.

79.     By reason of the foregoing, Defendants OIG, OM, and SHC (acting as a common enterprise) acted as unregistered CPOs in violation of 7 U.S.C. § 6m(1).

80.     By reason of the foregoing, Defendants OIG, OM, and SHC (acting as a common enterprise) solicited funds, securities, or property for a pooled investment vehicle from investors who were not ECPs, as defined by 7 U.S.C. § 1a(18), for the purpose of trading in retail forex transactions (as defined by 17 C.F.R. § 5.1(m)); thus, OIG, OM, and SHC (acting as a common enterprise) acted as CPOs engaged in retail forex transactions as defined by 17 C.F.R. § 5.1(d)(1).

81.     Defendants OIG, OM, and SHC (acting as a common enterprise) were not registered with the CFTC as CPOs engaged in retail forex transactions, and therefore violated 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc) and 17 C.F.R. § 5.3(a)(2)(i).

82.     During the Relevant Period, Defendant Montie was associated (as defined in 17 C.F.R. § 5.1(d)) as a partner, officer, employee, consultant, or agent (or any natural person occupying a similar status or performing similar functions) with retail forex CPOs OIG, OM, and SHC (acting as a common

enterprise), in a capacity that involved the solicitation of funds, securities, or property for a participation in a commodity pool or the supervision of persons so engaged; therefore, Defendant Montie acted as an AP of CPOs OIG, OM, and SHC as defined by 17 C.F.R. § 1.3.

83.    During the Relevant Period, Defendant Montie was not registered with the CFTC as an AP of a CPO; thus, Defendant Montie acted as an unregistered AP of CPOs in violation of 7 U.S.C. § 6k(2).

84.    By reason of the foregoing, Defendant Montie associated with retail forex CPOs (as defined in 17 C.F.R. § 5.1(d)) as a partner, officer, employee, consultant, or agent (or any natural person occupying a similar status or performing similar functions), in a capacity that involved the solicitation of funds, securities, or property for a participation in a retail forex pool or the supervision of persons so engaged; therefore Defendant Montie acted as an AP of CPOs OIG, OM, and SHC as defined by 17 C.F.R. § 5.1(d)(2).

85.    Defendant Montie was not registered as an AP of CPOs engaged in retail forex transactions, and therefore violated 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc) and 17 C.F.R. § 5.3(a)(2)(ii).

86.    Defendant Montie controlled OIG, directly or indirectly, and did not act in good faith with respect to OIG's conduct.  Therefore, under 7 U.S.C. § 13c(b), Defendant Montie is liable for OIG's violations of 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc) and 6m(1) and 17 C.F.R. § 5.3(a)(2)(i).

87.     Each instance that OIG, OM, and SHC acted as CPOs but failed to register with the CFTC as such is alleged as a separate and distinct violation.

88.     Each instance that Defendant Montie acted as an AP of a CPO but failed to register with the CFTC as such is alleged as a separate and distinct violation.

### 5.     OIG Failed To Accept Funds in the Name of the Oasis Pools and Commingled Funds in Violation of Regulation 4.20, 17 C.F.R. § 4.20 (2022).

89.     Regulation 5.4, 17 C.F.R. § 5.4 (2022), states that Part 4 of the Regulations, 17 C.F.R. pt. 4 (2022), applies to any person required to register as a CPO pursuant to Part 5 of the Regulations, 17 C.F.R. pt. 5 (2022), relating to forex transactions.

90.     17 C.F.R. § 4.20(b) (2022) prohibits CPOs, whether registered or not, from receiving pool participants' funds in any name other than that of the pool.

91.     17 C.F.R. § 4.20(c) prohibits CPOs, whether registered or not, from commingling the property of any pool it operates with the property of any other person.

92.     By reason of the foregoing, Defendant OIG, while acting as a CPO for the Oasis Pools, failed to receive the pool participants' funds in the names of the Oasis Pools, and commingled the property of the Oasis Pools with property of Defendants or others.

93.     By reason of the foregoing, Defendant OIG violated 17 C.F.R. § 4.20(b)-(c).

94.   Defendant Montie controlled OIG, directly or indirectly, and did not act in good faith with respect to OIG's conduct.  Therefore, under 7 U.S.C. § 13c(b), Defendant Montie is liable for OIG's violations of 17 C.F.R. § 4.20(b)-(c).

95.   Each act of improperly receiving pool participants' funds and commingling the property of the Oasis Pools with non-pool property, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 17 C.F.R. § 4.20(b)-(c).

**6.   Defendant OIG Failed To Provide Pool Disclosures in Violation of Regulation 4.21, 17 C.F.R. § 4.21 (2022).**

96.   Regulation 5.4, 17 C.F.R. § 5.4 (2022), states 17 C.F.R. pt. 4 applies to any person required to register as a CPO under 17 C.F.R. pt. 5 relating to forex transactions.

97.   17 C.F.R. § 4.21 provides that

> [E]ach commodity pool operator registered or required to be registered under the Act must deliver or cause to be delivered to a prospective participant in a pool that it operates or intends to operate a Disclosure Document for the pool prepared in accordance with §§ 4.24 and 4.25 by no later than the time it delivers to the prospective participant a subscription agreement for the pool . . . .

98.   By reason of the foregoing, Defendant OIG failed to provide to prospective pool participants with pool disclosure documents in the form specified in Regulations 4.24 and 4.25, 17 C.F.R. § 4.24, 4.25 (2022).

99.   By reason of the foregoing, Defendants OIG violated 17 C.F.R. § 4.21.

100.    Defendant Montie controlled OIG, directly or indirectly, and did not act in good faith with respect to OIG's conduct.  Therefore, under 7 U.S.C. § 13c(b), Defendant Montie is liable for OIG's violations of 17 C.F.R. § 4.21.

101.    Each failure to furnish the required disclosure of documents to prospective pool participants and pool participants is a separate and distinct violation of 17 C.F.R. § 4.21.

102.    Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defendant Montie will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

## IV.    PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

103.    Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Defendant Montie is permanently restrained, enjoined and prohibited from directly or indirectly:

a.    Cheating or defrauding, or attempting to cheat or defraud, other persons in or in connection with any order to make, or the making of, any contract of sale of any retail forex transaction that is made, or to be made, for or on behalf of, or with, any other person, in violation of Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C), and Regulation 5.2(b)(1)-(3), 17 C.F.R. § 5.2(b)(1)-(3) (2022);

b.  Employing any device, scheme, or artifice to defraud any client or participant or prospective client or participant, or engaging in any transaction, practice or course of business which operates as a fraud or deceit upon any client or participant or prospective participant in violation of Section 4*o*(1)(A)-(B) of the Act, 7 U.S.C. § 6*o*(1)(A)-(B);

c.  Being associated with a CPO as a partner, officer, employee, consultant, or agent, or a person occupying a similar status or performing similar functions, in any capacity that involves the solicitation of funds, securities, or property for participation in a retail forex pool without being registered with the CFTC as an AP of the CPO, in violation of Sections 2(c)(2)(C)(iii)(I)(cc) and 4k(2) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6k(2) and Regulation 5.3(a)(2), 17 C.F.R. § 5.3(a)(2) (2022);

d.  Failing to operate a commodity pool as an entity cognizable as a legal entity separate from that of the pool operator, in violation of Regulation 4.20(a)(1), 17 C.F.R. § 4.20(a)(1) (2022);

e.  Failing to require that all funds, securities, or other property received by a CPO from a prospective or existing pool participant be received in the commodity pool's name, in violation of Regulation 4.20(b), 17 C.F.R. § 4.20(b) (2022);

f.  Commingling the property of a commodity pool in violation of Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2022); and

g.      Failing to provide prospective pool participants with pool disclosure documents in the form specified in Regulations 4.24 and 4.25, 17 C.F.R. §§ 4.24, 4.25 (2022), in violation of Regulation 4.21, 17 C.F.R. § 4.21 (2022).

104.      Defendant Montie is also permanently restrained, enjoined and prohibited from directly or indirectly:

a.      Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40));

b.      Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2022)), for his own personal account or for any account in which he has a direct or indirect interest;

c.      Having any commodity interests traded on his behalf;

d.      Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

e.      Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

f.      Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC,

except as provided for in Regulation 4.14(a)(9), <u>17 C.F.R. § 4.14(a)(9)</u> (2022); and

g.    Acting as a principal (as that term is defined in Regulation 3.1(a), <u>17 C.F.R. § 3.1(a)</u> (2022)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, <u>7 U.S.C. § 1a(38))</u>, registered, exempted from registration or required to be registered with the CFTC except as provided for in <u>17 C.F.R. § 4.14(a)(9)</u>.

## V.    DISGORGEMENT

105.    Defendant Montie shall pay disgorgement in the amount of four hundred and thirty-two thousand, six hundred and eight dollars and fifteen cents ($432,608.15) ("Disgorgement Obligation"), representing the gains received in connection with such violations, within thirty days of the date of the entry of this Consent Order.  If the Disgorgement Obligation is not paid in full within thirty days of the date of entry of this Consent Order, then post-judgment interest shall accrue on the unpaid portion of the Disgorgement Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to <u>28 U.S.C. § 1961</u>.

106.    To effect payment of the Disgorgement Obligation and the distribution of any disgorgement payments to participants in the Oasis Pools, the Court directs the Receiver to affirmatively obtain and collect disgorgement

payments from Defendant Montie and to make distributions to Pool Participants with approved claims, as set forth below.  The Receiver is authorized to use any and all procedures and to seek any and all remedies available under the Consolidated Receivership Order (Dkt. 177), this Consent Order, state law or procedure, and federal law or procedure, expressly including motions for turnover, post judgment discovery, and proceedings supplementary.

107.    Because the Receiver is acting as an officer of this Court in performing these services, the Receiver shall not be liable for any action or inaction arising from his appointment, other than actions involving fraud.

108.    The Receiver shall oversee the Disgorgement Obligation and shall make any distributions of the same in accordance with the March 7, 2022 Order (Dkt. 482) granting the Receiver's Motion to:  (1) Approve Determination and Priority of Claims; (2) Pool Receivership Assets and Liabilities; (3) Approve Plan of Distribution; and (4) Establish Objection Procedure (Dkt. 439).

109.    Upon the termination of the Receivership Estate, the Receiver shall provide the CFTC with a report detailing the disbursement of the Disgorgement Obligation to participants in the Oasis Pools.  The delivery of the Court's order terminating the Receivership that includes this information shall satisfy this requirement.  The Receiver shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

110.    The provision of the preliminary injunction entered against Defendant Montie on July 11, 2019, continuing a freeze on assets or funds in his name or under his management and control, shall remain in full force and effect until such time as the Court orders otherwise pursuant to a request by the Receiver or the CFTC.

111.    To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defendant Montie's Disgorgement Obligation, such funds shall be transferred to the Receiver for disbursement in accordance with the procedures set forth above.

## VI.    CIVIL MONETARY PENALTY

112.    Defendant Montie shall pay a civil monetary penalty in the amount of two hundred and sixteen thousand, three hundred and four dollars and eight cents ($216,304.08) ("CMP Obligation"), within thirty days of the date of the entry of this Consent Order.  If the CMP Obligation is not paid in full within thirty days of the date of entry of this Consent Order, then post-judgment interest shall accrue on the unpaid portion of the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

113.    Defendant Montie shall pay his CMP Obligation and any post-judgment interest, by electronic fund transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made

33

other than by electronic funds transfer, then the payment shall be made payable

to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> 6500 S. MacArthur Blvd.
> HQ Room 266
> Oklahoma City, OK 73169
> 9-amz-ar-cftc@faa.gov

If payment by electronic funds transfer is chosen, Defendant Montie shall contact

Tonia King or her successor at the address above to receive payment instructions

and shall fully comply with those instructions.  Defendant Montie shall

accompany payment of the CMP Obligation with a cover letter that identifies

Defendant Montie and the name and docket number of this proceeding.

Defendant Montie shall simultaneously transmit copies of the cover letter and the

form of payment to the Chief Financial Officer, Commodity Futures Trading

Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C.

20581.

## VII.   PROVISIONS RELATED TO MONETARY SANCTIONS

114.   Partial Satisfaction:  Acceptance by the CFTC or Receiver of any

partial payment of Defendant Montie's Disgorgement Obligation or CMP

Obligation shall not be deemed a waiver of his obligation to make further

payments pursuant to this Consent Order, or a waiver of the CFTC's or Receiver's

right to seek to compel payment of any remaining balance.

## VIII. COOPERATION

115.    Defendant Montie shall cooperate fully and expeditiously with the CFTC and the Receiver, including the CFTC's Division of Enforcement ("Division Staff") and any other governmental agency or any self-regulatory organization, in this action, and in any current or future CFTC investigation or action related thereto.  Defendant Montie shall also cooperate in any investigation, civil litigation, or administrative matter related to, or arising from, this action and any action brought by the Receiver.  As part of such cooperation, Montie agrees to:

a.    preserve and produce to the CFTC in a responsive and prompt manner, as requested by Division Staff, all relevant non-privileged documents, information, and other materials wherever located, in the appropriate possession, custody, or control of Montie;

b.    utilize his knowledge and skill to explain transactions, interpret information and technology, or identify new and productive lines of inquiry;

c.    prepare and appear for interviews and testimony at such times and places as requested by Division Staff;

d.    respond completely and truthfully to all inquiries and interviews, when requested to do so by Division Staff;

e.    identify and authenticate relevant documents and other evidentiary materials, execute affidavits and/or declarations, and testify completely and truthfully at depositions, trial, and other judicial proceedings, when requested to do so by Division Staff;

f.    accept service by mail, electronic mail, or facsimile transmission of notices or subpoenas for documents and/or testimony;

g.    appoint his attorney, if any, as agent to receive service of such notices and such subpoenas; and

h.   waive the territorial limits on service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules in connection with requests or subpoenas of Division Staff.

## IX.   MISCELLANEOUS PROVISIONS

116.   Until such time as Defendant Montie satisfies in full his Disgorgement Obligation and CMP Obligation under this Consent Order, upon the commencement by or against Defendant Montie of insolvency, receivership or bankruptcy proceedings or any other proceedings for the settlement of Defendant Montie's debts, all notices to creditors required to be furnished to the CFTC under Title 11 of the United States Code or other applicable law with respect to such insolvency, receivership bankruptcy or other proceedings, shall be sent to the address below:

> Secretary of the Commission
> Legal Division
> Commodity Futures Trading Commission
> Three Lafayette Centre
> 1155 21st Street N.W.
> Washington, DC 20581

117.   Notice:  All notices required to be given by any provision in this Consent Order, except as set forth in paragraph 116, above, shall be sent certified mail, return receipt requested, as follows:

Notice to CFTC:

> Charles Marvine, Deputy Director
> Commodity Futures Trading Commission
> 2600 Grand Blvd., Suite 210
> Kansas City, MO 64108

Notice to Defendant Raymond Montie:

> Raymond Montie
> P.O. Box 190
> Hamlin, PA 18427

Notice to Receiver:

> Burton W. Wiand, Receiver
> Burton W. Wiand PA
> 114 Turner Street
> Clearwater, FL 33756

All such notices to the CFTC shall reference the name and docket number of this action.

118.   Change of Address/Phone:  Until such time as Defendant Montie satisfies in full his Disgorgement Obligation and CMP Obligation as set forth in this Consent Order, Defendant Montie shall provide written notice to the CFTC and the Receiver by certified mail of any change to his telephone number and mailing address within ten calendar days of the change.

119.   Entire Agreement and Amendments:  This Consent Order and other court orders referenced herein incorporate all of the terms and conditions of the settlement among the parties hereto to date.  Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless:  (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

120.   Invalidation:  If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

121.    Waiver:  The failure of any party to this Consent Order at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

122.    Waiver of Service, and Acknowledgement:  Defendant Montie waives service of this Consent Order and agrees that entry of this Consent Order by the Court and filing with the Clerk of the Court will constitute notice to Defendant Montie of its terms and conditions.  Defendant Montie further agrees to provide counsel for the CFTC, within thirty days after this Consent Order is filed with the Clerk of Court, with an affidavit or declaration stating that Defendant Montie has received and read a copy of this Consent Order.

123.    Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including the Receiver's collection efforts and any motion by Defendant Montie to modify or for relief from the terms of this Consent Order.

124.    Injunctive and Equitable Relief Provisions:  The injunctive and equitable relief provisions of this Consent Order shall be binding upon the following persons who receive actual notice of this Consent Order, by personal

service or otherwise:  (1) Defendant Montie; (2) any officer, agent, servant, employee, or attorney of Defendant Montie; and (3) upon any other persons who are in active concert or participation with any persons described in subsections (1) and (2) above.

125.    Counterparts and Facsimile Execution:  This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

126.    Contempt:  Defendant Montie understands that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings he may not challenge the validity of this Consent Order.

127.    Agreements and Undertakings:  Defendant Montie shall comply with all of the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Consent Order for Permanent Injunction and Other Equitable Relief Against Defendant Montie* forthwith and without further notice.

**IT IS SO ORDERED** on this ___12th___ day of _____December_____, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

CONSENTED TO AND APPROVED
BY:

_____
Raymond P. Montie, III
P.O. Box 190
Hamlin, PA 18427
raymontie7@yahoo.com

Dated _____6/13/2023_____

_____
Jeffery C. Le Riche
J. Alison Auxter
Commodity Futures Trading
Commission
2600 Grand Boulevard, Suite 210
Kansas City, Missouri 64108
(816) 960-7700
(816) 960-7750 (facsimile)
jleriche@cftc.gov
aauxter@cftc.gov

Dated
_____12/07/2023_____

Approved as to form:

_____
Burton W. Wiand, Receiver
Burton W. Wiand PA
114 Turner Street
Clearwater, FL 33756
burt@burtonwwiandpa.com

Dated
12-7-2023_____