# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) ) ) |
| Plaintiff; | ) ) ) Case No. 8:19-cv-886-VMC-SPF |
| v. | ) ) ) |
| OASIS INTERNATIONAL GROUP, LIMITED; OASIS MANAGEMENT, LLC; SATELLITE HOLDINGS COMPANY; MICHAEL J. DaCORTA; JOSEPH S. ANILE, II; RAYMOND P. MONTIE, III; FRANCISCO "FRANK" L. DURAN; and JOHN J. HAAS, | ) ) ) ) ) ) ) ) ) ) |
| Defendants; | ) ) ) |
| and | ) ) ) |
| MAINSTREAM FUND SERVICES, INC.; BOWLING GREEN CAPITAL MANAGEMENT LLC; LAGOON INVESTMENTS, INC.; ROAR OF THE LION FITNESS, LLC; 444 GULF OF MEXICO DRIVE, LLC; 4064 FOUNDERS CLUB DRIVE, LLC; 6922 LACANTERA CIRCLE, LLC; 13318 LOST KEY PLACE, LLC; and 4OAKS LLC, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Relief Defendants. | |

**CONSENT ORDER FOR PERMANENT INJUNCTION, CIVIL
MONETARY PENALTY AND OTHER EQUITABLE RELIEF
AGAINST DEFENDANTS OASIS INTERNATIONAL GROUP, LIMITED;
OASIS MANAGEMENT, LLC; AND SATELLITE HOLDINGS COMPANY**

## I.    INTRODUCTION

On April 15, 2019, Plaintiff Commodity Futures Trading Commission

("CFTC") filed its initial complaint[1] (Dkt. 1) against Defendants Oasis

International Group, Limited ("OIG"); Oasis Management, LLC ("OM"); Satellite

Holdings Company ("SHC"); Michael J. DaCorta ("DaCorta"); Joseph S. Anile, II

("Anile"); Raymond P. Montie, III ("Montie"); Francisco "Frank" L. Duran

("Duran"); and John J. Haas ("Haas") (collectively, "Defendants"), seeking

injunctive and other equitable relief, as well as the imposition of civil penalties,

for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–26, and the

Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R.

pts. 1–190 (2022).  The Complaint alleged that from at least mid-April 2014 until

the CFTC filed its initial complaint on April 15, 2019 (the "Relevant Period"),

Defendants operated a fraudulent scheme to solicit participation in commodity

interest pools engaged in agreements, contracts or transactions in foreign

currency on margined or leveraged basis with non-eligible contract participants

described in Section 2(c)(2)(C)(i) of Act, 7 U.S.C § 2(c)(2)(C)(i), that were also

retail forex transactions under Regulation 5.1(m), 17 C.F.R. 5.1(m) (2022)

---

[1] The CFTC subsequently filed its First Amended Complaint (Dkt. 110) against all Defendants on
June 12, 2019, which shall hereinafter be referred to simply as the Complaint.

(together "retail forex"), among other violations.  The Court entered an *ex parte* statutory restraining order against Defendants on April 15, 2019 (Dkt. 7), and then Consent Orders for Preliminary Injunction and Other Equitable Relief against Defendants OIG, OM, DaCorta, and Anile on April 30, 2019 (Dkt. 43), and against Defendants Duran, Haas and SHC, and Montie on July 11, 2019 (Dkts. 174, 175, 176, respectively).

The CFTC requested that a receiver be appointed to this matter in order to, among other things, marshal assets held by Defendants as a result of their involvement in the fraudulent scheme (the "Receivership Estate").  On April 15, 2019, Burton Wiand was appointed as the receiver ("Receiver") in this matter and continues to serve in this capacity (Dkt. 7).

Based on similar allegations in the Complaint with respect to the fraudulent scheme, on August 12, 2019, Defendant Anile pleaded guilty to an information charging him with conspiracy to commit wire fraud and mail fraud, an illegal monetary transaction, and filing a false income tax return, for his involvement in the fraudulent scheme.  Plea Agreement, *United States v. Anile*, No. 8:19-CR-00334-MSS-CPT (M.D. Fla. Aug. 12, 2019) (Dkt. 3).  On May 4, 2022, a jury found Defendant DaCorta guilty of conspiracy to commit wire fraud and mail fraud, illegal monetary transactions, and filing a false income tax return—all related to the same fraudulent scheme alleged in the Complaint and admitted to by Defendant Anile.  Jury Verdict, *United States v. DaCorta*, No. 8:19-CR-00605-WFJ-CPT (M.D. Fla. May 4, 2022) (Dkt. 192).  Defendant

DaCorta and Defendant Anile were each ordered to pay $53,270,336.08 in criminal restitution, representing the loss to victims of the fraudulent scheme, and both were also ordered to serve prison sentences. *See* respective Judgments in a Criminal Case, *DaCorta*, Dkt. 234; *Anile*, Dkt. 58.

## II.  CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Defendants OIG, OM, and SHC without a trial on the merits or any further judicial proceedings, Defendants OIG, OM, and SHC:

1.  Consent to the entry of this Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendants OIG, OM, and SHC ("Consent Order");

2.  Affirm that they have read and agreed to this Consent Order voluntarily and that no promise, other than as specifically contained herein, or threat, has been made by the CFTC or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order;

3.  Acknowledge service of the summons and Complaint;

4.  Admit the jurisdiction of this Court over them and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

5.  Admit the jurisdiction of the CFTC over the conduct and transactions at issue in this action pursuant to the Act and Regulations;

6.      Admit that venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e);

7.      Waive:

(a)     Any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and/or the rules promulgated by the CFTC in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2022), relating to, or arising from, this action;

(b)     Any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201–253, 110 Stat. 847, 857–74 (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this action;

(c)     Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d)     Any and all rights of appeal from this action;

8.      Agree that the CFTC is the prevailing party in this action for purposes of the waiver of any and all rights under the Equal Access to Justice Act and the Small Business Regulatory Enforcement Fairness Act of 1996, specified in subsections (a) and(b) of paragraph 7 above.

9.      Consent to the continued jurisdiction of this Court over them for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if Defendants OIG, OM, or SHC now or in the future reside outside the jurisdiction of this Court;

10.     Agree that they will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waive any objection based thereon;

11.     Agree that neither they nor any of their agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect their: (a) testimonial obligations; or (b) right to take legal positions in other proceedings to which the CFTC is not a party.  Defendants OIG, OM, and SHC shall comply with this agreement, and shall undertake all steps necessary to ensure that all of their agents and/or employees under their authority or control understand and comply with this agreement;

12.     Admits to all findings made in this Consent Order and all of the allegations in the Complaint;

13.     Agree that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Defendants OIG, OM, and SHC in any other proceeding.

### III.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for

delay.  The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction, and other relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein.  The findings and conclusions in this Consent Order are not binding on any other party to this action.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A.    Findings of Fact**

**1.    The CFTC and Defendants OIG, OM, and SHC Are the Parties to This Consent Order.**

14.    Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act and the Regulations.

15.    Defendant **Oasis International Group, Limited** is a Cayman Islands limited corporation formed in March 2013 by DaCorta, Anile, and Montie.  Defendants DaCorta, Anile, and Montie were all members of OIG and also served on OIG's Board of Directors.  OIG operated from Longboat Key, Florida.  During the Relevant Period, OIG acted as a commodity pool operator ("CPO") by soliciting, receiving, and accepting funds from pool participants for investment in Oasis Global FX, Limited ("OGFXL") and later Oasis Global FX, S.A. ("OGFXSA") (collectively, the "Oasis Pools").  OIG was not registered with the CFTC in any capacity .

16.    Defendant **Oasis Management, LLC** is a Wyoming limited liability corporation formed in November 2011, for which DaCorta was the sole

principal and general partner.  During the Relevant Period, OM acted as a CPO for the Oasis Pools by soliciting, receiving, and accepting funds from pool participants in two bank accounts in OM's name for the purpose of investing in the Oasis Pools.  OM has never been registered with the CFTC in any capacity.

17.     Defendant **Satellite Holdings Company** is a South Dakota corporation formed in October 2014, for which Defendant Haas was the sole director.  During the Relevant Period, SHC acted as a CPO for the Oasis Pools by soliciting, receiving, and accepting funds from pool participants for investment in the Oasis Pools.  SHC has never been registered with the Commission in any capacity.

### 2.     Defendants' Investment Scheme Defrauded Hundreds of Pool Participants.

18.     During the Relevant Period, Defendants operated a fraudulent scheme to solicit and misappropriate money given to them by customers who are not eligible contract participants ("ECPs")  described in Section 1a(18) of the Act, 7 U.S.C. §  1a(18), for the purpose of trading retail forex through several interrelated domestic and foreign entities (OIG, OM, and SHC), acting as a common enterprise.  These entities acted as commodity pool operators for the Oasis Pools.

19.     Defendants OIG, OM, and SHC, by and through DaCorta, Montie, Duran, and Haas, fraudulently solicited approximately 800 members of the public ("pool participants") to invest over $80 million in the Oasis Pools, which

purportedly would trade in retail forex.  But only a portion of the pool funds were used to trade retail forex—which trading incurred losses—and instead the majority of pool funds were misappropriated and pool participants were issued false account statements to conceal the trading losses and misappropriation.

20.     During the course of the fraudulent scheme, Defendants made material misrepresentations to pool participants, including that:  (1) all pool funds would be used to trade forex; (2) pool participants would receive a minimum 12% guaranteed annual return from this forex trading; (3) the Oasis Pools were profitable and returned 22% in 2017 and 21% in 2018; (4) the Oasis Pools had never had a losing month; (5) money being returned to pool participants was from profitable trading; (6) there was no risk of loss with the Oasis Pools; and (7) pool participants could earn extra returns by referring other pool participants to the Oasis Pools.

21.     Instead, Defendants DaCorta and Anile misappropriated the majority of pool funds.  Defendants deposited only $21 million into a retail forex trading account in the name of either OGFXL, or later OGFXSA, all of which was lost trading retail forex.  Defendants misappropriated over $28 million of pool funds to make Ponzi-like payments to other pool participants.  Defendants misappropriated over $18 million of pool funds for unauthorized personal or business expenses, such as real estate purchases in Florida, exotic vacations, sports tickets, loans to family members, and college and study abroad tuition.

22.     To conceal the trading losses and misappropriation, Defendants DaCorta and Anile, on behalf of OIG and OM, created and issued false account statements to pool participants that inflated and misrepresented the value of the pool participants' investments in the Oasis Pools and the Oasis Pools' trading returns.  The pool participants believed that these account statement balances reflected money actually held in accounts for the Oasis Pools and that they reflected the pool participants' principal investment amounts, interest on that principal, and in many cases, "referral" fees for introducing other pool participants to the "opportunity."  When the CFTC filed its initial complaint, however, the assets of the Oasis Pools were such that they were ultimately short over $50 million to pay back even pool participants' principal investments, let alone interest on their investments and referral fees.

23.     Most, if not all, of the pool participants were not ECPs—individuals with over $10,000,000 invested on a discretionary basis—under Section 1a(18)(A)(xi) of the Act, 7 U.S.C. § 1a(18)(A)(xi).

### 3.     Defendants Made Material Misrepresentations and Omissions in Their Solicitations of Pool Participants for the Oasis Pools, and Misappropriated Pool Funds.

24.     During the Relevant Period, and in furtherance of the fraudulent scheme, Defendants fraudulently solicited and obtained over $80 million from approximately 800 pool participants as investments in the Oasis Pools. Defendants made material misrepresentations and omissions to pool participants and prospective pool participants via the Oasis website, group conference calls

hosted by OIG, OM, or SHC, telephone calls, in-person meetings, and in promissory notes they executed with pool participants.  Defendants' fraudulent solicitations included, but were not limited to, representing that all pool funds would be used to trade forex, pool participants would receive a minimum 12% guaranteed annual return, the Oasis Pools were profitable and had never had a losing month, and there was no risk of loss with the Oasis Pools.

### a. Defendants DaCorta, Montie, Duran, and Haas Made Material Misrepresentations and Omissions to Pool Participants.

25.    During his solicitations of prospective pool participants, Defendant DaCorta, individually and as an agent for OIG, OM, and SHC, repeatedly made numerous material misrepresentations, including that:

    a.    All pool funds would be used to trade forex;

    b.    Pool participants would receive a minimum 12% guaranteed annual return from this forex trading;

    c.    The Oasis Pools were profitable and returned 22% in 2017 and 21% in 2018;

    d.    There was no risk of loss with the Oasis Pools; and

    e.    Pool participants could earn extra returns by referring other pool participants to the Oasis Pools.

26.    Defendant DaCorta, individually and as an agent for OIG, OM, and SHC, also made numerous omissions, including that:

    a.    DaCorta used only a small portion of pool participants' funds to trade forex;

    b.     DaCorta's forex trading resulted in net losses;

    c.     Payments characterized as trading profits by DaCorta to pool participants and returns of principal, if any, were being paid from funds contributed by other pool participants;

    d.     DaCorta agreed to be barred from trading in any capacity that would require registration with the National Futures Association;

    e.     DaCorta and the Oasis entities did not keep appropriate books and records and lacked the financial ability to return principal to all pool participants; and

    f.     DaCorta, OIG, and OM were not registered with the CFTC despite soliciting pool participants and acting as CPOs and an AP of a CPO.

27.     In none of these solicitations did DaCorta make any attempt to determine whether the potential pool participants were eligible contract participants—i.e., individuals with $10,000,000 invested on a discretionary basis—and in fact most, if not all, of the pool participants were *not* ECPs.

28.     During his solicitations of prospective pool participants, Defendant Montie, individually and as an agent for OIG, OM, and SHC, based on false information provided to him by DaCorta, repeatedly made numerous material misrepresentations and omissions, including:

    a.     Misrepresenting the profitability of the Oasis Pools, such as representing that current pool participants were earning between 12% and 25% from forex trading or that the Oasis Pools earned a 22% return in 2017 and a 21% return in 2018 from forex trading;

    b.     Misrepresenting that pool funds would be used solely to trade forex and that returns paid to pool participants were

generated from forex trading profits;

c.    Misrepresenting that DaCorta was an experienced and profitable trader;

d.    Misrepresenting that DaCorta was trustworthy and financially successful; and

e.    Misrepresenting that the total amount of assets in the Oasis Pools exceeded $120 million.

29.    In none of these solicitations did Montie attempt to determine whether the potential pool participants were eligible contract participants—i.e., individuals with $10,000,000 invested on a discretionary basis—and in fact most, if not all, of the pool participants were *not* ECPs.

30.    During his solicitations of pool participants, Defendant Haas, individually and as an agent of OIG, OM, and SHC, made numerous material misrepresentations and omissions, including:

a.    Misrepresenting the profitability of the Oasis Pools, such as representing that current pool participants were earning 12% annually from forex trading and that the Oasis Pools had never had a losing year;

b.    Misrepresenting that pool funds would be used solely to trade forex;

c.    Misrepresenting that there was no risk to the Oasis Pools in forex trading except if the entire banking system or economy collapsed; and

d.    Misrepresenting that pool funds were merely sitting at large domestic and international investment banks "backing" forex trades and that funds could be sent back to everyone at once if needed.

31.     In none of these solicitations did Haas make any attempt to determine whether the potential pool participants were eligible contract participants—i.e., individuals with $10,000,000 invested on a discretionary basis—and in fact most, if not all, of the pool participants were *not* ECPs.

32.     During his solicitations of pool participants, Defendant Duran, individually and as an agent of OIG, OM, and SHC, made numerous material misrepresentations and omissions, including:

    a.    Misrepresenting the profitability of the Oasis Pools, such as representing that current pool participants were earning between 12% and 21% from forex trading, that the Oasis Pools earned a 21% return in 2018, and that the Oasis Pools had never had a losing year;

    b.    Misrepresenting that pool funds would be used solely to trade forex and that returns paid to pool participants were generated from forex trading profits;

    c.    Misrepresenting that pool funds could never depreciate;

    d.    Misrepresenting that he received daily wires from OIG and had been invested in the Oasis Pools for years;

    e.    Misrepresenting that the total amount of assets in the Oasis Pools exceeded $100 million; and

    f.    Misrepresenting that pool participants' investments would not be used to purchase real estate.

33.     In none of these solicitations did Duran make any attempt to determine whether the potential pool participants were ECPs—i.e., individuals with $10,000,000 invested on a discretionary basis—and in fact most, if not all, of the pool participants were *not* ECPs.

### b. Defendants DaCorta, Anile, and Haas Misappropriated Pool Funds for Personal Use.

34.   Instead of using pool participants' funds for retail forex trading in the Oasis Pools, Defendant DaCorta, individually and as the agent of OIG, OM, and SHC, knowingly misappropriated the funds for his personal benefit.

35.   DaCorta used pool funds to pay for personal residences and renovations of those residences, multiple luxury vehicles, vacations, and trips on private jets.

36.   Instead of using pool participants' funds for retail forex trading in the Oasis Pools, Defendant Anile, individually and as the agent of OIG, OM, and SHC, knowingly misappropriated the funds for his personal benefit.

37.   Defendant Anile used pool funds to purchase a personal residence in Sarasota, Florida in which he and his family resided, and transferred over $2 million in pool funds to personal accounts that he used to pay for personal living expenses for himself and his family, to purchase numerous vehicles (including a Ferrari), as well as jewelry, furniture, landscaping, and vacations.

38.   Instead of using pool participants' funds for retail forex trading in the Oasis Pools, Defendant Haas, individually and as an agent for SHC, knowingly misappropriated the funds for his personal benefit.

39.   Defendant Haas wired pool funds to his personal account from the SHC bank account.

### c.   Defendants DaCorta, Montie, Haas, and Duran Acted Intentionally or Recklessly.

40.   In reality, only a fraction of the more than $80 million received by the Oasis Pools was invested in retail forex trading, and the Oasis Pools did not have trading profits.  In 2017 the Oasis Pools returned *negative* 45% and in 2018 the Oasis Pools returned *negative* 96%.  No payments made to pool participants were made from profits generated from retail forex trading.  Rather, all such payments were made from other pool participants' investments, in the nature of a Ponzi Scheme.

41.   DaCorta was not a profitable trader, and was permanently banned from trading retail forex by the NFA before the Relevant Period.

42.   Real estate and other investments were not purchased with revenue generated by OIG, OM, or SHC, but instead with the contributions made by pool participants in the Oasis Pools.

43.   Duran did not receive daily wires from OIG, and misrepresented the length and nature of his investment in the Oasis Pools.

44.   Defendant DaCorta, individually and as the agent of OIG, OM, and SHC:

   a.   intentionally misrepresented that he would use pool participants' money to trade forex when he knew that he was using pool participants' money for personal expenses and to return principal to earlier pool participants;

   b.   intentionally misrepresented that the Oasis Pools were profitable, that pool participants would receive a minimum 12% guaranteed annual return from his forex trading, and that

there was no risk of loss with the Oasis Pools when he knew that his forex trading was instead suffering losses;

c.   deceptively omitted that the Oasis Pools were not generating returns sufficient to repay pool participants, and that in fact the Oasis Pools were suffering losses;

d.   deceptively omitted that he was misappropriating pool participant funds to fund his lavish personal lifestyle;

e.   deceptively omitted that he agreed to be barred from trading in any capacity that would require registration with the National Futures Association, and that in fact DaCorta, OIG, and OM were not registered; and

f.   deceptively omitted that DaCorta and the Oasis entities did not keep appropriate books and records and lacked the financial ability to return principal to all pool participants.

45.    DaCorta, individually and as an agent for OIG, OM, and SHC, intentionally or recklessly made material misrepresentations to the pool participants in order to solicit their investments in the Oasis Pools.

46.    Defendant Montie, individually and as agent for OIG, OM, and SHC, recklessly, based on false information provided by DaCorta:

a.   represented to pool participants that the Oasis Pools were generating any trading profits at all, without reviewing the trading account statements for the Oasis Pools, which would have reflected the pools' losses;

b.   represented that pool funds would be invested only in forex when he knew that OIG and OM were making non-forex investments, and he did not verify that those non-forex investments were made with trading profits; and

c.   represented DaCorta as trustworthy and financially successful when neither OIG nor OM kept regular books and records or prepared financial statements; thus, Montie could not

independently verify his claims.

47.    Montie, individually as an agent for OIG, OM, and SHC, recklessly made material misrepresentations to the pool participants in order to solicit their investments in the Oasis Pools.

48.    Defendant Haas, individually and as an agent for OIG, OM, and SHC:

    a.    intentionally misappropriated and misrepresented that pool funds would be invested only in forex when Haas wired funds or wrote checks to his personal account from the SHC bank account, because the only source of income in the SHC account was funds from pool participants;

    b.    recklessly represented that pool funds were being invested only in forex when Haas knew that OIG and OM were making non-forex investments and he did not verify that those non-forex investments were made with trading profits;

    c.    recklessly represented that the Oasis Pools were generating any trading profits at all, without reviewing the trading account statements for the Oasis Pools, which would have reflected the pools' losses;

    d.    recklessly represented that the only risk in forex trading was if the entire banking system or economy collapsed; in fact, neither of these events occurred and nearly all of the pool participant funds deposited into trading accounts still were lost trading forex; and

    e.    recklessly represented that pool participants' funds were on deposit and could all be sent back at once if necessary, without verifying that pool participant funds were in fact on deposit, instead of being at risk in forex trading accounts and being used for non-forex investments.

49.    Haas, individually and as an agent for OIG, OM, and SHC, intentionally or recklessly made material misrepresentations to the pool participants in order to solicit their investments in the Oasis Pools.

50.    Defendant Duran, individually and as an agent for OIG, OM, and SHC:

     a.    recklessly represented to pool participants that the Oasis Pools were generating profits without reviewing the trading account statements for the Oasis Pools, which would have reflected the pools' losses;

     b.    recklessly represented that pool funds would be invested only in forex when he knew that OIG and OM were making non-forex investments, and he did not verify that those non-forex investments were made with trading profits;

     c.    recklessly represented that pool participants' funds could never depreciate when forex trading is inherently risky and in fact nearly all of the pool participant funds used for forex trading were lost; and

     d.    intentionally misrepresented the duration of his investment in the Oasis Pools.

51.    Duran, individually and as an agent for OIG, OM, and SHC, intentionally or recklessly made material misrepresentations to the pool participants in order to solicit their investments in the Oasis Pools.

### d.    Defendants DaCorta and Anile Issued False Account Statements to the Pool Participants.

52.    To conceal the trading losses and misappropriation, Defendants DaCorta and Anile, on behalf of OIG and OM, created and issued false account statements to pool participants that inflated and misrepresented the value of the

pool participants' investments in the Oasis Pools and the Oasis Pools' trading returns.

53.     The pool participants believed that these account statement balances reflected money actually held in accounts for the Oasis Pools and that they reflected the pool participants' principal investment amounts, interest on that principal, and in many cases, referral fees for introducing other pool participants to OIG, OM, and/or SHC.

54.     Despite the false account statements created by DaCorta and Anile, when the CFTC filed its initial complaint, the assets of the Oasis Pools were such that they were ultimately short approximately $50 million to pay back even pool participants' principal investments, let alone interest on their investments and referral fees.

55.     Reported profits or earnings by pool participants were fictitious and any money returned to pool participants came from investments of other pool participants.

> **e.     OIG, OM, and SHC Are Liable for the Acts of Defendants DaCorta, Anile, Montie, Haas, and Duran.**

56.     During the Relevant Period, OIG, OM, and SHC solicited, received, and accepted funds from pool participants for retail forex transactions (i.e., leveraged, margined, or financed transactions in foreign currency with customers who are not ECPs as described in Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C)).

57.     Defendant DaCorta co-founded and was a principal shareholder, member, and director of OIG.  DaCorta was OIG's Chief Executive Officer and Chief Investment Officer, with responsibilities for all investment decisions, trading execution, services, sales, clearing, and operations.  DaCorta served on OIG's Board of Directors, was a member of OIG, was an officer of OIG, operated OIG, and controlled OIG.

58.     Defendant DaCorta was the sole principal and general partner of OM.

59.     DaCorta was associated with OIG, OM, and SHC as a partner, officer, employee, consultant, or agent in a capacity that involved the solicitation of funds, securities, or property for participation in a commodity pool that engaged in retail forex transactions.

60.     OIG, OM, and SHC are therefore liable for the acts and omissions of DaCorta done in the scope of his employment or office under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2022).

61.     Defendant Montie was a member, director, and the Executive Director of Sales for OIG, and, in this capacity, he organized and participated in in-person meetings, conference calls, and emails in which he, along with other Defendants, solicited members of the general public to become pool participants in the Oasis Pools.

62.     Montie was associated with OIG, OM, and SHC as a partner, officer, employee, consultant, or agent in a capacity that involved the solicitation of

funds, securities, or property for participation in a commodity pool that engaged in retail forex transactions.

63.     OIG, OM, and SHC are therefore liable for the acts and omissions of Montie done in the scope of his employment or office under 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2 (2022).

64.     Defendant Haas was the sole director of SHC, and in this capacity, Haas organized and participated in in-person meetings, conference calls, and emails in which he, along with other Defendants, solicited members of the general public to become pool participants in the Oasis Pools.

65.     Haas was associated with OIG, OM, and SHC as a partner, officer, employee, consultant, or agent in a capacity that involved the solicitation of funds, securities, or property for participation in a commodity pool that engaged in retail forex transactions.

66.     OIG, OM, and SHC are therefore liable for the acts and omissions of Haas done in the scope of his employment or office under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2022).

67.     Defendant Anile co-founded and was a principal shareholder, member, director, and president of OIG.  Anile had responsibility for staffing, guiding, and managing OIG's vision, mission, strategic plan, and direction.  Anile also controlled OIG's bank accounts and opened trading accounts for the Oasis Pools.  Anile assisted in facilitating real estate purchases with pool funds and making non-forex investments with pool funds.

68.     OIG is therefore liable for the acts of Anile done within the scope of his employment or office under 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2 (2022).

69.     Defendant Duran handled the day-to-day operations of OIG and generally assisted Defendant DaCorta with OIG's operations.  Duran also solicited members of the general public to become pool participants in the Oasis Pools.

70.     Duran was associated with OIG, OM, and SHC as a partner, officer, employee, consultant, or agent in a capacity that involved the solicitation of funds, securities, or property for participation in a commodity pool that engaged in retail forex transactions.

71.     OIG, OM, and SHC are therefore liable for the acts and omissions of Duran done in the scope of his employment or office under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2 (2022).

### 4.     Defendant OIG Failed To Operate the Oasis Pools As Separate Legal Entities or To Receive Funds in the Oasis Pools' Names.

72.     Defendants OIG, OM, and SHC, acting as CPOs of the Oasis Pools, did not operate the Oasis Pools as separate legal entities.  OIG, OM, and SHC failed to open bank accounts specifically designated for the Oasis Pools.  OIG, OM, and SHC also failed to receive pool participants' funds in the names of the Oasis Pools and commingled the property of the Oasis Pools with the property of Defendants or others.

### 5.   Defendants OIG, OM, and SHC Failed To Register with the CFTC.

73.   Defendants OIG, OM, and SHC operated as CPOs in that they engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and they solicited, accepted, or received funds, securities, property, or capital contributions for the purpose of trading in commodity interests, including retail forex transactions (i.e., leveraged, margined, or financed transactions in foreign currency with customers who are not ECPs as described in Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C)).

74.   Defendants OIG, OM, and SHC used emails, wire transfers, phone calls including conference calls, and other means or instrumentalities of interstate commerce to solicit, accept, and receive pool participants' funds for the purpose of trading retail forex.

75.   During the Relevant Period, Defendants OIG, OM, and SHC were never registered as CPOs and were not exempt or excluded from registration as CPOs.

### 6.   Defendants OIG, OM, and SHC Failed To Provide Adequate Pool Disclosures and Other Relevant Documents.

76.   At or near the time of participation in the Oasis Pools, Defendants OIG, OM, and SHC, while acting as CPOs of the Oasis Pools, provided potential pool participants with a document titled "Agreement and Risk Disclosures," along with a "Promissory Note and Loan Agreement."

77.     The Agreement and Risk Disclosure purported to alert investors to the risks associated with investing in forex, but at the same time, the Promissory Note and Loan Agreement guaranteed pool participants a minimum 12% annual return.

78.     The Agreement and Risk Disclosure did not include the required cautionary statement to investors or a full and complete risk disclosure, including the risks involved in retail forex trading.

79.     In addition, Defendants OIG, OM, and SHC also failed to provide pool participants with additional required information, including but not limited to the fees and expenses incurred by the Oasis Pools, past performance disclosures, and a statement that the CPO is required to provide all pool participants with monthly or quarterly account statements, as well as an annual report containing financial statements certified by an independent public accountant.

## B.    Conclusions of Law

### 1.    Jurisdiction and Venue

80.     This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress). Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), provides that the CFTC may bring actions for injunctive relief or to enforce compliance with the

Act or any rule, regulation, or order thereunder in the proper district court of the United States whenever it shall appear to the CFTC that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

81.   Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e) because a number of Defendants reside in this jurisdiction and the acts and practices in violation of the Act occurred within this District.

### 2. Defendants OIG, OM, and SHC Committed Fraud in Violation of Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C), and Regulation 5.2(b), 17 C.F.R. § 5.2(b) (2022).

82.   7 U.S.C. § 6b(a)(2)(A)-(C) makes it unlawful:

> (2)   [F]or any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or swap, that is made, or to be made, for or on behalf of, or with any other person, other than on or subject to the rules of a designated contract market
>
> (A)   to cheat or defraud or attempt to cheat or defraud the other person;
>
> (B)   willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; [or]
>
> (C)   willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or

> contract for or, in the case of paragraph (2),
> with the other person[.]

83.     Under Section 2(c)(2)(C)(i) and (iv) of the Act, 7 U.S.C.

§ 2(c)(2)(C)(i), (iv), transactions in foreign currency (such as the retail forex

transactions described herein), that are entered into with persons who are not

eligible contract participants, are subject to Section 4b of the Act "as if" they are a

contract of sale of a commodity for future delivery.

84.     Section 1a(18)(A)(ix) of the Act, 7 U.S.C. § 1a(18)(A)(xi), defines an

ECP, in relevant part, as an individual who has amounts invested on a

discretionary basis, the aggregate of which exceeds $10 million, or $5 million if

the individual enters into the transaction to manage the risk associated with an

asset owned or liability occurred, or reasonably likely to be owned or incurred, by

the individual.

85.     17 C.F.R. § 5.2(b) provides, in relevant part, that:

> It shall be unlawful for any person, by use of the mails or by
> any means or instrumentality of interstate commerce, directly
> or indirectly, in or in connection with any retail forex
> transaction:
>
> > (1)     To cheat or defraud or attempt to cheat or
> > defraud any person;
> >
> > (2)     Willfully to make or cause to be made to any
> > person any false report or statement or cause to
> > be entered for any person any false record; or
> >
> > (3)     Willfully to deceive or attempt to deceive any
> > person by any means whatsoever.

86.     Defendants DaCorta, Montie, Haas, and Duran, individually and as agents for OIG, OM, and SHC, engaged in a fraud by, among other things, misrepresenting that:  (1)  Defendants were earning significant profits on behalf of pool participants by trading forex; (2) the returns paid to pool participants were generated from forex trading profits; (3) pool funds would be used solely to trade forex; (4) pool funds would not be used to purchase real estate; (5) there was no risk to the Oasis Pools unless the entire banking system or economy collapsed; (6) pool funds were merely on deposit at large domestic and international investment banks "backing" forex trades; and (7) DaCorta was an experienced and profitable trader.

87.     Defendants DaCorta and Anile, individually and as agents for OIG, OM, and SHC, engaged in a fraud by, among other things:  (1) issuing false account statements to pool participants; and (2) paying returns to pool participants by using the principal of other pool participants in the nature of a Ponzi scheme.

88.     Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) provides that:

> The act, omission, or failure of any official, agent, or other person acting for any individual, association, partnership, corporation, or trust within the scope of his employment or office shall be deemed the act, omission, or failure of such individual, association, partnership, corporation, or trust, as well as of such official, agent, or other person.

89.     Regulation 17 C.F.R. § 1.2 (2022) mirrors 7 U.S.C. § 2(a)(1)(B).

90.     During the Relevant Period, Defendants DaCorta, Anile, Montie, Haas, and Duran acted as officers and agents of OIG, OM, and SHC.  DaCorta was an officer and director of OIG and the sole partner of OM, and solicited pool participants for participation in the Oasis Pools.  Anile was an officer and director of OIG, and had responsibility for staffing, guiding, and managing OIG's vision, mission, strategic plan, and direction, and controlled OIG's bank accounts. Montie was the Executive Director of Sales for OIG and solicited pool participants for participation in the Oasis Pools.  Haas was the sole director of SHC and solicited pool participants for participation in the Oasis Pools.  Duran handled the day-to-day operations of OIG and solicited pool participants for participation in the Oasis Pools.  The acts of DaCorta, Anile, Montie, Haas, and Duran occurred within the scope of their employment with OIG, OM, and SHC. Therefore, OIG, OM, and SHC are liable for DaCorta's, Anile's, Montie's, Haas's, and Duran's violations of the Act and Regulations as described in this Consent Order.

91.     By reason of the foregoing, Defendants OIG, OM, and SHC violated 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3).

92.     Each act of misrepresentation or omission of material fact is a separate and distinct violation of 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3).

### 3.   Defendants OIG, OM, and SHC Committed Fraud as CPOs in Violation of Section 4*o*(1)(A)-(B) of the Act, 7 U.S.C. § 6*o*(1)(A)-(B).

93.   Section 1a(11) of the Act, 7 U.S.C. § 1a(11)(A)(i), defines a CPO, in relevant part, as any person—

> [E]ngaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests, including any—
>
> (I)    commodity for future delivery, security futures product, or swap; [or]
>
> (II)   agreement, contract, or transaction described in [S]ection 2(c)(2)(C)(i) [of the Act] or [S]ection 2(c)(2)(D)(i) [of the Act].

94.   Under Regulation 5.1(d)(1), 17 C.F.R. § 5.1(d)(1) (2022), and subject to certain exceptions not relevant here, any person who operates or solicits funds, securities, or property for a pooled investment vehicle and engages in retail forex transactions is a retail forex CPO.

95.   Under Section 2(c)(2)(C)(ii)(I) of the Act, 7 U.S.C. § 2(c)(2)(C)(ii)(I), "[a]greements, contracts, or transactions" in retail forex and accounts or pooled investment vehicles "shall be subject to . . . section[ ] 6*o* [of the Act]," except in circumstances not relevant here.

96.   During the Relevant Period, Defendants OIG, OM, and SHC (acting as a common enterprise) engaged in a business, for compensation or profit, that

is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and in connection therewith, solicited, accepted, or received from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests; therefore, Defendants OIG, OM, and SHC acted as CPOs, as defined by 7 U.S.C. § 1a(11).

97.     During the Relevant Period, Defendants OIG, OM, and SHC (acting as a common enterprise) were not registered with the CFTC as CPOs.

98.     7 U.S.C. § 6o(1)(A)-(B), prohibits CPOs, whether registered with the CFTC or not, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, from employing devices, schemes, or artifices to defraud any client or participant or prospective client or participant, or engaging in transactions, practices, or courses of business which operate as a fraud or deceit upon any client or participant or prospective client or participant.

99.     By reason of the foregoing, Defendants OIG, OM, and SHC (acting as a common enterprise) violated 7 U.S.C. § 6o(1)(A)-(B).

100.   Each act of misrepresentation, omission of material fact, or false report or statement is a separate and distinct violation of 7 U.S.C. § 6o(1)(A)-(B).

**4.    OIG, OM, and SHC Failed To Register as CPOs in Violation of Sections 2(c)(2)(C)(iii)(I)(cc) and 4m(1) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6m(1), and Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2022).**

101.    Subject to certain exceptions not relevant here, 7 U.S.C. § 6m(1) states that it shall be "unlawful for any . . . [CPO], unless registered under this chapter, to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as such . . . [CPO]."

102.    Subject to certain exceptions not relevant here, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc), states that a

> [P]erson, unless registered in such capacity as the Commission by rule, regulation, or order shall determine and a member of a futures association registered under section 21 of this title, shall not . . .
>
> . . . . .
>
> (cc) operate or solicit funds, securities, or property for any pooled investment vehicle that is not an eligible contract participant in connection with [retail forex contracts, agreements, or transactions].

103.    For the purposes of retail forex transactions, a CPO is defined in Regulation 5.1(d)(1), 17 C.F.R. § 5.1(d)(1) (2022), as any person who operates or solicits funds, securities, or property for a pooled investment vehicle that is not an ECP, as defined in Section 1a(18) of the Act, 17 U.S.C. § 1a(18), and who engages in retail forex transactions.

104.    Except in circumstances not relevant here, Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2022), requires those that meet the definition of a retail

forex CPO under Regulation 5.1(d), 17 C.F.R. § 5.1(d) (2022), to register as a CPO

with the CFTC.

105.   Subject to certain exceptions not relevant here, 7 U.S.C. § 6k(2)

states that it shall be

> [U]nlawful for any person to be associated with a [CPO] as a partner, officer, employee, consultant, or agent . . . in any capacity that involves
>
> > (i)   the solicitation of funds, securities, or property for a participation in a commodity pool or
> >
> > (ii)  the supervision of any person or persons so engaged, unless such person is registered with the Commission under this chapter as an [AP] of such [CPO] . . . .

106.   By reason of the foregoing, Defendants OIG, OM, and SHC (acting as

a common enterprise) engaged in a business, for compensation or profit, that is

of the nature of a commodity pool, investment trust, syndicate, or similar form of

enterprise, and in connection therewith, solicited, accepted, or received from

others, funds, securities, or property, either directly or through capital

contributions, the sale of stock or other forms of securities, or otherwise, for the

purpose of trading in commodity interests, including retail forex transactions;

therefore, Defendants OIG, OM, and SHC acted as CPOs as defined by 7 U.S.C.

§ 1a(11).

107.   Defendants OIG, OM, and SHC (acting as a common enterprise),

while using the mails or means of interstate commerce in connection with their

business as CPOs, were not registered with the CFTC as CPOs.

108.    By reason of the foregoing, Defendants OIG, OM, and SHC (acting as a common enterprise) acted as unregistered CPOs in violation of 7 U.S.C. § 6m(1).

109.    By reason of the foregoing, Defendants OIG, OM, and SHC (acting as a common enterprise) solicited funds, securities, or property for a pooled investment vehicle from investors who were not ECPs, as defined by 7 U.S.C. § 1a(18), for the purpose of trading in retail forex transactions (as defined by 17 C.F.R. § 5.1(m)); thus, OIG, OM, and SHC (acting as a common enterprise) acted as CPOs engaged in retail forex transactions as defined by 17 C.F.R. § 5.1(d)(1).

110.    Defendants OIG, OM, and SHC (acting as a common enterprise) were not registered with the CFTC as CPOs engaged in retail forex transactions, and therefore violated 7 U.S.C. § 2(c)(2)(C)(iii)(I)(cc) and 17 C.F.R. § 5.3(a)(2)(i).

111.    Each instance that OIG, OM, and SHC acted as CPOs but failed to register with the CFTC as such is a separate and distinct violation.

**5.    OIG, OM, and SHC Failed To Accept Funds in the Name of the Oasis Pools and Commingled Funds in Violation of Regulation 4.20, 17 C.F.R. § 4.20 (2022).**

112.    Regulation 5.4, 17 C.F.R. § 5.4 (2022), states that Part 4 of the Regulations, 17 C.F.R. pt. 4 (2022), applies to any person required to register as a CPO pursuant to Part 5 of the Regulations, 17 C.F.R. pt. 5 (2022), relating to retail forex transactions.

113.    17 C.F.R. § 4.20(b) (2022) prohibits CPOs, whether registered or not, from receiving pool participants' funds in any name other than that of the pool.

114.    17 C.F.R. § 4.20(c) prohibits CPOs, whether registered or not, from commingling the property of any pool it operates with the property of any other person.

115.    By reason of the foregoing, Defendants OIG, OM, and SHC, while acting as CPOs for the Oasis Pools, failed to receive the pool participants' funds in the names of the Oasis Pools, and commingled the property of the Oasis Pools with property of Defendants or others.

116.    By reason of the foregoing, Defendants OIG, OM, and SHC violated 17 C.F.R. § 4.20(b)-(c).

117.    Each act of improperly receiving pool participants' funds and commingling the property of the Oasis Pools with non-pool property, including but not limited to those specifically described herein, is a separate and distinct violation of 17 C.F.R. § 4.20(b)-(c).

**6.    Defendants OIG, OM, and SHC Failed To Provide Pool Disclosures in Violation of Regulation 4.21, 17 C.F.R. § 4.21 (2022).**

118.    Regulation 5.4, 17 C.F.R. § 5.4 (2022), states 17 C.F.R. pt. 4 applies to any person required to register as a CPO under 17 C.F.R. pt. 5 relating to retail forex transactions.

119.    17 C.F.R. § 4.21 provides that

> [E]ach commodity pool operator registered or required to be registered under the Act must deliver or cause to be delivered to a prospective participant in a pool that it operates or intends to operate a Disclosure Document for the pool prepared in accordance with §§ 4.24 and 4.25 by no later than the time it delivers to the prospective participant a subscription agreement for the pool . . . .

120.    By reason of the foregoing, Defendants OIG, OM, and SHC failed to provide to prospective pool participants with pool disclosure documents in the form specified in Regulations 4.24 and 4.25, 17 C.F.R. § 4.24, 4.25 (2022).

121.    By reason of the foregoing, Defendants OIG, OM, and SHC violated 17 C.F.R. § 4.21.

122.    Each failure to furnish the required disclosure of documents to prospective pool participants and pool participants is a separate and distinct violation of 17 C.F.R. § 4.21.

123.    Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defendants OIG, OM, and SHC will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

## IV.    PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

124.    Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Defendants OIG, OM, and SHC are permanently restrained, enjoined and prohibited from directly or indirectly:

a. Cheating or defrauding, or attempting to cheat or defraud, other persons in or in connection with any order to make, or the making of, any contract of sale of any retail forex transaction that is made, or to be made, for or on behalf of, or with, any other person, in violation of Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C), and Regulation 5.2(b)(1)-(3), 17 C.F.R. § 5.2(b)(1)-(3) (2022);

b. Employing any device, scheme, or artifice to defraud any client or participant or prospective client or participant, or engaging in any transaction, practice or course of business which operates as a fraud or deceit upon any client or participant or prospective participant in violation of Section 4o(1)(A)-(B) of the Act, 7 U.S.C. § 6o(1)(A)-(B);

c. Being associated with a CPO as a partner, officer, employee, consultant, or agent, or a person occupying a similar status or performing similar functions, in any capacity that involves the solicitation of funds, securities, or property for participation in a retail forex pool without being registered with the CFTC as an AP of the CPO, in violation of Sections 2(c)(2)(C)(iii)(I)(cc) and 4k(2) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6k(2) and Regulation 5.3(a)(2), 17 C.F.R. § 5.3(a)(2) (2022);

d. Failing to operate a commodity pool as an entity cognizable as a legal entity separate from that of the pool operator, in violation of Regulation 4.20(a)(1), 17 C.F.R. § 4.20(a)(1) (2022);

e. Failing to require that all funds, securities, or other property received by a CPO from a prospective or existing pool participant be received in the commodity pool's name, in violation of Regulation 4.20(b), 17 C.F.R. § 4.20(b) (2022);

f. Commingling the property of a commodity pool in violation of Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2022); and

g. Failing to provide prospective pool participants with pool disclosure documents in the form specified in Regulations 4.24 and 4.25, 17 C.F.R. §§ 4.24, 4.25 (2022), in violation of Regulation 4.21, 17 C.F.R. § 4.21 (2022).

125. Defendants OIG, OM, and SHC are also permanently restrained, enjoined and prohibited from directly or indirectly:

a. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40));

b. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2022)), for their own personal account or for any account in which they have a direct or indirect interest;

c. Having any commodity interests traded on their behalf;

d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

e. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

f. Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2022); and

g. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2022)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38)), registered, exempted from registration or required to be registered with the CFTC except as provided for in 17 C.F.R. § 4.14(a)(9).

## V.    RESTITUTION

126.   Defendants OIG, OM, and SHC shall pay, jointly and severally, restitution in the amount of fifty-three million, two hundred and seventy thousand, three hundred and thirty-six dollars and eight cents ($53,270,336.08) ("Restitution Obligation"), representing the gains received in connection with such violations, plus post-judgment interest.  Post-judgment interest shall accrue beginning on the date of entry of this Consent Order and shall be determined by

using the Treasury Bill rate prevailing on the date of entry of this Consent Order under 28 U.S.C. § 1961.  The Restitution Obligation shall be reduced by any amount paid to participants in the Oasis Pools by the Receiver from the Receivership Estate, as defined by the Order Appointing Receiver (Dkt. 7).

127.    To effect payment of the Restitution Obligation and the distribution of any restitution payments to participants in the Oasis Pools, the Court directs the Receiver to receive restitution payments from Defendants OIG, OM, and SHC as set forth below.

128.    Because the Receiver is acting as an officer of this Court in performing these services, the Receiver shall not be liable for any action or inaction arising from his appointment, other than actions involving fraud.

129.    The Receiver shall oversee the Restitution Obligation and shall make any distributions of the same in accordance with the March 7, 2022 Order (Dkt. 482) granting the Receiver's Motion to:  (1) Approve Determination and Priority of Claims; (2) Pool Receivership Assets and Liabilities; (3) Approve Plan of Distribution; and (4) Establish Objection Procedure (Dkt. 439).

130.    Upon the termination of the Receivership Estate, the Receiver shall provide the CFTC with a report detailing the disbursement of the Restitution Obligation to participants in the Oasis Pools.  The delivery of the Court's order terminating the Receivership that includes this information shall satisfy this requirement.  The Receiver shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial

Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

131.   The provision of the preliminary injunction entered against Defendants OIG, OM, and SHC on April 30, 2019 (Dkt. 43), continuing a freeze on assets or funds in their names or under their management and control, shall remain in full force and effect until such time as the Court orders otherwise pursuant to a request by the Receiver or the CFTC.

132.   To the extent that any funds accrue to the U.S. Treasury for satisfaction of Defendants OIG, OM, and SHC's Restitution Obligation, such funds shall be transferred to the Receiver for disbursement in accordance with the procedures set forth above.

## VI.   PROVISIONS RELATED TO MONETARY SANCTIONS

133.   Partial Satisfaction:  Acceptance by the CFTC or Receiver of any partial payment of Defendants OIG, OM, or SHC's Restitution Obligation shall not be deemed a waiver of his obligation to make further payments pursuant to this Consent Order, or a waiver of the CFTC's or Receiver's right to seek to compel payment of any remaining balance.

## VII.   MISCELLANEOUS PROVISIONS

134.   Until such time as Defendants OIG, OM, and SHC satisfy in full their Restitution Obligation under this Consent Order, upon the commencement by or against Defendants OIG, OM, or SHC of insolvency, receivership or bankruptcy proceedings or any other proceedings for the settlement of their debts, all notices

to creditors required to be furnished to the CFTC under Title 11 of the United

States Code or other applicable law with respect to such insolvency, receivership

bankruptcy or other proceedings, shall be sent to the address below:

> Secretary of the Commission
> Legal Division
> Commodity Futures Trading Commission
> Three Lafayette Centre
> 1155 21st Street N.W.
> Washington, DC 20581

135.   Notice:  All notices required to be given by any provision in this

Consent Order, except as set forth in paragraph 134 above, shall be sent certified

mail, return receipt requested, as follows:

Notice to CFTC:

> Charles Marvine, Deputy Director
> Commodity Futures Trading Commission
> 2600 Grand Blvd., Suite 210
> Kansas City, MO 64108

Notice to Defendants OIG, OM, or SHC:

> Burton W. Wiand, Receiver
> Burton W. Wiand PA
> 114 Turner Street
> Clearwater, FL 33756

Notice to Receiver:

> Burton W. Wiand, Receiver
> Burton W. Wiand PA
> 114 Turner Street
> Clearwater, FL 33756

All such notices to the CFTC shall reference the name and docket number of this

action.

136.    Entire Agreement and Amendments:  This Consent Order and other court orders referenced herein incorporate all of the terms and conditions of the settlement among the parties hereto to date.  Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless:  (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

137.    Invalidation:  If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

138.    Waiver:  The failure of any party to this Consent Order at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

139.    Waiver of Service, and Acknowledgement:  Defendants OIG, OM, and SHC waive service of this Consent Order and agree that entry of this Consent Order by the Court and filing with the Clerk of the Court will constitute notice to Defendants OIG, OM, and SHC of its terms and conditions.

140.    Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for

all other purposes related to this action, including any motion by Defendants OIG, OM, and SHC to modify or for relief from the terms of this Consent Order.

141.   Injunctive and Equitable Relief Provisions:  The injunctive and equitable relief provisions of this Consent Order shall be binding upon the following persons who receive actual notice of this Consent Order, by personal service or otherwise:  (1) Defendants OIG, OM, and SHC; (2) any officer, agent, servant, employee, or attorney of Defendants OIG, OM, and SHC; and (3) upon any other persons who are in active concert or participation with any persons described in subsections (1) and (2) above.

142.   Counterparts and Facsimile Execution:  This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

143.   Agreements and Undertakings:  Defendants OIG, OM, and SHC shall comply with all of the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Consent Order for Permanent Injunction and Other*

*Equitable Relief Against Defendants OIG, OM, and SHC* forthwith and without further notice.

**IT IS SO ORDERED** on this ___12th___ day of ___December___, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

CONSENTED TO AND APPROVED
BY:

Burton W. Wiand, Receiver
Burton W. Wiand PA
114 Turner Street
Clearwater, FL 33756
burt@burtonwwiandpa.com

Court-Appointed Receiver for Oasis
International Group, Limited; Oasis
Management, LLC; and Satellite
Holdings Company

Dated
9-30-2023

Jeffery C. Le Riche
J. Alison Auxter
Commodity Futures Trading
Commission
2600 Grand Boulevard, Suite 210
Kansas City, Missouri 64108
(816) 960-7700
(816) 960-7750 (facsimile)
jleriche@cftc.gov
aauxter@cftc.gov

Dated
12/07/2023

Approved as to form:

_____

Ailen Cruz
Guerra & Partners, P.A.
The Towers at Westshore
1408 N. West Shore Blvd, Suite 1010
Tampa, FL 33607
(813) 347-5139
acruz@guerrapartners.law

Dated
_____
September 30, 2023