UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

COMMODITY FUTURES
TRADING COMMISSION,

Plaintiff,

v. Case No.: 8:19-cv-886-VMC-SPF

OASIS INTERNATIONAL GROUP, LIMITED; OASIS MANAGEMENT, LLC; SATELLITE HOLDINGS COMPANY; MICHAEL J. DACORTA; JOSEPH S. ANILE, II.; RAYMOND P. MONTIE III; FRANCISCO "FRANK" L. DURAN; and JOHN J. HAAS,

Defendants,

and

FUNDADMINISTRATION, INC.; BOWLING GREEN CAPITAL MANAGEMENT LLC; LAGOON INVESTMENTS, INC.; ROAR OF THE LION FITNESS, LLC; 444 GULF OF MEXICO DRIVE, LLC; 4064 FOUNDERS CLUB DRIVE, LLC; 6922 LACANTERA CIRCLE, LLC; 13318 LOST KEY PLACE, LLC; and 4 OAKS LLC,

Relief Defendants.
_____________________________/

**ORDER TO SHOW CAUSE**

This cause comes before the Court upon consideration of the Receiver's Verified Motion for an Order to Show Cause Why Respondents Should Not Be Held in Contempt for Failure to Comply with the Court's Orders (Doc. # 904), filed on April 3, 2026. Stephen Preziosi filed a response in opposition on

May 1, 2026. (Doc. # at 911). With leave of Court, the Receiver filed a reply on May 18, 2026 (Doc. # 919), and Mr. Preziosi filed a sur-reply on June 3, 2026. (Doc. # 925). No other responses have been filed. For the reasons that follow, the Motion is granted.

## I. Background

The Court's Consolidated Receivership Order ("Consolidated Order") appointed Burton W. Wiand as receiver in this action. (Doc. # 177). The Consolidated Order, in part, authorizes the Receiver to preserve the assets of the Defendants and Relief Defendants (the "Receivership Assets"), "as well as the assets of any other entities or individuals that: (a) are attributable to funds derived from pool participants, lenders, investors, or clients of the Defendants and/or Relief Defendants; (b) are held in constructive trust for the Defendants and/or relief Defendants; (c) were fraudulently transferred by the Defendants and/or Relief Defendants; and/or (d) may otherwise be includable as assets of the estates of the Defendants and/or Relief Defendants (collectively, the 'Recoverable Assets')." (Id. at 2). The Consolidated Order froze all Receivership Property, which is defined as the Receivership Assets and the Recoverable Assets. (Id. at 2, 4). The Consolidated Order further enjoined all persons receiving

notice of the Order from "interfer[ing] with or harass[ing] the Receiver, or interfer[ing] in any manner with the exclusive jurisdiction of this Court over the Receivership Estates." (Id. at 15-16). The Receivership Estates includes all property interests of the Receivership Defendants. (Id. at 5).

The Receiver seeks to hold the following five individuals allegedly affiliated with the Oasis Helpers Group ("Helpers Group") in civil contempt for violating the Consolidated Order: (1) Defendant Michael DaCorta, (2) Brent Winters, (3) Greg Melick, (4) Jason McKee, and (5) Stephen Preziosi (collectively "Respondents"). (Doc. # 904 at 1). The Receiver alleges as follows. Mr. Winters is an attorney for Mr. DaCorta as well as "'counsel' or 'attorney-in-fact' for hundreds of claimants" who participated in Defendants' fraudulent investment scheme. (Id. at 6). Mr. Melick is the "principal organizer of the Helpers Group and the primary author of [its] communications to claimants. He claims to be in direct contact with [Mr.] DaCorta and relays messages to and from claimants as an intermediary. He also claims to be a paralegal for [Mr.] Winters." (Id.) (internal citation omitted). Mr. Melick's actions are imputable to Mr. Winters under agency principles and to Mr. DaCorta, "who uses [Mr.] Melick as a conduit." (Id.). Mr. McKee "acts as a

representative and 'treasurer' of the Helpers Group and has appeared in videos and communications directed to claimants." (Id.). Mr. Preziosi "is another attorney for [Mr.] DaCorta who has been paid at least $155,450 in funds raised from victims to appeal this Court's order granting summary judgment and to file a *habeas corpus* petition." (Id. at 7). The Receiver alleges that the Helpers Group has "engaged in conduct that has disrupted and interfered with the administration of the Receivership" and has perpetuated an ongoing recovery fraud against victims of the Oasis scheme. (Id. at 5-13).

The Receiver alleges that Respondents were on notice of the Consolidated Order and should be held in civil contempt for violating the asset freeze provision. (Id. at 4 n.3, 16-20). Specifically, the Receiver claims that "[t]o fund [Mr.] DaCorta's defense, the Helpers Group and [Mr.] Winters have demanded that claimants pay a purported 'contingency fee' equal to 15% of all funds received through the Receivership." (Doc. # 905 at ¶ 11). "These demands are tied to the Court-ordered distributions the claimants received and are being extorted from the claimants under the ruse that funding [Mr.] DaCorta's defense will result in claimants recovering all their losses plus interest." (Id.). The Receiver states that approximately $581,159.49 was collected from victims from

July 2021 through September 2023, of which $155,450 was paid to Mr. Preziosi. (Id. at ¶¶ 14-15, 17). The Receiver claims that Mr. Preziosi was paid by one $80,000 check from a victim and that the remaining $75,450 was paid by wire transfer from Trust LLT. (Id. at ¶ 17. Mr. McKee is trustee and a beneficiary of the trust. (Id. at ¶ 13). Mr. Melick is the successor trustee and another beneficiary of the trust. (Id.).

The Receiver further alleges that "the Helpers Group's and Mr. Winters' coordinated conduct, both historically and continuing to the present, has interfered with the Receiver and with this Court's exclusive jurisdiction over the Receivership in violation of the Consolidated Order." (Doc. # 904 at 7). The Receiver asserts that the Helpers Group and Mr. Winters have "directly and repeatedly interfered with [the Court-approved claims] process by (1) disseminating false information regarding the claims process and the Receiver's role therein, (2) obstructing communications between the claimants and the Receiver or his professionals, and (3) manipulating forms and other claim-related submissions." (Id. at 9). The Receiver also alleges that the Helpers Group and Mr. Winters have interfered with the Court's administration of distributions by "demanding that claimants

pay a purported 'contingency fee' equal to 15% of all funds received through the Receivership." (Id. at 11).

In response, Mr. Preziosi primarily argues that the Receiver has not established that he violated any aspect of the Consolidated Order. (Doc. # 911 at 3-12). Mr. Preziosi denies that he has ever "communicated with the Oasis Helpers Group" and asserts that the "[t]he funds used for [Mr.] DaCorta's legal representation came from personal friends of Mr. DaCorta and they were the personal funds of these people." (Id. at 3, 16). Mr. Preziosi states that he was paid in "February 2024, approximately five years after this Court's Consolidated Order" and that "[n]one of these funds are even remotely connected to Receivership Property or are subject to this Court's Order." (Id. at 3). Mr. Preziosi further claims that, contrary to the Receiver's contention, he is not Mr. DaCorta's attorney of record in this action. (Id. at 2-3).

The Motion is ripe for review.

## II. Legal Standard

"Courts have inherent power to enforce compliance with their lawful orders through civil contempt." Citronelle-Mobile Gathering, Inc. v. Watkins, 943 F.2d 1297, 1301 (11th Cir. 1991). A plaintiff can initiate civil contempt proceedings by moving the court to issue an order to show cause why a defendant should not be held in civil contempt

for failing to comply with an order. Newman v. Alabama, 683 F.2d 1312, 1318 (11th Cir. 1982). "If the court finds that the conduct as alleged would violate the prior order, it enters an order requiring the defendant to show cause why he should not be held in contempt and conducts a hearing on the matter." Mercer v. Mitchell, 908 F.2d 763, 768 (11th Cir. 1990). "At the hearing, if the plaintiff proves what he has alleged in his motion for an order to show cause, the court hears from the defendant. At the end of the day, the court determines whether the defendant has complied with the injunctive provision at issue and, if not, the sanction(s) necessary to ensure compliance." Reynolds v. Roberts, 207 F.3d 1288, 1298 (11th Cir. 2000).

"Courts can assert jurisdiction over non-parties to an injunction or order in contempt proceedings where it is alleged that the non-party violated an order in active concert or participation with a named party." Blanco GmbH±Co. KG v. Vlanco Indus., LLC, 992 F. Supp. 2d 1225, 1248 (S.D. Fla. 2014), on reconsideration in part (May 21, 2014), aff'd sub nom. Blanco GmbH %8F Co. KG v. Laera, 620 F. App'x 718 (11th Cir. 2015); see also F.T.C. v. Leshin, 618 F.3d 1221, 1236 (11th Cir. 2010)("The district court did not abuse its discretion by holding that the Counseling Center acted in concert [with the defendants] and was bound by the

injunction."). "However, in order to hold a non-party to an order in civil contempt for a violation thereof, the non-party must have actual notice of the enjoined acts." Blanco GmbH±Co. KG, 992 F. Supp. 2d at 1248.

## III. Analysis

### A. The Alleged Violation of the Asset Freeze

The Consolidated Order froze "all Receivership Property" pending further order of the Court. (Doc # 177 at 4). Receivership Property consists of the Receivership Assets and the Recoverable Assets. (Id. at 2). The Receivership Assets are "all assets (real, personal, intangible, or otherwise) of the Defendants and the Relief Defendants." (Id.). The Recoverable Assets are "the assets of any other entities or individuals that: (a) are attributable to funds derived from pool participants, lenders, investors, or clients of the Defendants and/or Relief Defendants; (b) are held in constructive trust for the Defendants and/or Relief Defendants; (c) were fraudulently transferred by the Defendants and/or Relief Defendants; and/or (d) may otherwise be includable as assets of the estates of the Defendants and/or Relief Defendants." (Id.).

The Receiver argues that the money obtained through the recovery fraud is a Recoverable Asset because "the money was 'derived from pool participants, lenders, investors, or

clients' of [Mr.] DaCorta. It was held 'in constructive trust' (indeed, in a literal trust) 'for the benefit of' [Mr.] DaCorta. It was transferred to [Mr.] DaCorta's lawyers and used to fund his legal defense." (Doc. # 904 at 18) (internal citations omitted). The Receiver contends that "[o]nce the funds left the investors' respective accounts, they became subject to the asset freeze as after-acquired assets held for [Mr.] DaCorta's benefit." (Id.).

In response, Mr. Preziosi claims that his fees were paid in February 2024 by two friends of Mr. DaCorta, who represented "that these were personal funds and they were not funds related to, part of, or associated with the receivership estate or receivership property." (Doc. # 911 at 18-19). Mr. Preziosi argues that the Receiver has not shown that the Consolidated Order was violated "because the personal funds and future spending of friends of Mr. DaCorta, whether they had been lenders or investors in 2019, were not assets that were subject to this Court's order of an asset freeze. The assets subject to the freeze were assets owned, controlled, managed or held by the Defendants in receivership or in which they have any beneficial interest at the time of the issuance of that order in 2019." (Id. at 4).

The Court finds that the Receiver has alleged conduct that would violate the asset freeze in the Consolidated Order.

The funds used to pay Mr. Preziosi allegedly were "derived from pool participants, lenders, investors, or clients" of Mr. DaCorta. (Doc. # 177 at 4). The Receiver alleges that the Helpers Group and Mr. Winters have caused investors to pay at least $581,000 to Trust LLT by falsely promising them that this is the only way they will recover any funds once Mr. DaCorta succeeds in his appeal in this action and in his habeas petition in his criminal case. (Doc. # 904 at 7-8). The Receiver alleges that Mr. DaCorta uses Mr. Melick, the principal organizer of the Helpers Group and a beneficiary of the trust, as "a conduit." (Id. at 6). The Receiver has alleged that the funds paid to Trust LLT were then used for various purposes, including paying $75,450 to Mr. Preziosi for Mr. DaCorta's legal representation. (Doc. # 905 at ¶ 17).

The Receiver has sufficiently alleged that at least some of the funds solicited by Mr. Winters and the Helpers Group are Recoverable Assets derived from pool participants, lenders, investors, or clients of Mr. DaCorta, which were funneled into Trust LLT for Mr. DaCorta's benefit and have been improperly transferred, received, or otherwise disposed of by Respondents in violation of the Consolidated Order's asset freeze. See F.T.C. v. Assail, Inc., 410 F.3d 256, 263 (5th Cir. 2005) (affirming district court's finding that attorneys' fees paid by companies acting in concert with the

named defendants "were paid with funds subject to the asset freeze order"). Contrary to Mr. Preziosi's contention, the scope of the Consolidated Order's asset freeze is not limited to those assets that were recoverable at the time the Order was issued. (Doc. # 177 at 2, 4). Accordingly, all Respondents, including Mr. Preziosi, must show cause why they should not be held in civil contempt for violating the Consolidated Order's asset freeze.

**B. The Alleged Interference**

The Consolidated Order enjoined all persons receiving notice of the Order from "interfer[ing] with or harass[ing] the Receiver, or interfer[ing] in any manner with the exclusive jurisdiction of this Court over the Receivership Estates." (Doc. # 177 at 15-16). The Receiver argues that "Respondents have directly harassed and interfered with the Receiver and this Court's administration of the Receivership by, among other things:"

1. Misrepresenting this Court's orders and the Receiver's authority and purpose to claimants;

2. Discouraging communications with the Receiver by requiring victims to sign nondisclosure agreements and claiming that the Receiver will bring criminal charges against victims who contact him;

3. Actively and consistently interfering with the Court-ordered claims process by disseminating false information to claimants, obstructing communications, and manipulating claim-related submissions;

4. Directly interfering with Court-ordered distributions by soliciting and coercing claimants into paying monies, including a purported 15% "contingency fee" of their approved distributions from the Receivership;

5. Falsely representing to victims of the Oasis Ponzi scheme that Michael DaCorta did nothing wrong and that Oasis was a bona fide business as part of their scheme to impede the Receivers' activities and garner funds for themselves and DaCorta;

6. Falsely advising the victims that Receiver was acting improperly and that there was no basis for the CFTC's action against Oasis and DaCorta or evidence of their wrongdoing;

7. Causing numerous false accusations to be submitted to the Florida Bar that the Receiver was acting improperly;

8. Falsely representing that claimants will receive a full recovery exceeding $700 million of all claimed losses plus interest that would have been earned to date if they fund DaCorta's legal defense;

9. Falsely representing that Winters and the Helpers Group were entitled to a percentage of recoveries and distributions when they have done nothing to create the fund nor provided any legitimate assistance in connection with the claims process;

10. Falsely representing that claimants will receive no further recovery unless they fund DaCorta's legal defense; and

11. Using fabricated judicial imagery, including an AI-generated depiction of this Court, to lend false authority to these lies.

(Doc. # 904 at 2) (internal citations omitted).

Although the Receiver states that all Respondents committed civil contempt by harassing the Receiver and interfering with the administration of the Receivership (Doc. # 904 at 20), the Receiver asserts that, "[u]nlike [Mr.]

Winters and the Helpers Group, [Mr.] Preziosi was not involved in the claims process to the best of the Receiver's knowledge. The Receiver has not identified any communications between [Mr.] Preziosi and victim-investors, and [Mr.] Preziosi has produced competent legal work, even if the Receiver believes his efforts will ultimately prove unsuccessful." (Id. at 21).

In response, Mr. Preziosi states that he has no affiliation with the Helpers Group and his only knowledge of the Helpers Group is from the allegations in the Receiver's filings. (Doc. # 911 at 12). Mr. Preziosi notes that, in granting his motion to modify a subpoena for communications between himself and individuals affiliated with the Helpers Group, the Southern District of New York determined that Mr. Preziosi's email communications with Mr. Melick "dealt exclusively with the representation of Mr. DaCorta with regard to his appeal in the Eleventh Circuit." (Id. at 17). Mr. Preziosi further asserts that he has "not made any attempt to obstruct the receiver or the receivership in anyway" and that "the extent of [his] involvement has been to file an appellate brief and a reply brief in the Eleventh Circuit Court of Appeals on the civil case and a Writ of Habeas Corpus and a reply brief in the Middle District of Florida on the criminal case for Mr. DaCorta." (Id. at 12, 20).

In reply, the Receiver argues that the fact that Mr. Preziosi communicated with Mr. Melick "shows that [Mr.] Preziosi acted in 'active concert and participation' with [Mr.] Melick and the other Respondents," "that he knew of their activities," and "that their misrepresentations should be imputed to [Mr.] Preziosi as if he made them personally because he worked hand-in-hand with the Helpers Group." (Doc. # 919 at 6-7).

In his sur-reply, Mr. Preziosi asserts that his only written communications with individuals affiliated with the Helpers Group were privileged communications with Mr. Mellick regarding legal strategy, a fact confirmed by District Judge Analisa Torres of the Southern District of New York after conducting an in camera review of the emails. (Doc. # 925 at 5-8; Doc. # 911-1 at 9-10).

Under the circumstances, the Receiver has not sufficiently alleged conduct by Mr. Preziosi that would violate the Consolidated Order's injunction prohibiting all persons receiving notice of the Order from "interfer[ing] with or harass[ing] the Receiver, or interfer[ing] in any manner with the exclusive jurisdiction of this Court over the Receivership Estates." (Doc. # 177 at 15-16). Although the Receiver claims for the first time in reply that Mr. Preziosi "acted in 'active concert and participation' with [Mr.]

Melick and the other Respondents" (Doc. # 919 at 6), the Receiver's vague and conclusory assertion, without more, is insufficient. See Cady Studios, LLC v. Clift, No. 1:18-CV-04670-JPB, 2021 WL 8441385, at *3 (N.D. Ga. Feb. 19, 2021) (explaining that, for "issuance of a show-cause order," the plaintiff must make *detailed allegations* "'which, if true, would support a finding of contempt'" (quoting Wyatt ex rel. Rawlins v. Sawyer, 80 F. Supp. 2d 1275, 1278 (M.D. Ala. 1999))).

However, the Receiver has sufficiently alleged that the other Respondents harassed the Receiver and interfered with the administration of the Receivership in violation of the Consolidated Order. Mr. DaCorta, Mr. Winters, Mr. Melick, and Mr. McKee must show cause why they should not be held in civil contempt for violating that Consolidated Order by harassing the Receiver and interfering with the administration of the Receivership.

### C. Mr. Preziosi Is Still Counsel of Record for Mr. DaCorta

Mr. DaCorta has been represented by several lawyers in this action. In June 2019, the Court granted motions by Christopher Robert Kaigle and Jacob Vickers Stuart, Jr., to withdraw as counsel. (Doc. ## 123, 124). Ronald J. Kurpiers, II, filed a notice of appearance on behalf of Mr. DaCorta in

July 2022. (Doc. # 654). Mr. Kurpiers, who is now deceased, last made a filing in this action in October 2023. (Doc. # 770). In July 2024, Mr. Preziosi moved "for special admission to represent defendant Michael DaCorta in this action." (Doc. # 823 at 1). The Court granted the motion. (Doc. # 824). Mr. Preziosi has not moved to withdraw as counsel for Mr. DaCorta.

In his response to the Receiver's Motion for an order to show cause, Mr. Preziosi asserts that he is not "the attorney of record" for Mr. DaCorta in this case. (Doc. # 911 at 2). Mr. Preziosi states as follows:

> I appeared in this Court and submitted a *pro hac vice* motion in July 2024 for the sole purpose of contesting Mr. Wiand's motion for contempt of a subpoena. The *pro hac vice* motion was granted in August 2024, and this Court dismissed Mr. Wiand's motion for contempt in December 2024 as it was brought in the incorrect jurisdiction. That was the beginning and end of my appearance pursuant to that *pro hac vice* motion.

(Id.) (internal citation omitted).

Although Mr. Preziosi's filings in this case have been limited to responding to the instant Motion and the Receiver's prior contempt motion (Doc. ## 835, 841, 843, 908, 911, 925), Mr. Preziosi's motion for special admission to represent Mr. DaCorta did not state that his appearance was limited to responding to the prior contempt motion. (Doc. # 824). Rather, Mr. Preziosi asked to be specially admitted "to represent defendant Michael DaCorta in this action." (Doc. # 823 at 1).

Pursuant to United States District Court for the Middle District of Florida Local Rule 2.02(c), "[i]f a lawyer appears, the lawyer cannot without leave of court abandon, or withdraw from, the action." M.D. Fla. Local R. 2.02(c). As the Court has not granted Mr. Preziosi leave to withdraw, he remains counsel of record for Mr. DaCorta.

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) The Receiver's Verified Motion for an Order to Show Cause Why Respondents Should Not Be Held in Contempt for Failure to Comply with the Court's Orders (Doc. # 904) is **GRANTED** to the extent that Michael DaCorta, Brent Winters, Greg Melick, Jason McKee, and Stephen Preziosi shall appear at a hearing before the undersigned and show cause why they should not be held in contempt for non-compliance with the Consolidated Order. The show cause hearing is scheduled for July 15, 2026, at 10:00 a.m. in Courtroom 14B of the Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Tampa, Florida. A writ commanding the United States Marshals Service to transport Michael DaCorta to the courthouse for the hearing will separately issue.

(2) Respondents' failure to appear at the hearing could result in the Court holding them in contempt.

(3) As Brent Winters, Greg Melick, and Jason McKee are nonparties who have not appeared in the action, the Receiver must serve Mr. Winters, Mr. Melick, and Mr. McKee with this Order to Show Cause and the Receiver's Motion in accordance with Federal Rule of Civil Procedure 4(e) by June 25, 2026. If those methods of service prove inadequate, the Receiver must seek leave of Court to use alternate methods of service within a reasonable time.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 10th day of June, 2026.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE