FILED - USDC - FLMD - ORL
AUG 5 2026 PM2:09

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

COMMODITY FUTURES TRADING COMMISSION,

Plaintiff,

v. Case No. 8:19-cv-00886-VMC-SPF

OASIS INTERNATIONAL GROUP LIMITED; OASIS MANAGEMENT, LLC; SATELLITE HOLDINGS COMPANY; MICHAEL J. DACORTA; JOSEPH S. ANILE, II; RAYMOND P. MONTIE, III; FRANCISCO "FRANK" L. DURAN; and JOHN J. HAAS,

Defendants,

and

MAINSTREAM FUND SERVICES, INC.; BOWLING GREEN CAPITAL MANAGEMENT LLC; LAGOON INVESTMENTS, INC.; ROAR OF THE LION FITNESS, LLC; 444 GULF OF MEXICO DRIVE, LLC; 4064 FOUNDERS CLUB DRIVE, LLC; 6922 LACANTERA CIRCLE, LLC; 13318 LOST KEY PLACE, LLC; and 4OAKS LLC,

Relief Defendants.

**RESPONDENT MICHAEL J. DACORTA, PRO SE, MOTION TO DISMISS RECEIVER'S VERIFIED MOTION FOR AN ORDER TO SHOW CAUSE (DOC. 904) WITHOUT FURTHER HEARING OR ARGUMENT**

Respondent Michael J. DaCorta, pro se, respectfully moves this Court to dismiss the Receiver's Verified Motion for an Order to Show Cause (Doc. 904) in its entirety, without further hearing or argument. In support, Respondent states as follows:

**FACTS**

The Court-appointed Receiver filed a Verified Motion for an Order to Show Cause (Doc. 904), seeking, among other relief, contempt-based sanctions, injunctive relief, an accounting, disgorgement, turnover of assets, and reimbursement of fees and costs from Respondents, including Michael J. DaCorta.

The Receiver alleges that Respondent acted in concert with Brent Winters, Greg Melick, Jason McKee, and others associated with the "Helpers Group" in purportedly interfering with the Receivership and soliciting funds from investors and claimants.

The Receiver further alleges that Respondent and others falsely represented that claimants would obtain a full recovery of claimed losses and interest if they funded Respondent's legal defense, and that monies raised should be disgorged to the Court's registry.

Respondent has denied any violation of this Court's orders. In his Opposition to the Receiver's Verified Motion for an Order to Show Cause (Doc. 911), Respondent stated that he "never acted contrary to this Court's order concerning the receivership" and that the Receiver "fails to show by clear and convincing evidence" that any order was violated.

Respondent further stated that the funds used for his legal representation were personal funds of friends and were not Receivership Property, not part of the Receivership Estate, and not derived from assets belonging to the Receivership Defendants.

The funds at issue were released to lenders/claimants pursuant to court authority without any express qualification that they remained encumbered by the Receivership after distribution. Once

those funds were negotiated by the recipients, they ceased to be property of the Receivership Estate and fell outside the Court's in rem control.

The Court's April 30, 2019 order appointing the Receiver authorizes the Receiver to investigate the Receivership Defendants and, after obtaining leave of Court, to pursue relief for the benefit of the Receivership Estate, including constructive trusts, disgorgement of profits, turnover, avoidance of fraudulent transfers, rescission, restitution, and debt collection.

Respondent contends that the Receiver's motion improperly extends beyond the Receivership Estate and seeks to regulate the future spending and personal funds of third parties, which are not assets over which the Receiver has authority.

Under binding Eleventh Circuit law, all decisions of the former Fifth Circuit handed down before October 1, 1981 are binding precedent in the Eleventh Circuit and in the district courts within this Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207–09 (11th Cir. 1981) (en banc). Accordingly, *Roman Catholic Church of Archdiocese of New Orleans v. New Orleans Lake Shore Land Co.*, 533 F.2d 184 (5th Cir. 1976), is controlling authority in this Court.

## MEMORANDUM OF LAW

### A. The Receiver Has Not Shown a Violation of the Court's Orders by Clear and Convincing Evidence

A motion seeking contempt-like relief or an order to show cause predicated on violation of a receivership order requires a showing, at minimum, that the movant has established by clear and convincing evidence that the challenged conduct violated a specific and definite court order. Here, the Receiver's own filings and Respondent's opposition demonstrate that the central factual premise is disputed: whether the monies used for Respondent's legal defense were Receivership Property or otherwise subject to the Court's asset freeze.

The Receiver's allegations are not enough, standing alone, to justify the extraordinary relief requested where the record does not establish that Respondent personally controlled, possessed, or transferred Receivership Property in violation of a specific order. Respondent has specifically denied any such conduct and has asserted that the funds came from personal funds of friends and were outside the Receivership Estate.

**B. The Receiver's Authority Is Limited to Receivership Property and the Receivership Estate**

A federal equity receiver has no greater rights than the entity in receivership and may assert only claims the entity itself could assert. The Fifth Circuit has recognized that a receivership court's in rem jurisdiction over the estate does not permit it to exercise "unbridled authority over assets belonging to third parties to which the receivership estate has no claim." *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 842–43 (5th Cir. 2019).

Likewise, the receiver's authority is limited to the receivership res. As Respondent's prior briefing explained, the appointing court's jurisdiction and control are tethered to property owned, controlled, managed, or held by the receivership defendants at the time of the freeze.

That limitation matters here because the Receiver's motion seeks relief based on alleged injury to investors (which disputed designation is currently before the Eleventh Circuit Court of Appeals), alleged interference with claims administration, and alleged misuse of third-party funds. But the Receiver has not shown that the funds used for Respondent's legal defense were property of the Receivership Estate rather than personal funds of non-party friends. On Respondent's showing, those funds fall outside the Receiver's authority.

**C. Under Binding Pre-October 1, 1981 Fifth Circuit Authority, Once Receivership Funds Are Lawfully Distributed and Negotiated, the Receivership's Jurisdiction Over Those Funds Ends**

Under Eleventh Circuit precedent, decisions of the former Fifth Circuit handed down before October 1, 1981 remain binding on the district courts of this Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207–09 (11th Cir. 1981) (en banc). The rule is therefore controlling here, and it includes *Roman Catholic Church of Archdiocese of New Orleans v. New Orleans Lake Shore Land Co.*, 533 F.2d 184 (5th Cir. 1976).

In *Roman Catholic Church*, the Fifth Circuit held that the discharge of a federal equity receivership was final and that the federal court had "no continuing jurisdiction" after discharge. *Roman Catholic Church of Archdiocese of New Orleans v. New Orleans Lake Shore Land Co.*, 533 F.2d 184, 185 (5th Cir. 1976). The decision reflects the fundamental principle that a federal equity receivership is in rem: the court's authority attaches to the res, and when the res is lawfully transferred out of the estate, the court's jurisdiction over those specific funds ends. That principle is consistent with other authorities reflected in the research materials. Courts in receivership matters routinely distinguish between funds that remain in the estate and funds that have been distributed but not yet negotiated, such as uncashed or undeliverable checks. See *SEC v. Funding Resource Grp.*, No. Civ.A. 92-3194, 2003 WL 24067819 (N.D. Tex. Aug. 21, 2003); *SEC v. Complete Bus. Sols. Grp., Inc.*, No. 8:20-cv-00571, 2024 WL ____ (M.D. Fla.) . Once the distribution is actually received and negotiated, however, the money is no longer part of the receivership estate.

Once a court-approved distribution is made without express post-receipt restrictions, and the recipient negotiates the check, the receiver's control over those funds ends. The Receiver cannot later treat those same funds as if they remained frozen receivership property.

That principle is confirmed by the Court's own distribution orders entered on the Receiver's motions. First, the Court granted (Doc. 730) the Receiver's Motion for an Order (1) Approving a First Interim Distribution of $10 Million; (2) Approving the Receiver's Final Determinations Regarding Unperfected or Incomplete Claims; and (3) Overruling Limited Objections to Certain Claim Determinations (Doc. 694), and authorized "a first interim distribution of $10 million," without imposing any qualification preserving Receivership control after distribution. Second, the Court granted (Doc. 810) the Receiver's Motion to Approve Second Interim Distribution (Doc. 805) and authorized "a second interim distribution of $9 million," again without qualification, restriction, or reservation that the funds would remain subject to the Receivership after release.

The Receiver requested no post-distribution qualification in either motion. Accordingly, once those funds were paid and negotiated, they ceased to be Receivership Property and were no longer subject to the Receiver's continuing control.

**D. Funds Released by Unqualified Court Order Lose Any Receivership Attachment When Negotiated**

Where funds are released to lenders or claimants by court order without qualification, the release severs any continuing attachment to the receivership once the funds are negotiated. Westlaw research memorandum confirms that a federal equity receiver's authority is tied to property within the estate and ends when funds are lawfully distributed and accepted.

The authorities assembled in that memorandum support the same conclusion:

*SEC v. Stanford Int'l Bank, Ltd.*, 927 F. 3d 830 (5th Cir. 2019) recognizes that the receiver's jurisdiction is over receivership property, not third-party assets.

*Roman Catholic Church of Archdiocese of New Orleans v. New Orleans Lake Shore Land Co.*, 533 F.2d 184 (5th Cir. 1976) confirms that after a receivership is discharged, the federal court has no continuing jurisdiction.

*SEC v. Funding Resource Grp.*, No. Civ.A. 92-3194, 2003 WL 24067819 (N.D. Tex. Aug. 21, 2003) and *SEC v. Complete Bus. Sols. Grp., Inc.*, No. 8:20-cv-00571, (M.D. Fla.) reflect that undeliverable or uncashed funds may remain subject to receivership administration, which necessarily implies the converse: negotiated distributions do not.

Accordingly, as the funds at issue were released by court order to lenders or claimants without any restriction preserving receivership control after receipt, and those recipients negotiated the checks, the Receiver cannot later bootstrap those funds back into the estate. See Order Doc. 730 and Order Doc. 810.

**E. The Receiver's Requested Relief Exceeds Its Authority**

The Receiver's motion attempts to characterize all monies associated with Respondent's legal defense as "recoverable assets" or proceeds of the Receivership. But the April 30, 2019 receivership order confines the Receiver's authority to the receivership res and related property subject to the Court's jurisdiction.

Respondent has specifically argued that the funds at issue were not assets "owned, controlled. managed or held by the Defendants in receivership" and were not beneficially owned by them at the time of the freeze. A receiver cannot expand the scope of a receivership by recasting unrelated third-party funds as recoverable merely because the donor had previously been a

lender, investor, or claimant. *Stanford Int'l Bank, Ltd.*, 927 F.3d at 842–43; *Roman Catholic Church*, 533 F.2d at 185.

To the extent the Receiver seeks disgorgement of third-party funds or regulation of the personal spending decisions of non-parties, the request exceeds the Receiver's authority and should be denied.

**F. The Motion Should Be Dismissed Without Further Hearing or Argument**

The Court has discretion to deny a facially insufficient motion where the moving papers fail to establish a legal basis for relief. Here, the Receiver's motion does not show that Respondent violated a specific Court order, does not establish that the disputed funds were Receivership Property, and seeks relief beyond the Receiver's authorized scope.

Because the Receiver has not made a legally sufficient showing on the papers, no further hearing or argument is necessary. Dismissal is appropriate now to prevent unwarranted expansion of the Receivership and unnecessary burden on Respondent.

**WHEREFORE, Respondent Michael J. DaCorta, pro se, respectfully requests that the Court:**

Dismiss the Receiver's Verified Motion for an Order to Show Cause (Doc. 904) in its entirety;

Deny the request for any contempt, disgorgement, turnover, accounting, sanctions, or related relief;

Grant this motion without further hearing or argument; and

Grant such other and further relief as the Court deems just and proper.

/s/ Michael J. DaCorta
Michael J. DaCorta, pro se
FCC Coleman Camp
P.O. Box 1027
Unit F-1
Coleman, FL 33521

Date: August 4, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2026, a true and correct copy of the foregoing was served by email upon counsel for the Court-appointed Receiver, Jared J. Perez, at **jared.perez@jaredperezlaw.com**.

/s/ Michael J. DaCorta
Michael J. DaCorta, pro se

The UPS Store Smart Label

Tracking #

1Z022VE5429524 5037

CAROLYN DACORTA
(845) 233-8056
THE UPS STORE #3881
4327 S HWY 27
CLERMONT FL 34711-5349

1 LBS 1 OF 1
SHP WT: 1 LBS
DATE: 04 AUG 2026

SHIP TO:
ATTN CLERK OF COURT
GEORGE C YOUNG FED ANNEX CT HOUSE
401 W CENTRAL BLVD

ORLANDO FL 32801-0401

FL 328 9-01

UPS GROUND
TRACKING #: 1Z 022 VE5 42 9524 5037

BILLING: P/P
SIGNATURE REQUIRED

REF #1: AC

MMKGXAZEZPAMS ISH 13.88C ZZP 450 28.8U 05/2026

SEE NOTICE ON REVERSE regarding UPS Terms, and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.

401 W CENTRAL BLVD
ORLANDO FL 32801

P:TAN S:ETRED I:E10

E012-3370

1Z022VE5429524 5037

9AT08485 XLE 01-1 Aug 05 05:04:23 2026
US 3282 UDC 25.9 SATOLR

3370