UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

COMMODITY FUTURES TRADING COMMISSION,

Plaintiff,

v. Case No. 8:19-cv-886-VMC-SPF

OASIS INTERNATIONAL GROUP, LIMITED ET AL.,

Defendants.
______________________________/

**ORDER**

This matter comes before the Court on Michael DaCorta's Motion to Vacate or Reconsider the Court's Order finding him in Civil Contempt. (Doc. # 990). Receiver Burton Wiand responded in opposition. (Doc. # 994). For the reasons that follow, the Motion is denied.

## I. Background

On April 3, 2026, Burton Wiand as receiver ("Receiver") over assets of the defendants and relief defendants filed a verified motion for an order to show cause why Jason McKee, Greg Melick, Michael DaCorta, Brent Winters, ("Respondents") and Stephen Preziosi should not be held in contempt for failure to comply with the Court's orders. (Doc. # 904). None of the Respondents filed a response. On June 10, 2026, the

Court granted the Receiver's Motion. (Doc. # 927). A show-cause hearing was held on August 7, 2026. (Doc. # 977). Mr. DaCorta appeared in person but did not present evidence in his defense. (Id.). Mr. DaCorta did not give an opening statement and invoked his Fifth Amendment privilege. (Tr. at 19:20-24; 126:8-132:11). The Receiver testified, offered the testimony of Tim Devine and Melissa Davis, and entered 98 exhibits into the record. (Id. at 4). Mr. DaCorta declined to cross-examine Ms. Davis (Id. at 55:9-11), but cross-examined Mr. Devine (Id. at 44:11-45:3), and the Receiver. (Id. at 119:14-121:3).

At the conclusion of the hearing, the Court and the parties agreed that the parties could submit post-hearing filings by August 24, 2026. (Id. at 133:14–135:7). These documents were to include proposed findings of fact and conclusions of law. (Id.). No objections were made. (Id.). On August 19, 2026, Mr. DaCorta sought an extension of time to submit his post-hearing filing, which the Court denied. (Doc. ## 982, 983). Mr. DaCorta subsequently filed proposed findings of fact and conclusions of law on August 21, 2026. (Doc. # 984). The Receiver submitted proposed findings of fact and conclusions of law on August 24, 2026. (Doc. # 985).

Upon review of the evidence presented at the show-cause hearing and both parties' post-hearing filings, the Court entered the Contempt Order finding Jason McKee, Greg Melick, Michael DaCorta, and Brent Winters in civil contempt for violating the Consolidated Order. (Doc. # 989). Mr. DaCorta filed the instant Motion on September 11, 2026 (Doc. # 990), and filed a notice of appeal of the Contempt Order on September 21, 2026. (Doc. # 992). The Receiver responded to Mr. Dacorta's Motion on September 25, 2026. (Doc. # 994). The Motion is ripe for review.

## II. Discussion

Mr. DaCorta asks the Court to vacate, or in the alternative, reconsider its Contempt Order. From what the Court can discern, his arguments can be summarized as follows: first, he asserts that the Contempt Order is an improper verbatim-copy of the Receiver's proposed findings and conclusions. (Doc. # 990 at 3). Second, he asserts that he was denied his Due Process rights. (Id. at 8). Third, he alleges that some findings of the Court are unfounded. (Id. at 16-24). For the reasons that follow, Mr. DaCorta's Motion is denied.

**A. The Court's Adoption of the Receiver's Proposals was Proper because the Process by which the Court found Mr. DaCorta in Contempt was Fundamentally Fair.**

Prior to entering the Contempt Order, the Court solicited proposed findings of fact and conclusions of law from both Mr. DaCorta and the Receiver. (Tr. at 133:14-135:7). Although the Court adopted a majority of the Receiver's proposals in the Contempt Order verbatim, the Contempt Order was not a "prevailing-party proposed order" or "ghost-written order" adopted in whole. Regardless, the Eleventh Circuit precedent on such orders is instructive:

> Our guiding principle in determining whether to vacate the adoption of a proposed order is whether the process by which the judge arrived at the order was fundamentally unfair. If a process was fundamentally fair, then the concerns ordinarily associated with a ghostwritten order are greatly tempered. Without a per se rule, we determine whether a process was fundamentally unfair by evaluating the facts of each case. Also, we glean some relevant considerations from our precedent, including: whether the losing party had ample opportunity to present its arguments; whether the court independently reached a firm decision before requesting a proposed order; whether the court, in directing a party to draft the proposed order, instructed that the order reach a particular result and discuss specific points; whether the court directed a party to draft the proposed order in open court or otherwise publicly; whether other parties requested the opportunity to review the proposed order or make objections to it; and whether the court had command of the issues and proceedings and was an active arbiter throughout the litigation.

In re Equifax Inc. Customer Data Sec. Breach Litig., 999 F.3d 1247, 1269 (11th Cir. 2021) (internal quotations and citations omitted). Applying the factors here, the Court finds that the process by which this Court entered the Contempt Order was fundamentally fair.

Mr. DaCorta had an ample opportunity to present his arguments. First, he was present at the show-cause hearing. There, he had the opportunity to make an opening statement, cross-examine witnesses, and introduce evidence in his defense. Although Mr. DaCorta chose to participate in a limited extent only, that choice was guided by his personal considerations rather than a lack of opportunity.

Mr. DaCorta states that he did not decline to submit evidence on this matter because "[i]t was filed, sworn, and sitting on the docket the entire time, and nothing in the record indicates the Court engaged with it before adopting, nearly verbatim, the very narrative it contradicts." (Doc. # 990 at 13). Notably, Mr. DaCorta does not specify the files to which he is referring, undercutting his argument. Liberally construed, however, it appears to the Court that he may be referring to a motion for reconsideration filed by Mr. Preziosi on behalf of himself, in part, and on behalf of Mr. DaCorta, in part. (Doc. # 940). As the Court has already

explained, "Mr. DaCorta's remedy was to present such evidence at the show-cause hearing, which he declined to do." (Doc. # 974).

Second, the Court solicited a post-hearing filing from Mr. DaCorta. Mr. DaCorta took advantage of this opportunity and filed a 42-page document, containing legal arguments, proposed findings of fact, and proposed conclusions of law. (Doc. # 984). The Court subsequently reviewed his filing before entering the Contempt Order. This was a second opportunity the Court provided Mr. DaCorta to present his arguments.

In his Motion, Mr. DaCorta alleges that the setting of the post-hearing filings deadline was unfair. (Doc. # 990 at 11-12). He argues that the Court "accommodated [the Receiver's] scheduling needs," but not his. (Id. at 11). The record indicates that the Court set the deadline due to "staffing issues, timing and other things that [the Court has] coming up." (Tr. 134:8-9). These external constraints upon the Court dictated the deadline that applied equally to both parties. Mr. DaCorta did not object to this deadline when it was set. (Id. at 134:14-20).

The Court also made clear at the show-cause hearing that it would not grant extensions to submit the post-hearing

filings. See (Id. at 134:22-135:5) (the Court stated, "please understand I cannot extend that deadline . . . I can't extend it at all because I'm committed to resolving this. . . But that's the last possible day that I can have and still get an order out, and get it done on a timely basis."). Again, Mr. DaCorta did not object. (Id.). The Court denied Mr. DaCorta's motion for an extension to submit his post-hearing filing, as it advised it would in advance. (Doc. # 983). Furthermore, Mr. DaCorta's claim of insufficient time to submit proposed findings of fact and conclusions of law rings hollow: Mr. DaCorta did timely file such document with the Court. (Doc. # 984). This process was fundamentally fair to both parties.

The second, third, and fourth factors articulated by the Eleventh Circuit – "whether the court independently reached a firm decision before requesting a proposed order," "whether the court, in directing a party to draft the proposed order, instructed that the order reach a particular result and discuss specific points," and "whether the court directed a party to draft the proposed order in open court or otherwise publicly" – do not apply in this instance because the Court did not direct a single prevailing party to draft an order that it subsequently adopted in whole. In re Equifax Inc., 999 F.3d at 1269. Rather, the Court solicited proposed

findings and conclusions from both parties in the presence of one another, reviewed them, and came to an independent and firm decision on the matter before entering the Contempt Order.

The fifth factor – "whether other parties requested the opportunity to review the proposed order or make objections to it" – also does not directly apply to this case. Id. Here, the Court did not announce at the hearing that the Receiver would prevail or request that only the Receiver submit a proposed order. Additionally, Mr. DaCorta has had an opportunity to review and object to the Contempt Order entered by the Court. The instant Motion does exactly that. See Id. ("[C]ontrary to their assertions, they did have an opportunity to respond to the order. After the District Court adopted the proposed order, [the opposing party] moved to amend it.").

The final factor further demonstrates the fairness with which the Court entered the Contempt Order. The record establishes that "the [C]ourt had command of the issues and proceedings and was an active arbiter throughout the litigation." Id. (internal quotations and citations omitted). The Court questioned witnesses, see, e.g., (Tr. at 32:22-35:16; 40:14-41:6), and ruled on the evidence the Receiver

submitted, indicating that the Court "did not abdicate [its] adjudicative role." Fields v. City of Tarpon Springs, 721 F.2d 318, 320-21 (11th Cir. 1983) (rejecting the argument that "wholesale adoption of plaintiff's proposed order" requires the appellate court to make its own factual findings). The Contempt Order was entered after the Court thoroughly and independently engaged with the materials both parties presented at the show-cause hearing and in their post-hearing filings.

It is true that the Court adopted most of the Receiver's proposed language. But the Court also disagreed with and declined to adopt some of what the Receiver proposed. For example, the Court did not grant all the relief the Receiver sought. The Court independently concluded that the injunctive relief the Receiver sought "is not an appropriate civil contempt remedy here as its purpose would not be to coerce the defendant into compliance with the court's order or to compensate the complainant for losses sustained." (Doc. # 989 at ¶ 146) (internal quotations and citation omitted). Additionally, the Court declined to adopt the Receiver's proposal that, "[b]ecause Respondents made no attempt to carry their burden, the Court should hold them in contempt." (Doc. # 985 at ¶ 116) (citations omitted). These distinctions

demonstrate that the Court did not blindly adopt the Receiver's proposals wholesale without independently scrutinizing the record. Rather, the Court adopted the majority of the Receiver's proposals because the Court found that they were adequately supported by law and with evidence that went unrebutted by Mr. DaCorta.

Lastly, Mr. DaCorta cites to Anderson v. City of Bessemer City, N.C., 470 U.S. 564 (1985) "as the controlling authority on verbatim adoption of a party's proposed findings." (Doc. # 990 at 5). But Anderson does not support Mr. DaCorta's request for vacatur or reconsideration of the Contempt Order as it contemplates whether verbatim adoption of findings should "subject those findings to a more stringent appellate review than is called for by the applicable rules." 470 U.S. at 573 (holding that "even when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous.").

The process by which the Court came to find Mr. DaCorta in civil contempt was not fundamentally unfair. Therefore, the substantial adoption of the Receiver's proposed findings of fact and conclusions of law does not provide grounds for reconsideration or vacatur.

**B. Mr. DaCorta's Challenges to Findings Adopted in the Contempt Order do not Establish Grounds for Reconsideration or Vacatur.**

A motion to reconsider may be treated as a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e) when filed within 28 days of entry of the judgement it seeks to alter or amend. See Wright v. Preferred Rsch., Inc., 891 F.2d 886, 889 (11th Cir. 1990) ("Rule 59 applies to motions for reconsideration of matters encompassed in a decision on the merits of a dispute" (citations omitted)); Harris v. Conover, No. 3:25-cv-224-WWB-SJH, 2026 WL 2417013, at *1 (M.D. Fla. Aug. 19, 2026) ("Motions for reconsideration filed within 28 days of the Court's Judgment are governed by Rule 59(e), whereas motions for reconsideration filed after the 28-day period are governed by Federal Rule of Civil Procedure 60(b)."). Mr. DaCorta asks the Court to "vacate the [Contempt] Order, or in the alternative, reconsider it and enter amended findings." (Doc. # 990 at 2). The Contempt Order was a "decision on the merits of a dispute," and Mr. DaCorta filed his motion seven days after the entry of the Order. Wright, 891 F.2d at 889. Accordingly, the Court treats his Motion as a 59(e) motion.

"The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact." In re Kellogg, 197 F.3d 1116, 1119 (11th Cir. 1999) (citation omitted). "[A] Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." Michael Linet, Inc. v. Village of Wellington, 408 F.3d 757, 763 (11th Cir. 2005).

Mr. DaCorta does not present newly-discovered evidence regarding whether he violated the Consolidated Order – indeed he concedes as much. See (Doc. # 990 at 1) ("What follows is new evidence, *not about the underlying facts of this case*, but about the process that produced the Order now on review" (emphasis added)). And, as mentioned above, Mr. DaCorta's argument that the Court failed to consider evidence he did not present at the show-cause hearing does not establish grounds for reconsideration.

Mr. DaCorta argues that factual and legal conclusions against him were unsupported by the evidence and suggests the calculation of the Receiver's fees was inaccurate. (Doc. # 990 at 14-24). The Court disagrees.

First, Mr. DaCorta argues that the Receiver never proved "that Mr. DaCorta personally directed, controlled, or

participated in any coercion or misrepresentation to the individuals who voluntarily chose to support his legal defense with their own funds." (Id. at 14). Mr. DaCorta misunderstands the applicable law. As explained in the Contempt Order, the Court can hold Mr. DaCorta in contempt based on acts committed by his agents for his benefit. (Doc. # 989 at 76).

Mr. DaCorta continues to argue that "the finding that Mr. DaCorta was a member of the Respondents' conspiracy and that the acts of other persons are therefore imputable to him cannot be established merely by demonstrating that another person paid an attorney who represented Mr. DaCorta." (Doc. # 990 at 18) (internal quotations and citations omitted). The Court's findings went beyond what Mr. DaCorta represents. The Court found that "(1) DaCorta directed Melick to raise money for him through the Helpers Group and (2) DaCorta and Melick have a history of conspiring to evade the asset freeze. As a matter of law and undisputed fact, the actions of Winters, Melick, and McKee are all attributable and imputable to DaCorta." (# 989 at ¶ 135) (citation omitted). This evidence went unrebutted at the show-cause hearing and Mr. DaCorta does not rebut it now with newly-discovered evidence.

Second, Mr. DaCorta raises vague challenges to the reasonableness of the Receiver's fees contemplated in the Contempt Order. (Doc. # 990 at 19-21). He does not make any specific allegation as to an incorrect calculation. (Id.). The Court cannot correct an unidentified error.

Mr. DaCorta then claims that the show-cause proceedings generated a disproportionate share of the Receiver's last fee application. (Id. at 22-23). The contempt proceedings are ongoing and will continue to generate fees until they are complete. The Court is not asking Mr. DaCorta to bear the expenses "before the Court has determined the merits of the proceeding for which the expenses were incurred," as he suggests. (Id. at 22). The Court found Mr. DaCorta and the other Respondents in civil contempt. (Doc. # 989). The Contempt Order properly directs Mr. DaCorta and the other Respondents to reimburse the Receivership Estate for the fees the Receiver incurred prosecuting his motion for an order to show cause and subsequent proceedings.

Finally, Mr. DaCorta's remaining grievances, including the conditions of his custody (Doc. # 990 at 12), the Court's direction to Mr. DaCorta to engage in proper cross-examination etiquette (Id. at 10), the resolution reached with Mr. Preziosi in this matter (Id. at 2, 6), and the

exchanges between the Court and the parties in prior hearings (Id. at 16-17) are irrelevant to the relief he seeks.

Because Mr. DaCorta does not present newly-discovered evidence regarding his violation of the Consolidated Order or demonstrate any manifest errors of law or fact, he has not established grounds for relief under Federal Rule of Civil Procedure 59(e).

**C. Mr. DaCorta was not Denied Due Process because He was Provided with a Meaningful Opportunity to be Heard.**

"It is by now well-settled law that due process is satisfied when a civil contempt defendant receives notice and an opportunity to be heard." F.T.C. v. Leshin, 719 F.3d 1227, 1235 (11th Cir. 2013) (citing Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827 (1994) and Shillitani v. United States, 384 U.S. 364, 365 (1966)). "At most, due process requires only 'skeletal' protections in civil contempt proceedings." In re McLean, 794 F.3d 1313, 1324 (11th Cir. 2015) (citing Mercer v. Mitchell, 908 F.2d 763, 767 (11th Cir.1990). Mr. DaCorta does not contest proper notice. (Doc. # 990). And, as described above, Mr. DaCorta was provided with a meaningful opportunity to be heard on the matter: he had the opportunity to present arguments and evidence at the

show-cause hearing, in his post-hearing filings, and again in the instant Motion.

Additionally, Mr. DaCorta argues that in denying his request to appear remotely at the show-cause hearing, the Court denied him his Due Process rights. (Doc. # 990 at 8-10). Although Mr. DaCorta indicated that he planned to invoke his Fifth Amendment privilege in his requests to appear remotely (Doc. ## 962, 963), the Court believes it inappropriate for Mr. DaCorta to remotely invoke a privilege of this importance and for the Court to assess such invocation remotely. Remote appearances are plagued with technological issues that can muddle testimony or limit the remote party's participation. In ordering Mr. DaCorta appear in person, the Court was *protecting* Mr. DaCorta's Due Process rights by ensuring that he could fully participate in the hearing. Regardless, there is no Due Process right to attend a hearing remotely.

The Court, therefore, finds no grounds to reconsider or vacate its Order finding Mr. DaCorta in contempt. (Doc. # 989). The Motion is denied.

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED:**

(1) Respondent Michael DaCorta's Motion for Reconsideration of the Court's Order (Doc. # 990) is **DENIED.**

(2) Mr. DaCorta is directed to produce an accounting of all funds he or any entity under his control, such as the Trust, has received directly or indirectly from any Oasis investor since entry of the Consolidated Order and shall disgorge such funds, within 30 days of this Order. Mr. DaCorta must file a certificate of compliance with this provision within 30 days of this Order. Mr. DaCorta shall refer to the Contempt Order (Doc. # 989) for further details.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 21st day of October, 2026.

Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE